# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARIALICE BATHRUS WILLIAMS, | : | Civil Action No. 1:05CV01483 |
| Plaintiff, | : | Judge John D. Bates |
| vs. | : | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.* | : | **DEFENDANTS FEDERAL NATIONAL MORTGAGE ASSOCIATION, RICHARD LAWCH, AND GRACE HUEBSCHER'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |
| Defendants. | : | |

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Federal National Mortgage Association ("Fannie Mae"), Richard Lawch ("Lawch"), and Grace Huebscher ("Huebscher") (collectively "Defendants") respectfully move this Court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Plaintiff, a former mid-level manager in Fannie Mae's Multifamily Division, left the company in 1998, after determining that her supervisors did not appreciate her true importance or value and signing a settlement agreement that purportedly resolved the same type allegations at issue here. Now, more than seven years later, she alleges that despite Fannie Mae's purported under appreciation of her work as an employee, the company assured her that she could participate in billions of dollars worth of business immediately following her departure and that its failure to include her in this purported business has caused her tens and even hundreds of millions of dollars in damages. Simply put, plaintiff's complaint is nothing more than a straw man. Plaintiff cannot state any contract-based claims (including discrimination and retaliation claims under 42 U.S.C. § 1981) because she fails to allege the existence of any actual contract

with Fannie Mae.  (*See* Section I, *infra*.)  Indeed, she acknowledges that she never consummated a business relationship with her former employer.  Her claims for interference with contract and business relationships similarly should be dismissed because she has not pled the existence of a contract or third party business relationship with which Fannie Mae or the other defendants have even arguably interfered.  (*See* Section II, *infra*.)  Her defamation, conspiracy and intentional infliction of emotional distress claims similarly fail as a matter of law.  (*See* Sections III-V, *infra*.)  And, even if she could state substantive claims – which she cannot – the time for asserting such claims has long since passed.  (*See* Section VI, *infra*.)  Therefore, all of plaintiff's claims should be dismissed.

**BACKGROUND**

From 1989 to 1998, plaintiff held various positions with Fannie Mae, and spent her last six years as Director of Capital Markets, a mid-level management position in Fannie Mae's Multifamily Division.  (*See* Complaint ¶ 1.)  She alleges that in 1997 and 1998, senior officials at Fannie Mae "did not understand and were not willing to facilitate the extremely critical products and processes which she was developing" and did not "appreciate the true importance or value of Plaintiff's generation of methods to mitigate or eliminate Fannie Mae's risk exposure." (Complaint ¶ 18.)  She made claims of sex and race discrimination and retaliation against Fannie Mae toward the end of her employment and left the company in June 1998 pursuant to a settlement agreement in which she released any such claims.  (*See* Complaint ¶ 19.)  After she left Fannie Mae, plaintiff started her own firm, Risk Mitigation Strategists, LLC ("RMS"), which would focus on the development of products that she hoped to market to Fannie Mae.  (*See* Complaint ¶ 33.)  She did this despite her belief when she was employed with Fannie Mae that it

was not willing to facilitate the development of the products she was working on and did not appreciate their true value.  (*See* Complaint ¶ 18.)

At no time did plaintiff have any actual contract to do any business with Fannie Mae. Indeed, she concedes that she never "consummated" a business relationship with Fannie Mae. (Complaint ¶¶ 36, 42 ("Again, however, Fannie Mae refused to consummate formally a business relationship with Plaintiff.").)  Although plaintiff contends she received "approval" to do business on contract basis, she does not and cannot allege that the parties ever entered into an actual agreement.  (Complaint ¶ 36.)  Thus, while plaintiff may have desired to do work for Fannie Mae, she never obtained a contract that would support her contract-based claims.

In fact, the only specific "promise" plaintiff points to in her complaint is one purportedly contained in a May 26, 1998 letter from Lou Hoyes at Fannie Mae.  (Complaint ¶¶ 21, 22, 23, and 32.)  The letter, however, is not addressed to plaintiff and does not even mention her, let alone promise her any work.  Instead, it merely suggests the possibility of business between Fannie Mae and a third party – CAM Financial Services – and indicates that such business could come "later this year [1998]."  (Hoyes Letter, attached hereto at Exhibit A.[1])  Thus, even if that letter had made promises to plaintiff – which it did not – she knew as of the end of 1998 that she had not received such business.

