## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARIALICE BATHRUS WILLIAMS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 1:05cv01483** |
| ) | |
| **FEDERAL NATIONAL MORTGAGE** ) | **Judge John D. Bates** |
| **ASSOCIATION,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Comes Now, Marialice Bathrus Williams, by and through her undersigned counsel, and hereby files this Opposition to the Defendants' Motion to Dismiss all claims in this action, which ostensibly is based on Fed. R. Civ. P. 12(b)(6), failure to state a claim. More importantly, this Opposition filing states for the Court certain facts and circumstances which may render moot or irrelevant all or a vast majority of the arguments presented by Defendants in their Motion to Dismiss.

### INTERVENING CIRCUMSTANCES

Defendants' Motion to Dismiss substantially misstates the content and intent of the allegations and claims contained in the original Complaint filed in this proceeding. Rather than engage in an extensive discourse before the Court which explains and debates these clearly erroneous interpretations, Plaintiff has today filed an Amended Complaint with the Court, pursuant to her rights under Fed. R. Civ. P. 15(a).

The filing of the Amended Complaint will generate, of course, the entitlement of the Defendants to file, in the alternative, either a new dispositive motion or a responsive pleading to

the allegations contained in the Amended Complaint.  When such document is filed, Plaintiff

will respond with either an Opposition (to a dispositive motion) or, in the event that Defendants

file an Answer, this case may proceed with an appropriate procedural schedule.

## PURPOSES OF THE AMENDED COMPLAINT

Essentially, the Amended Complaint clarifies and expands upon the factual allegations

set forth in the Complaint, and eliminates any ambiguity regarding the nature of the specific

claims stated.

These objectives are accomplished through the inclusion of specific facts which occurred

in October 2003 which first gave rise to Plaintiff Williams' knowledge of an active and

conspiratorial refusal on the part of all Defendants to proceed with a fair and unbiased business

relationship with her and her business entities.  Such facts, which were alluded to but

unfortunately not specifically set forth in the original Complaint, will resolve any and all

contested issues regarding the commencement of an appropriate running of all applicable

Statutes of Limitations, which the parties apparently agree is a 3-year period for those allegations

contained in the Complaint.

As importantly, the Amended Complaint eliminates all claims of breach of contract in

this case, and instead focuses on the established assertions that the Defendants' violations of

Plaintiffs' civil rights arising under Title 42, Sections 1981 and 1983, arise from the refusal of

the Defendants, because of Plaintiff's race and sex, to permit Plaintiff "to make and enforce"

contracts with Fannie Mae during the cited periods of time at issue in this case.  Amended

Complaint, Counts I and II.  These allegations clearly do not require the presence of a binding

contract; but only require reasonable and good faith efforts on the part of the victim "to make" a

contract with the perpetrator of the unlawful conduct.  As exhaustively set forth in the Amended

Complaint, such efforts were ongoing by Plaintiff Williams from her termination of employment

with Fannie Mae until at least October 2003, and arguably continue to this day.

Allegations of unlawful conspiratorial conduct pursuant to Title 42, Section 1985,

similarly rely on the concerted agreement and specific efforts among the Defendants,

constituting further and separate unlawful conduct, in refusing to permit Plaintiff "to make" a

contract with Fannie Mae.  Amended Complaint, Count III.  Again, both the original Complaint

and the Amended Complaint make extensive assertions regarding the nature and conduct of

activities constituting the alleged conspiracy.

The Amended Complaint also refines and makes more specific the allegations contained

in the original Complaint regarding "tortious interference with business relationships."  Citing

the District of Columbia District Court case *Ulico Cas. Co., v. Prof. 1 Indem. Agency, Inc.,*  1999

U.S. Dis. LEXIS 8591 (D.D.C. 1999), a decision rendered by Chief Judge Hogan, Plaintiff

Williams now has placed her claim of tortious interference into the context of the District of

Columbia common law addressing "tortious interference with prospective economic advantage,"

the subject of the *Ulico* litigation.  This law does not, of course, require the existence of an

existing contract, but instead relies upon the following conditions cited by the Court:

> "Under District of Columbia law, Ulico [Plaintiff] must allege (1) the existence of a
> valid business relationship or expectancy; (2) knowledge of the relationship or
> expectancy on the part of PIA [Defendant]; (3) intentional interference inducing or
> causing a breach or termination of the relationship or expectancy, and (4) resultant
> damage.  *See Bennett Enter., Inc. v. Domino's Pizza, Inc.,* 310 U.S. App. D.C. 192,
> 45 F.3d 493, 499 (D.C. Cir. 1995)*.*

*Ulico, supra* at 4.  *See also Bannum, Inc. v. Citizens for a Safe Ward 5, Inc., et al.,* 383

F.Supp.2d 32 (D.D.C. 2005)(TLF).

3

While it is Plaintiff's position that these necessary components were all contained within the original Complaint, even though the term of "tortious interference with prospective economic advantage" was not specifically used, it is undeniable that each and every one of these required components are now alleged sufficiently within the Amended Complaint. Amended Complaint, Count IV.

Finally, the Amended Complaint now specifically alleges those actions of Defendants which constitute the common law tort within the District of Columbia of "intentional infliction of emotional distress." Amended Complaint, Count V. Defendants' actions in creating and perpetrating a secret scheme to deny to Plaintiff Williams all fair and legitimate opportunities to contract with Defendant Fannie Mae, even while for years maintaining an open and deliberate ruse to create in Plaintiff a reasonable expectation that such contractual relationship would ensue, clearly constitute the grievous and insidious actions giving rise to this claim.

### <u>ARGUMENTS IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

Should the Court desire to consider any component of the Defendants' currently pending Motion to Dismiss, despite the timely filing of the Amended Complaint, Plaintiff Williams would respectfully urge the Court to reject the Motion to Dismiss in its entirety.

Plaintiff has sued Defendants for secretly black-balling her and refusing to enter into contracts with her based on her race and sex, and as a result of personal malice towards her resulting from Plaintiff's prior protected EEO actions while an employee with Fannie Mae. Defendants argue that because that there was no contract actually entered into between Plaintiff and Fannie Mae, and because Plaintiff filed her Complaint "too late," the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

### A. <u>General Legal Standards Applicable to Consideration of the Motion to Dismiss</u>

The law governing the Court's review and determination regarding the merits of Defendants' Motion to Dismiss is well-established in this jurisdiction.

Dismissal pursuant to Rule 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)." The Court "must construe the complaint in a light most favorable to [the Plaintiff] and give [tbe Plaintiff] "the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States,* 199 U.S. App. D.C. 23, 617 F.2d 605, 608 (D.C. Cir. 1979). "Thus, [the Defendant] must demonstrate that [the Plaintiff] cannot prove any set of facts to support its claim." *Id.; Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Atchison v. District of Columbia,* 73 F.3d 418, 422 (D.C. Cir. 1996).

Furthermore, the Complaint must be construed in the light most favorable to the Plaintiff, while assuming for the purposes of consideration of the Motion to Dismiss that all of the allegations of the Complaint are true. *E.g., Albright v. Oliver,* 510 U.S. 266 (1994); *Hartford Fire Ins. Co. v. California,* 509 U.S. 764 (1993); *Atchison, supra* at 422. A Complaint is sufficient so long as it fairly puts the defendant on notice of the claim; accordingly, liberal rules of pleading normally protect a plaintiff from dismissal at the pleading stage when the Complaint can be said to state a claim if all inferences are drawn in the plaintiff's favor. *Atchison, supra* at 422.

Based on these standards, Defendants cannot prevail on their Motion to Dismiss.

In the introduction and background to Defendants' Motion, Defendants attempt to spin their version and interpretation of Plaintiff's Complaint. Based on the above cited principles of the appropriate application of laws governing such Rule 12(b)(6) motions, Defendants'

characterizations are entitled to no consideration by the Court. Indeed, as is the law, Plaintiff's Complaint and allegations contained therein must be construed completely in Plaintiff's favor for consideration of the Motion to Dismiss.