---

[1]    While this letter is not attached to the complaint, the Court should consider it since plaintiff specifically refers to the contents in her complaint.  *See New York State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110 (D.D.C. 2003) ("A document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned . . . Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (quotations omitted).  This 1998 letter is integral to plaintiff's complaint, since it is the only specific written document she alleges in connection with her alleged contract with Fannie Mae.  (*See* Complaint ¶¶ 21, 22, 23, and 32.)

<u>ARGUMENT</u>

I.    **PLAINTIFF'S CONTRACT-BASED CLAIMS (COUNTS I, II, AND V) SHOULD BE DISMISSED BECAUSE SHE CONCEDES THAT SHE NEVER CONSUMMATED A BUSINESS RELATIONSHIP WITH FANNIE MAE.**

It is beyond dispute that plaintiff's contract-based claims – Counts I (Unlawful Discrimination Based Upon Race and Sex), II (Unlawful Retaliation for the Prior Exercise of Protected Civil Rights), and V (Breach of Contract)[2] – must be dismissed if plaintiff's allegations, taken as true, do not establish the existence of a contract between her and Fannie Mae.   Thus, because plaintiff, herself, concedes that she never "consummated" a business relationship with Fannie Mae (Complaint ¶¶ 36, 42), those claims cannot survive.

A.    **Plaintiff's Discrimination, Retaliation, And Breach Of Contract Claims Require Plaintiff To Allege The Existence Of A Binding Contract With Fannie Mae.**

In Count I, plaintiff alleges that Fannie Mae unlawfully discriminated against her in violation of 42 U.S.C. § 1981.  In the context of plaintiff's complaint, the only part of that statutory provision about which she appears to allege a violation is her right to "enforce [a] contract" with Fannie Mae.  42 U.S.C. § 1981 (1991).  Therefore, in order to prevail under § 1981, she must plead the existence of a valid contract between Fannie Mae and her.  *See, e.g., Walker v. Abbott Labs.*, 340 F.3d 471, 475 (7th Cir. 2003) ("There is no dispute . . . that. . . § 1981's protections still center on contractual rights and that proof of a contractual relationship is necessary to establish a § 1981 claim.") (citing cases).  Similarly, Fannie Mae assumes that plaintiff brings her claim for unlawful retaliation, Count II, under § 1981, since she does not allege that she was an employee of Fannie Mae at the time of the alleged retaliation and thus cannot state a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., or the D.C. Human Rights Act, D.C. Code §2 1401, *et seq*.  In light of this assumption, as stated

---

[2]        Plaintiff asserts the breach of contract claim against Fannie Mae only.  (*See* Complaint ¶ 9.)

above, the only "protected civil right" under § 1981 is plaintiff's right to enforce a contract,

which again requires the existence of a valid contract.  Finally, in order to state a claim for

breach of contract (Count V), plaintiff must adequately plead the existence of a contract between

her and Fannie Mae.

> **B.**   **Plaintiff Does Not Adequately Plead The Existence Of A Contract With Fannie Mae And Concedes That There Isn't One.**

Plaintiff's complaint does not adequately allege that a contract – either actual or implied

– existed between her and Fannie Mae.  In order for a valid contract to exist under District of

Columbia law there must be clear mutual assent by both parties, with a discussion of all essential

terms of the contract.  *See, e.g., Malone v. Saxony Coop. Apartments, Inc.*, 763 A.2d 725, 729

(D.C. 2000).  As Magistrate Judge Kay recently stated, "[u]nder well settled contract law, the

lack of precision as to material terms . . . are fatal to the existence of an enforceable contract."

*Perles v. Kagy*, 362 F. Supp. 2d 195, 200 (D.D.C. 2005) ("[A]n offer must be so complete that

upon acceptance an agreement is formed which contains all of the terms necessary to determine

whether the contract has been performed or not . . . . An indefinite or uncertain contract cannot

be enforced.") (quoting *Butler v. Kemmerer*, 67 A. 332 (Pa. 1907)).  In other words, in order to

successfully plead the existence of an enforceable contract, plaintiff must allege that there was

some type of meeting of the minds where specific terms of a contractual relationship were agreed

upon by her and Fannie Mae.  Moreover, a mere promise of future business is not sufficient to

establish a binding agreement.  *See, e.g., Obelisk Corp. v. Riggs Nat'l Bank of Washington, D.C.*,

668 A.2d. 847, 855 n.8 (D.C. 1995) (upholding instructions to jury not to enforce agreement to

agree in the future); *Garzon v. Comm'n on Human Rights*, 578 A.2d 1134, 1139 & n.4 (D.C.