For a complete statement of Plaintiff's case and allegations, see paragraphs 1-59 of the original Complaint, now readdressed, expanded and clarified in paragraphs 1-69 of the Amended Complaint. It would serve no purpose to repeat those allegations here, although specific references easily may be cited to the individual original (and modified, per the Amended Complaint) Counts, set forth as the various causes of action to be addressed in this litigation.

Under the Federal Rules of Civil Procedure, the purpose of the Complaint is to give notice of the issues to be litigated, and the details provided in both the original Complaint and the Amended Complaint certainly withstand any scrutiny as to sufficiency. There is no question that the Complaint filed in this proceeding gives fair notice of the issues to be litigated, with sufficient specificity, in sufficient timeliness to establish well-recognized causes of action by statutory and case law.

Defendants' Motion to Dismiss assumes and asserts that Plaintiff Williams cannot prevail on her claims of violation of her Civil Rights because she has not established or pled the existence of a contract between her and Defendant Fannie Mae. Defendants' assertions, however, mischaracterize the nature of Plaintiff's Complaint, which is based in substantial part not on the existence of a contract between Plaintiff and Defendant Fannie Mae but upon an improper refusal on the part of Defendant Fannie Mae to enter into any contract with Plaintiff.

Under the facts and circumstances presented in this case, such refusal on the part of Defendant Fannie Mae was improper because of improper motives behind such refusal, and was further improper because of the open and expressed willingness of Defendants to engage in such

contract activity while at the same time harboring and nurturing a secretive and insidious conspiracy to deny to Plaintiff Williams any such contractual benefits.

Thus, the Complaint in this proceeding, as well as the subsequently filed Amended Complaint, allege a cause of action not contractual in nature but rather based on the Civil Rights laws of the United States, and upon District of Columbia common laws of tortious interference with prospective economic benefits, and intentional infliction of emotional distress.

**B.  Violations of Plaintiff's Civil Rights**

Justification for Plaintiff's Civil Rights causes of action is well founded in both statutory and case law.  Plaintiff Williams has properly and sufficiently stated her statutory cause of action, to wit:  Title 42 of the United States Code, Section 1981 states:

> (a)  "All persons ... shall have the same right ... to make and enforce contacts ... as enjoyed by white citizens ...."; (b) "make and enforce defined" … "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Defendants blatantly assert in their Motion to Dismiss that "the only part of the statutory provision about which [Plaintiff] appears to allege a violation is her right to 'enforce a contract' with Fannie Mae."  Motion to Dismiss, at 4.  From this somewhat specious argument, Defendants argue that in order to prevail under Section 1981, Plaintiff Williams must plead the existence of a valid contract between Fannie Mae and herself.

This is an incorrect statement of Plaintiff's cause of action, and is an incorrect statement of the clear meaning of Section 1981.  The statute grants to all persons the same right "to make" a contract "as enjoyed by white citizens."  The clear import and meaning of the phrase "to make" a contract in Section 1981 contemplates the equal opportunity of all citizens, regardless of race, to establish and engage in contractual relationships governed by Federal law.  Plaintiff Williams

alleges in her Complaint that Defendants have wrongfully refused, and continue to refuse, "to make" a contract with Plaintiff, an African-American/Black person, based upon unlawful motives and despite Plaintiff Williams' clearly superior qualifications and entitlements to engage in such contract activities – thus denying to Plaintiff Williams the same right "to make" a contract "as enjoyed by white persons."

To accept the Defendants' arguments on this issue would be to mistakenly and erroneously conclude that Defendants may refuse to contract with an individual on racial grounds, and then be rewarded for doing so because Plaintiff does not possess a contract and, therefore, cannot claim an infringement of her Civil Rights under 42 U.S.C. Section 1981. This position would thrust the Civil Rights laws of the United States quickly back into the 1950's.

As certainly as the right to enter into contractual relations regardless of race is established, similary Title 42, Section 1985 forbids the establishment and execution of a conspiracy in order to deny to claimants the right to engage in such lawful activities as "to make" contracts.

**C.  Plaintiff's Assertions of Tortious Interference**

Defendants also challenge the claims of Plaintiff Williams regarding the tortious interference of Defendants in Plaintiff Williams' right to establish beneficial economic relationships through the contracting process. The law of the District of Columbia, however, is clearly established on this issue.