1990) (refusing to enforce oral settlement agreement because "the so-called 'contract' to make a

contract is not a contract at all.") (quoting 1 A. CORBIN, CONTRACTS § 29 (1963)).

While plaintiff asserts that "assurances of a continuing business relationship between Fannie Mae and Plaintiff Williams were communicated by both written and oral promises extended by Fannie Mae and its senior officials" (Complaint ¶ 21), plaintiff never alleges that any of these communications resulted in a valid contract between the two parties, nor does she identify the terms of any contract.  (*See* Complaint ¶¶ 21, 22, 23, and 32.)  At no point in her complaint does she assert that the two parties came to an agreement as to the type of business relationship between the parties, any consideration to be exchanged, or even what exactly must be performed by each of the parties.  Given the completeness requirement outlined in *Perles*, a blanket claim of "written and oral promises" is simply not sufficient to allege a valid contractual relationship.

In fact, the only specific "agreement" that plaintiff references is not a contract at all, but a 1998 letter written by a Fannie Mae executive to a third party, CAM Financial Services.  (See Complaint ¶¶ 21, 22, 23, and 32.)  As noted above, this letter merely discusses the *possibility* of business dealings between Fannie Mae and CAM in 1998 and simply cannot be construed as any type of contract between plaintiff and Fannie Mae.

Indeed, plaintiff herself admits that she never consummated a business relationship with Fannie Mae.  (Complaint ¶ 42 ("Again, however, Fannie Mae refused to consummate a business relationship with Plaintiff Williams.").)  This statement, along with plaintiff's failure to allege or refer to any contract between Fannie Mae and her, shows that while plaintiff may have *desired* a contractual business relationship with Fannie Mae, she just did not have one.  Plaintiff's desire to do business with Fannie Mae and attempts to do so simply do not create a valid contract between the two parties.

## II.     PLAINTIFF'S INTERFERENCE-BASED CLAIMS (COUNTS III AND VI) SHOULD BE DISMISSED.

In the absence of any actual agreement with Fannie Mae to support a breach of contract action, plaintiff attempts to recast her allegations in the guise of tortious interference claims (Counts III (Unlawful Interference with Contractual Relationships), IV (Conspiracy to Interfere with Contractual Relationships) and VI (Tortious Interference with Business Relationships).)  In particular, she alleges that Fannie Mae "discouraged" consultants, brokers, lenders and customers from securing "***Fannie Mae-related*** insurance products" through her.  (*See* Complaint ¶ 52 (emphasis added).)  This allegation, of course, is the exact same one made with respect to her breach of contract claims – Fannie Mae purportedly refused to do its insurance-related business through her.  (*Compare* Complaint ¶ 52 *with* ¶¶ 22, 27.)  Indeed, the only damages she alleges are "commissions" she contends she should have earned from transactions with Fannie Mae.  (*Id.* ¶ 55.)   But plaintiff cannot avoid dismissal by claiming that her proposed work for Fannie Mae also involved third parties.  Indeed, the D.C. Circuit long ago recognized that "[a]n invalid promise cannot be turned into a valid claim by describing the promisor's refusal to perform it as an interference either with the expectancies or with the contract rights of the promisee."  *Rosenkroff v. Finklestein*, 195 F.2d 203, 204 (D.C. Cir. 1952); *see also Donohoe v. Watt*, 546 F. Supp. 753, 757 (D.D.C. 1982) ("[I]t is a well settled principle of law that this tort arises only when there is an interference with a contract between the plaintiff and a third party."), *aff'd*, 713 F.2d 864 (D.C. Cir. 1983).

This fundamental flaw in plaintiff's interference claims is underscored by her failure to plead the most basic elements of these claims.  First, in order to bring a claim for interference with contractual relationships, plaintiff must adequately plead the existence of an enforceable contract with one of the third parties with whom she claims defendants interfered.  *Farmland*

*Indus., Inc. v. Grain Board of Iraq,* 904 F.2d 732, 738-39 (D.C. Cir. 1990); *Donohoe*, 546 F. Supp. at 757. Similarly, in order to successfully plead her claim for tortious interference with business relationships, plaintiff must plead the existence of a "valid business relationship or expectancy" with a third party. *See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, Case No. 03-0848, 2005 U.S. District LEXIS 16338, at *31 (D.D.C. Aug. 10, 2005); *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995). An "expectancy" of a business relationship cannot be a one-sided hope or an intention to do business with a third party, but rather there must be evidence of some type of mutual understanding of an expected contract between the parties. *See Ellsworth Assocs. v. United States*, 917 F. Supp. 841, 850 (D.D.C. 1996).