As discussed earlier in this Opposition, the Amended Complaint merely refines and makes more specific the allegations contained in the original Complaint regarding "tortious interference with business relationships." Citing the District of Columbia District Court case

*Ulico Cas. Co., v. Prof. 1 Indem. Agency, Inc.,* 1999 U.S. Dis. LEXIS 8591 (D.D.C. 1999), a

decision rendered by Chief Judge Hogan, Plaintiff Williams now has placed her claim of tortious

interference into the context of the District of Columbia common law addressing "tortious

interference with prospective economic advantage," the subject of the *Ulico* litigation.  This law

does not, of course, require the existence of an existing contract, but instead relies upon the

following conditions cited by the Court:

> "Under District of Columbia law, Ulico [Plaintiff] must allege (1) the existence of a
> valid business relationship or expectancy; (2) knowledge of the relationship or
> expectancy on the part of PIA [Defendant]; (3) intentional interference inducing or
> causing a breach or termination of the relationship or expectancy, and (4) resultant
> damage.  *See Bennett Enter., Inc. v. Domino's Pizza, Inc.,* 310 U.S. App. D.C. 192,
> 45 F.3d 493, 499 (D.C. Cir. 1995)*.*

*Ulico, supra* at 4.  *See also Bannum, Inc. v. Citizens for a Safe Ward 5, Inc., et al.,* 383

F.Supp.2d 32 (D.D.C. 2005)(TLF)

Plaintiff Williams clearly pleads factual circumstances, and puts the Defendants on

sufficient notice, of her claims regarding the presence of each of these four cited and necessary

elements to constitute the presence of the claimed tortious activity.

The Complaint and Amended Complaint clearly allege all four elements of the cause of

action concerning tortious interference with prospective economic advantage.  Regarding the

"but for" issue raised in *Ulico, supra,* Plaintiff has amply pleaded her positon:  "but for" the

unlawful actions of Defendants Lawch and Huebscher, Fannie Mae would have concluded

contracts with her, and Plaintiff would have realized her prospective economic advantages.

### D.  **Intentional Infliction of Emotional Distress**

The Complaint, and the Amended Complaint, both allege in great detail the specific facts

which constitute the egregious and conspiratorial actions of the Defendants in carrying out the

"black-ball" vendetta against Plaintiff Williams which caused her economic injury and collateral

physical and emotional injury.  The clearly planned and purposeful nature of such actions gives

rise to the common law claim of tort, the intentional infliction of emotional distress directed

against Plaintiff Williams by each of the Defendants.  Indeed, the facts constituting this issue of

the litigation are so compelling that, if accepted as stated in the Complaint and in the Amended

Complaint, there is no basis whatsoever for granting dismissal under Rule 12(b)(6).

### E.  The Statute of Limitations Issue

Defendants' Motion to Dismiss relies heavily on a previously cited document described

in the original Complaint from the period of 2001 as establishing the appropriate trigger point to

initiate the running of the appropriate District of Columbia Statute of Limitations governing ALL

of the claims set forth in the Complaint.

The parties to this matter apparently agree that the applicable Statutes of Limitations are

three years for all identified claims.  Defendants argue that the 2001 period communication cited

in the Complaint, and now provided as an Attachment to Defendants' Motion to Dismiss,

establishes the effective date for the running of the Statute of Limitations and that, therefore,

Plaintiff Williams was required to file the instant lawsuit no later than approximately mid-2004

in order to sustain her various claims.

In fact, however, as more fully explained and described in Plaintiff's Amended

Complaint, the 2001 communications merely provided an initial but non-dispositive clue

regarding the Defendants intent to deny to Plaintiff a single project for which she was seeking a

contractual relationship with Fannie Mae.  Moreover, the actions of Defendants following the

Plaintiff's discovery of the 2001 communication were intended and did indeed convince Plaintiff

That the Defendants were still eager and willing to permit Plaintiff Williams to engage in contractual relationships with Fannie Mae. Such actions were continuous and openly engaged in by the Defendants.