Nevertheless, in her complaint, plaintiff only alleges that defendants "discouraged" third parties from working with her. (Complaint ¶¶ 51, 52.) In her own example of this alleged unlawful conduct, she admits that she merely "intended to work with CAM Financial." (Complaint ¶ 52.) An intention to do business is not a contract or business relationship. *See, e.g., Perles v. Kagy*, 362 F. Supp. 2d 195 (D.D.C. 2005). Plaintiff's allegation that defendants "actively discouraged CAM Financial officials from doing business [with her]" does not satisfy the requirements for interference with a *contract or business relationship*, since no such relationship was ever alleged in connection with the conduct.

Second, even if plaintiff could establish an actual contract or business arrangement, she must also establish a breach of the contract or termination of a business expectancy. *See, e.g., Curaflex Health Servs., Inc. v. Bruni*, 899 F. Supp. 689, 694 (D.D.C. 1995) (to prevail on a claim for tortious interference with a contract, the plaintiff must a show that defendant's interference resulted in a breach of the alleged contract) (citing *Sorrells v. Garfinkel's, Brooks Bros., Miller*

& *Rhoads, Inc.,* 565 A.2d 285, 289 (D.C. 1989)); *Bennett Enters., Inc.*, 45 F.3d at 499

(interference must induce or cause a breach or termination of the relationship or expectancy).

Plaintiff does not allege any such breach or termination.

Finally, plaintiff fails to allege facts sufficient to adequately satisfy the intent element of

her claims. "A general intent to interfere or knowledge that the conduct will injure the plaintiff's

business dealings is insufficient to impose liability." *Genetic Sys. Corp. v. Abbott Labs.,* 691 F.

Supp. 407, 423 (D.D.C. 1988); *see also Bennett Enters., Inc.,* 45 F.3d at 499. Plaintiff cannot

demonstrate liability without a strong showing of intent to disrupt ongoing business relations.

*Genetic Sys. Corp.,* 691 F. Supp. at 423. Here, plaintiff's only allegation is that – "on

information and belief" – Fannie Mae "actively discouraged" several other parties from using her

to do business with Fannie Mae. Such vague and unsupported allegations are insufficient to

demonstrate the level of intent required to bring a tortious interference claim. *Cf. Bannum, Inc.*,

2005 U.S. District LEXIS 16338, at *31 (dismissing claim of tortious interference with a

business relationship because plaintiff's allegations were vague and unsupported by the

evidence).

Because plaintiff fails to state a tortious interference claim independent from her breach

of contract allegations and because she has not alleged the basic prerequisites for such claims,

Counts III, IV and VI of plaintiff's complaint should be dismissed with prejudice.

## III.    PLAINTIFF DOES NOT STATE A CLAIM FOR CONSPIRACY (COUNT IV).

Plaintiff's claim for conspiracy to interfere with contractual relations under Section 1985

should be dismissed because a corporation cannot conspire with its officers and agents unless

they are operating outside the scope of their employment. *See Weaver v. Gross*, 605 F. Supp.

210, 214-215 (D.D.C. 1985) (plaintiff's claims dismissed where plaintiff alleged that officers and

other agents of a corporation adopted a discriminatory policy and practice). Lawch and

Huebscher are Fannie Mae officers who were acting within the scope of their employment throughout the timeframe in which Fannie Mae was considering undertaking a contractual relationship with plaintiff. Thus, plaintiff's conspiracy claim should be dismissed because – by definition – Fannie Mae, the corporation, cannot conspire with its officers, Mr. Lawch and Ms. Huebscher.

Moreover, "[a]llegations of conspiracy [under § 1985] are subject to heightened pleading standards. 'Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed.'" *Williams v. Washington Post Co.*, Case No. 89-3256, 1990 U.S. District LEXIS 7984, at *4 (D.D.C. June 28, 1990) (quoting *Hobson v. Wilson*, 737 F.2d 1, 30 (D.C. Cir. 1984) (internal quotations omitted). Plaintiff's allegations cannot withstand such scrutiny. She merely alleges that defendants "engage[ed] in an intentional and malicious plan." (Complaint ¶ 49.) Such vague and conclusory allegations do not make a proper conspiracy claim, and therefore this count should be dismissed.