As initially set forth in the original Complaint, and as more fully described in the Amended Complaint, however, Plaintiff was continuously tricked and duped into believing that Defendants were willing and eager to permit her to engage in contractual relationships with Fannie Mae, while the Defendants were secretly engaged in conspiratorial and well orchestrated efforts to deny to Plaintiff any such opportunities, in violation of both Plaintiff's civil rights and her common law rights. The active concealment of their true unlawful intentions worked all too well, and Plaintiff was continuously tricked into believing that the open actions of the Defendants were reflective of their true intentions.

As stated with specificity in the Amended Complaint, it was not until after a business development meeting with the Defendants conducted on October 8, 2003, that Plaintiff Williams subsequently became aware of the insidious and destructive plot of Defendants to deny altogether any ability of Plaintiff to contract with Fannie Mae, or to engage in any productive business ventures. This was after Fannie Mae and its senior officers, including the two named Defendants, ceased all communications entirely with Plaintiff Williams, refusing to respond to all correspondence and telephone calls initiated by Plaintiff Williams.

Further, this brutal discovery of betrayal at the hands of the Defendants was after the expenditure of several years of concerted effort by Plaintiff Williams to generate such business opportunities with Fannie Mae as her experience and education should have warranted, and despite the expenditure of hundreds of thousands of dollars of personal funds in furtherance of

establishing a successful business relationship with Fannie Mae – all of which were generated and expended in substantial part because of the continuing encouragement of the Defendants that such actions would be rewarded with reasonable business opportunities.

The Amended Complaint merely reasserts, in more detail, the allegations in the original Complaint that the efforts of Plaintiff to establish the contractual and business relationships with Fannie Mae extended through at least 2003. In fact, documentary evidence now is available and cited in the Amended Complaint which establishes the existence of ongoing good-faith (on the part of Plaintiff) efforts to conclude contractual relationships between Plaintiff Williams and Fannie Mae through the meeting conducted on October 8, 2003.

As a result of these facts, any running of an applicable Statute of Limitations governing the various claims set forth in the Complaint, or the Amended Complaint, would commence the three-year period no earlier than October 2003. Thus, clearly and definitively, all claims of Plaintiff are within the statutory Statutes of Limitations applicable to the District of Columbia and to this Federal litigation.

## **CONCLUSION**

The timely and appropriate filing of Plaintiff's Amended Complaint essentially renders moot and ineffectual the previously filed Defendants' Motion to Dismiss the original Complaint in this proceeding. As set forth herein, the additions, clarifications and adjustments made to the original Complaint have cured all alleged deficiencies initially asserted by Defendants' Motion to Dismiss, although clearly the Defendants may elect to again attempt a dispositive filing to avoid their legal obligations to Plaintiff Williams for their own unlawful actions.

Should the Court desire to entertain and decide upon any issues set forth in the Defendants' Motion to Dismiss, however, it is respectfully argued that the facts, circumstances and legal precedents set forth herein are sufficient to deny to Defendants all such relief.

WHEREFORE, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

Deleted:

/S/
Michael W. Beasley, Esq.
D. C. Bar No. 248930
411 East Broad Street
Falls Church, Virginia  22046
Phone:  (703) 241-2909
Fax:  (703) 241-5885

/S/
Brian Lederer, Esq.
D. C. Bar No. 184203
3003 Van Ness St., NW, Suite #W228
Washington, D. C.  20008
Phone:  (202) 244-1715

Members of the District Court Bar for the
United States District Court for the
District of Columbia
Attorneys for Plaintiff
Marialice Bathrus Williams

October 31, 2005

13

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that one copy of the foregoing "Plaintiff's Opposition to

Defendants' Motion to Dismiss," was provided by first-class mail, postage prepaid, this

31st day of October 2005, to the following named counsel for Defendants:

Evelyn L. Becker, Esquire
Sarah Alexander Goldfrank, Esquire
O'Melveny & Myers, LLP
1625 Eye Street, N. W.
Washington, D. C.  20006-4001

Counsel for Defendants Fannie Mae,
  Lawch and Huebscher




                                                    /S/
                                        Michael W. Beasley, Esq.
                                        D. C. Bar No. 248930

Counsel for Plaintiff

14