## IV.    PLAINTIFF DOES NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT VII).

Plaintiff's claim for intentional infliction of emotional distress also should be dismissed because plaintiff has not alleged conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community" as is required for an emotional distress claim. *See Wise v. District of Columbia*, Case No. 03-cv-310, 2005 U.S. Dist. LEXIS 6361, at *16 (D.D.C. April 8, 2005). Plaintiff's claims stem only from her allegations that Fannie Mae chose not to do business with her and that collectively the defendants encouraged others to do the same. Those alleged actions, even if they occurred, certainly do not amount to something "intolerable in a civilized community." *See, e.g., Bryant v. Orkand Corp.*, No. Civ. 03-2305, 2005 WL 670295,

at *18-19 (D.D.C. Mar. 21, 2005) (discrimination allegation insufficient to state a claim for intentional infliction of emotional distress); *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding alleged discrimination by employer against employee in terminating employee could not sustain claim for intentional infliction of emotional distress). Further, the complaint does not state any specific action by either Fannie Mae or the individual defendants which rises to the level of extremity required for a claim of emotional distress. *See Wise*, 2005 U.S. Dist. LEXIS 6361, at *16-17.  Thus, plaintiff's claim for intentional infliction of emotional distress should be dismissed.

## V.    PLAINTIFF DOES NOT STATE A CLAIM FOR DEFAMATION (COUNT VIII).

Plaintiff's claim for defamation of character and business reputation should be dismissed because plaintiff has not identified any specific defamatory statements at issue, and even if she had, her claim is barred by the statute of limitations.

In order to successfully plead defamation, plaintiff must allege ***specific*** defamatory comments made by Fannie Mae.[3]  *See Lee Winter Assocs., Inc. v. Dep't of Health & Human Servs.*, 497 F. Supp. 429, 432 (D.D.C. 1980) (holding that defamation claim was inadequate as a matter of law where "complaint and affidavit are replete with generalities but devoid of specific defamatory comments").  In this case, the complaint does not allege any specific defamatory comments, but rather makes a generic statement that Fannie Mae allegedly took part in the "expression of knowingly false and defamatory information" about the plaintiff.  (Complaint ¶ 53.)  This non-specific language in no way asserts the actual content of the statements alleged, let alone to whom the statements were made.  Because plaintiff has not pleaded defamation with the requisite specificity, her defamation claim should be dismissed.

---

[3]    Plaintiff asserts the defamation claim against Fannie Mae only.  (Complaint ¶ 9.)

**VI.  PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.**

Even if plaintiff could assert a substantive claim against Fannie Mae – and she cannot – any such claim would be barred by the applicable statute of limitations.  As described below, for each of her claims, the time for her to file has passed.

Plaintiff was required to bring her breach of contract claims within three years of the time that she knew the alleged contract breach had taken place.  *See*  D.C. Code § 12-301(7) (2005) (breach of contract); D.C. Code § 12-301(8) (2005) (unlawful discrimination, unlawful retaliation); *Hobson v. Wilson*, 737 F.2d 1, 32 (D.C. Cir. 1984) (three year statute of limitations in the District of Columbia for section 1981 and 1983 claims).  Plaintiff asserts that the May 26, 1998 letter "assured in writing . . . that Fannie Mae would do at least $1 billion of insurance-based business in the next year through her."  (Complaint ¶ 22.)  Based on her own allegations, plaintiff would have known within one year from that date that Fannie Mae had not fulfilled its alleged contractual obligation, which means that her contract-based claims accrued in May 1999.  That specific date notwithstanding, plaintiff certainly was aware that Fannie Mae was not doing business with her by May 2002, the latest date allowable under District of Columbia law for her contract-based claims to be filed.  Indeed, plaintiff's purported "evidence of the ongoing and inexplicable blackballing of Plaintiff Williams from all Fannie Mae business" is an email between defendants Huebscher and Lawch in May 2001 discussing the use of another individual in connection proposed insurance transactions.  (Complaint ¶ 45.)   Although plaintiff asserts that she did not discover the existence of this evidence "until much later," the email itself was forwarded to her on June 1, 2001, more than four years before she filed this case.  (*See*

Huebscher E-mail, attached hereto at Exhibit B.)[4]  Despite her belief that Fannie Mae would not

do business with her, plaintiff chose to wait more than four additional years before filing suit and

thus her claims are time barred.

Plaintiff's interference, emotional distress, and conspiracy claims suffer the same fate.

The statute of limitations for each of these claims is no more than three years under D.C. law.

D.C. Code § 12-301(8) (2005) (tort claims); *Fitzgerald v. Seamans*, 553 F.2d 220, 223 & n.3

(D.C. Cir. 1977) (conspiracy under § 1985); *Beard v. Edmondson & Gallagher*, 790 A.2d 541,

546 (D.C. 2002) (tortious interference); *Bryant v. Orkand Corp.*, No. Civ. 03-2305, 2005 WL

670295, at *5 (D.D.C. Mar. 21, 2005) (dismissing intentional infliction of emotional distress

claim as time-barred, and stating that such claim is subject to statute of limitations for any other

claim to which it is "inextricably intertwined").  According to plaintiff's own complaint, she was

aware of Fannie Mae's purported "interference" more than four years prior to filing suit – at least

one year beyond the latest date she could file such a claim.  As described above, plaintiff herself

alleges that she was "blackball[ed]" from doing any Fannie Mae business in 2001.  (Complaint ¶

45.)  Additionally, plaintiff's conspiracy and emotional distress claims are inextricably

intertwined with her defamation, conspiracy, contract- and interference based claims.  (*See*

Complaint ¶ 70 (allegation of conspiracy "to harm the business interests" of plaintiff), ¶ 79 (the

claims "constitute common law intentional infliction of emotional distress . . . through the

Defendants' active, conspiratorial and malicious attempts to curtail or terminate her ongoing

business relationships, and to damage her personal and business reputation.").)  Thus, because

plaintiff was aware of the actions underlying her defamation, conspiracy, contract- and

interference- based claims by 2002 – and indeed was aware of any alleged defamation by 2004 –

---

[4] Fannie Mae is attaching this email as Exhibit B, because plaintiff specifically refers to its contents in her complaint.  *See New York State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110 (D.D.C. 2003).

her conspiracy and emotional distress claims also are barred by the statute of limitations.  *See Bryant*, 2005 WL 670295, at *5.

Finally, plaintiff's defamation claim is easily disposed.  The District of Columbia has a one-year statute of limitations for defamation actions.  D.C. Code § 12-301(4) (establishing one-year limitations period on claims of libel or slander).  Plaintiff alleges that the defamation occurred in the period of July 1, 1998 through 2003.  (Complaint ¶¶ 52, 53.)  Since her complaint was filed on July 28, 2005 – literally two years after any allegations from 2003 – her claim for defamation is barred by the one year statute of limitation.

## CONCLUSION

Based on the foregoing, defendants respectfully request that this Court dismiss all of plaintiff's claims with prejudice.

September 12, 2005                              Respectfully submitted,


                                               /s/ Brian P. Brooks
                                               Brian P. Brooks (DC Bar 448987)
                                               Evelyn L. Becker (D.C. Bar No. 451163)
                                               Sarah A. Goldfrank (D.C. Bar No. 482382)
                                               O'Melveny & Myers LLP
                                               1625 Eye Street, N.W.
                                               Washington, D.C. 20006
                                               (202) 383-5300 (phone)
                                               (202) 383-5414 (fax)

                                               *Counsel for Defendants Federal National Mortgage Association, Richard Lawch and Grace Huebscher*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARIALICE BATHRUS WILLIAMS, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 1:05CV01483 |
| vs. : | |
| : | Judge John D. Bates |
| FEDERAL NATIONAL MORTGAGE : | |
| ASSOCIATION, *et al*. : | |
| : | |
| Defendants. : | |
| : | |

### [PROPOSED] ORDER

Upon consideration of Defendants Federal National Mortgage Association ("Fannie Mae"), Richard Lawch, and Grace Huebscher's Motion to Dismiss Plaintiff Marialice B. Williams's Complaint for failure to state a claim upon which relief can be granted, it is hereby ordered that:

1.     The Motion is GRANTED; and

2.     Plaintiff Marialice B. Williams's Complaint is hereby dismissed with prejudice.


_____
HONORABLE JUDGE JOHN D. BATES
United States District Court Judge

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail this 12th day of September, 2005 upon:

Michael W. Beasley, Esq.　　　　　　　　Brian Lederer, Esq.
411 East Broad Street　　　　　　　　　　3003 Van Ness Street, N.W.
Falls Church, VA 22046　　　　　　　　　　Suite #W228
　　　　　　　　　　　　　　　　　　　　Washington, D.C. 20008


　　　　　　　　　　　　　　　　　　　　<u>/s/ Kyra Grundeman</u>
　　　　　　　　　　　　　　　　　　　　Kyra Grundeman