IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARIALICE BATHRUS WILLIAMS, | : | Civil Action No. 1:05CV01483 |
| Plaintiff, | : | Judge John D. Bates |
| vs. | : | **DEFENDANTS FEDERAL NATIONAL MORTGAGE ASSOCIATION, RICHARD LAWCH, AND GRACE HUEBSCHER'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al*. | : | |
| Defendants. | : | |

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Federal National Mortgage Association ("Fannie Mae"), Richard Lawch ("Lawch"), and Grace Huebscher ("Huebscher") (collectively "Defendants") respectfully move this Court to dismiss plaintiff's amended complaint for failure to state a claim upon which relief can be granted.

## INTRODUCTION

In plaintiff's first complaint, she brought civil rights claims based on the theory that she had a post-employment contract with her former employer, Fannie Mae, and that Fannie Mae supposedly breached that contract. Once Fannie Mae demonstrated in its initial motion to dismiss that plaintiff could not even allege the existence of a contract with Fannie Mae, plaintiff changed her story. Now, in her first amended complaint, plaintiff contends not that she had a contract with Fannie Mae (as she initially claimed), but instead that Fannie Mae failed to enter into a contract with her. But plaintiff's new theory is as deficient as her first. She still does not allege that there was any particular contract that she had some right to, much less that such a contract was discriminatorily given to someone else. Her claims for conspiracy, intentional

infliction of emotional distress, and interference with business relationships are also deficient as a matter of law.[1]  Accordingly, her amended complaint should be dismissed in its entirety.

## BACKGROUND

From 1989 to 1998, plaintiff held various positions with Fannie Mae, and spent her last six years as Director of Capital Markets, a mid-level management position in Fannie Mae's Multifamily Division.  (*See* Am. Compl. ¶ 1.)  She alleges that in 1997 and 1998, senior officials at Fannie Mae "did not understand and were not willing to facilitate the extremely critical products and processes which she was developing" and "clearly did not appreciate the true importance or value of Plaintiff's generation of methods to mitigate or eliminate Fannie Mae's risk exposure."  (Am. Compl. ¶ 18.)  She made claims of sex and race discrimination and retaliation against Fannie Mae toward the end of her employment and left the company in June 1998 pursuant to a settlement agreement in which she released any such claims.  (*See* Am. Compl. ¶ 19.)  After she left Fannie Mae, plaintiff started her own firm, Risk Mitigation Strategists, LLC ("RMS"), which would focus on the development of products that she hoped to market to Fannie Mae.  (*See* Am. Compl. ¶ 33.)  She did this despite her belief when she was employed with Fannie Mae that it was not willing to facilitate the development of the products she was working on and did not appreciate their true value.  (*See* Am. Compl. ¶ 18.)  Although she contends that Fannie Mae assured her it would do business with her in the future, she fails to point to any specific promise, and concedes that Fannie Mae never "consummated formally a business relationship" with her.  (*See* Am. Compl. ¶¶ 21, 22, 23, 32, 42 and May 26, 1998 letter

---

[1]  Defendants previously moved to dismiss all of plaintiff's claims based on the applicable statute of limitations.  Although plaintiff has amended her complaint to try to avoid dismissal on this basis, her own testimony in a prior matter makes the issue ripe for summary adjudication.  Defendants are therefore filing a motion for summary judgment in addition to their motion to dismiss.

to CAM Financial Services from Lou Hoyes at Fannie Mae, attached hereto at Exhibit A[2] (letter suggesting possible business in 1998, but not addressed to plaintiff and containing no promises of work to plaintiff).)

## ARGUMENT

**I.   PLAINTIFF'S SECTION 1981 CLAIMS (COUNTS I AND II) SHOULD BE DISMISSED BECAUSE SHE FAILS TO ALLEGE THAT OTHERS RECEIVED CONTRACTS SHE SHOULD HAVE RECEIVED.**

Plaintiff's contract-based claims – Counts I (Unlawful Discrimination Based Upon Race and Sex), and II (Unlawful Retaliation for the Prior Exercise of Protected Civil Rights Based on Race and Sex) – must be dismissed for failure to state a claim. While plaintiff initially claimed that she entered into a contract with Fannie Mae, she now contends that Fannie Mae failed to made a contract with her and thereby unlawfully discriminated against her due to her race and her sex[3] in violation of 42 U.S.C. § 1981 (1991).[4] Her new allegations, however, also fail to state a claim upon which relief can be granted.

In order for a plaintiff to state a claim under Section 1981, "[s]he must have been deprived of a right which, under similar circumstances, would have been accorded to a person of

---

[2]   While this letter is not attached to plaintiff's amended complaint, the Court should consider it since plaintiff specifically refers to the contents in her complaint. *See New York State Bar Ass'n v. FTC*, 276 F. Supp. 2d 110 (D.D.C. 2003) ("A document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned . . . Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.") (quotations omitted). This 1998 letter is integral to plaintiff's complaint, since it is the only specific written document she alleges in connection with her alleged efforts to contract with Fannie Mae. (*See* Am. Compl. ¶¶ 21, 22, 23, and 32.)

[3]   Plaintiff's sex-based discrimination claims under 42 U.S.C. § 1981 claims cannot stand, as Section 1981 only covers race discrimination, not discrimination based upon sex. *See, e.g., Schetter v. Heim,* 30 F. Supp. 1070, 1073 (E.D. Wisc.1969) ("These sections [Section 1981 and Section 1982] are clearly limited to racial discrimination . . . ."); *Jones v. Bechtel*, 788 F.2d 571 (9th Cir. 1986); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968); *Georgia v. Rachel*, 384 U.S. 780 (1966); *Agnew v. Compton*, 239 F.2d 226 (9th Cir. 1956), *cert. denied* 353 U.S. 959 (1957).

[4]   Additionally, plaintiff makes an allegation that her claims under Section 1981 are somehow "applied through" 42 U.S.C. § 1983. (*See* Am. Compl. ¶¶ 5, 8, 9, 71.) "The terms of § 1983 demand only two allegations: (1) that a 'person' has deprived the plaintiff of a federal right, constitutional or statutory, and (2) that the 'person' acted under color of state law when depriving the plaintiff of the federal right. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). If either element is missing, then a § 1983 claim has not been pleaded. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991)." *Morris v. Kansas Dep't of Revenue*, 849 F. Supp. 1421, 1425 (D. Kan. 1994). Plaintiff has nowhere alleged that Fannie Mae is somehow acting "under color of state law" - nor could any such allegation stand. Therefore, any claims that may be viewed as arising under Section 1983 cannot stand.

a different race." *Schetter v. Heim*, 30 F. Supp. at 1073. A claim under Section 1981 fails where a plaintiff cannot allege that she was denied an opportunity that someone else of a different race received. *Cf. Terry v. Cook*, 866 F.2d 373 (11th Cir. 1989) (employment case).

Plaintiff's amended complaint simply does not allege there was any particular opportunity at Fannie Mae that she was entitled to receive, nor does it allege that someone else received the same opportunity she was denied. Indeed, plaintiff states that her skills and expertise were "unique" and that she used specific processes to come up with a "new" area of business. (*See* Am. Compl. ¶¶ 16, 17, 25.) She further admits that Craig Ott, the individual she contends Fannie Mae "directed" business to, was only "structuring and closing mortgage transactions *loosely based* upon the very same business concepts" plaintiff had developed at Fannie Mae. (Am. Compl. ¶ 59) (emphasis added.) Thus, by plaintiff's own admissions, these were not the same opportunities that plaintiff alleges she was denied. Moreover, there is no allegation that Craig Ott was dealing with the same insurers as plaintiff, that his interaction with Fannie Mae was the same as her proposed role, or that Fannie Mae had any need of plaintiff's proposed products. Finally, plaintiff does not even allege that Fannie Mae actually entered into an agreement with Mr. Ott – merely that the Company "directed business" to him. In short, plaintiff has utterly failed to allege that there was any opportunity denied to her in favor of someone of a different race or sex.

Additionally, claims under Section 1981 must allege specific facts sufficient to show discrimination. *See, e.g.*, *Garg v. Albany Indus. Dev. Agency*, 899 F. Supp. 961 (N.D.N.Y. 1995), *aff'd*, 104 F.3d 351 (2d Cir. 1996) (dismissing claims under Section 1981 because the claim must allege with specificity facts sufficient to show or raise plausible inference that defendants purposefully discriminated against plaintiffs on basis of plaintiffs' race). Plaintiff has

4

stated no specific factual allegations that could support that defendants discriminated against her purposefully due to her race.  She mentions many times in her amended complaint that she is African-American. (*See* Am. Compl. ¶¶ 1, 29, 50, 57, 71.)  She also mentions that two of the defendants are white.  (*See* Am. Compl. ¶¶ 3, 4.)  But there are no specific facts whatsoever to support her allegations that Fannie Mae's decision not to use plaintiff's products had anything to do with racial discrimination.  (*See* Am. Compl. ¶¶ 57, 71.)  Instead, plaintiff acknowledges that defendants did not understand her skills and were not willing to facilitate "the extremely critical products" she was developing, even while she was at Fannie Mae.  (*See* Am. Compl. ¶ 18.)  Thus, her own explanation of the situation does not support an inference that she was discriminated against due to her race, but instead suggests that Fannie Mae simply did not believe that the processes she was developing were in its interests.

In short, plaintiff has failed to allege that someone received the same contracts she was, allegedly, denied the opportunity to make and to plead with any specificity facts that would raise a plausible inference that she was discriminated against because of her race.  For both these reasons, plaintiff's claims under Section 1981 should be dismissed.

**II.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY (COUNT III).**

Plaintiff has done nothing in her amended complaint to resurrect her conspiracy claim because she cannot escape the simple rule that a corporation cannot conspire with its officers and agents unless they are operating outside the scope of their employment.  *See Weaver v. Gross*, 605 F. Supp. 210, 214-215 (D.D.C. 1985) (plaintiff's claims dismissed where plaintiff alleged that officers and other agents of a corporation adopted a discriminatory policy and practice).  Lawch and Huebscher are Fannie Mae officers who were acting within the scope of their employment throughout the timeframe in which Fannie Mae was considering undertaking a contractual relationship with plaintiff.  Thus, plaintiff's conspiracy claim should be dismissed

5

because – by definition – Fannie Mae, the corporation, cannot conspire with its officers, Mr. Lawch and Ms. Huebscher. Plaintiff has not amended her complaint to allege anything that would change that fact.

Moreover, Section 1985 "does not apply to *all* conspiratorial tortious interferences with the rights of others, but only those motivated by some class-based, invidiously discriminatory animus." *Hobson v. Wilson*, 737 F.2d 1, 14 (D.C. Cir. 1984); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ( there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Denman v Leedy*, 479 F2d 1097 (6th Cir. 1973); *Arnold v Tiffany*, 487 F2d 216 (9th Cir. 1973), *cert. den.* 415 U.S. 984; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255 (N.D.N.Y. 2003); *Fisher v. Wellington Exempted Village Schs. Bd. of Educ.*, 223 F. Supp. 833 (N.D. Ohio 2001); *Benson v. United States*, 969 F. Supp. 1129 (N.D. Ill. 1997). Nowhere in her original or amended complaints has plaintiff alleged that Fannie Mae, Lawch, and Huebscher conspired against her because she was either African-American or female.

Finally, "[a]llegations of conspiracy [under § 1985] are subject to heightened pleading standards. 'Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed.'" *Williams v. Washington Post Co.*, Case No. 89-3256, 1990 U.S. District LEXIS 7984, at *4 (D.D.C. June 28, 1990) (quoting *Hobson*, 737 F.2d at 30 (internal quotations omitted).) Plaintiff's allegations cannot withstand such scrutiny. She merely alleges that defendants "engage[ed] in an intentional and malicious plan" and "created a scheme and conspiracy." (Am. Compl. ¶ 44, 49.) Such vague and conclusory allegations do not make a proper conspiracy claim, and therefore this count should be dismissed.

### III. PLAINTIFF'S INTERFERENCE-BASED CLAIM (COUNT VI) SHOULD BE DISMISSED.

Plaintiff attempts to overcome the deficiencies in her original pleading by recasting her original tortious interference with contractual relationships claim into a claim for tortious interference with business relationships (Count IV (Tortious Interference with Business Relationships).) In particular, she alleges that Fannie Mae "discouraged" consultants, brokers, lenders and customers from securing "***Fannie Mae-related*** insurance products" through her. (*See* Am. Compl. ¶ 61 (emphasis added).) This allegation, of course, is the exact same one made with respect to her contract-related claims – Fannie Mae purportedly refused to do its insurance-related business through her. (*Compare* Am. Compl. ¶ 61 *with* ¶¶ 22, 26.) Indeed, the only damages she alleges are "commissions" she contends she should have earned from transactions with Fannie Mae. (*Id.* ¶ 64.)

Plaintiff's newly cast claims fail for two reasons. As an initial matter, as discussed in detail above, her claims fail under Section 1981. Plaintiff cannot avoid dismissal of what are essentially contract-based claims simply by inserting third parties into the mix. Indeed, the D.C. Circuit long ago recognized that "[a]n invalid promise cannot be turned into a valid claim by describing the promisor's refusal to perform it as an interference either with the expectancies or with the contract rights of the promisee." *Rosenkroff v. Finklestein*, 195 F.2d 203, 204 (D.C. Cir. 1952); *see also Donohoe v. Watt*, 546 F. Supp. 753, 757 (D.D.C. 1982) ("[I]t is a well settled principle of law that this tort arises only when there is an interference with a contract between the plaintiff and a third party."), *aff'd*, 713 F.2d 864 (D.C. Cir. 1983).

Moreover, even if plaintiff could possibly allege a separate, tort-based claim, this claim still must fail because plaintiff has not met the basic elements of pleading her claim. As plaintiff herself alleges, in order to claim tortious interference with business relationships under District

7

of Columbia law, there must be: "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of [Defendant]; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." (Plaintiff's Opposition to Defendants' Motion to Dismiss, at 9, quoting *Ulico Cas. Co. v. Prof. Indem. Agency, Inc.,* 1999 U.S. Dist. LEXIS 8591, at * 4 (D.D.C. 1999).) Plaintiff fails to allege these elements, and therefore her claim cannot stand.

*First*, in order to successfully plead her claim for tortious interference with business relationships, plaintiff must plead the existence of a "valid business relationship or expectancy" with a third party. *See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 45 (D.D.C. 2005) ([T]o prevail on a claim for tortious interference with prospective economic advantage, a plaintiff must show . . . the existence of an established business relationship or expectancy."); *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 499 (D.C. Cir. 1995). An "expectancy" of a business relationship cannot be a one-sided hope or an intention to do business with a third party, but rather there must be evidence of some type of mutual understanding of an expected future contract between the parties. *See Ellsworth Assocs. v. United States*, 917 F. Supp. 841, 850 (D.D.C. 1996); *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) ("[A] protected relationship exists only if there is a reasonable likelihood or probability that a contract would have resulted; *there must be something beyond a mere hope.*") (emphasis added).

In her amended complaint, plaintiff only alleges that defendants "discouraged" third parties from working with her. (*See* Am. Compl. ¶¶ 60, 61.) In her own example of this alleged unlawful conduct, she admits that she merely "intended to work with CAM Financial." (Am. Compl. ¶ 61.) An intention to do business is not a contract or business relationship. *See, e.g.*,

8

*Perles v. Kagy*, 362 F. Supp. 2d 195 (D.D.C. 2005). Plaintiff's allegation that defendants "actively discouraged CAM Financial officials from doing business [with her]" does not satisfy the requirements for interference with a *business relationship*, since no such relationship was ever alleged in connection with the conduct.

Plaintiff does not allege that the third parties (including CAM Financial) would have contracted with her if not for Fannie Mae's purported interference. Plaintiff does not state either that there was a "reasonable likelihood" of a contract, or even that "but for" Defendants' actions, plaintiff would have been able to enter into contracts with third parties. *See, e.g.*, *Ulico Cas. Co. v. Prof. Indem. Agency, Inc.*, 1999 U.S. Dist. LEXIS 8591, at *11-12 (D.D.C. 1999) (stating that District of Columbia courts had not "determined the degree of certainty required for prospective economic advantage claims" and then comparing the "reasonable likelihood" and the "but for" tests).

**Second**, plaintiff fails to allege facts sufficient to adequately satisfy the intent element of her claims. "A general intent to interfere or knowledge that the conduct will injure the plaintiff's business dealings is insufficient to impose liability." *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1988); *see also Bennett Enters., Inc.*, 45 F.3d at 499. Plaintiff cannot demonstrate liability without a strong showing of intent to disrupt ongoing business relations. *Genetic Sys. Corp.*, 691 F. Supp. at 423. "A competitor's conduct must be more egregious . . . it must involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement." *Id.* (citing *Business Equip. Ctr., Ltd. v. De Jur-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978); *PPX Enters. v. Audio Fidelity Enters., Inc.*, 818 F.2d 266, 269 (2d. Cir. 1987).) Here, plaintiff's only allegation is that – "on information and belief" – Fannie Mae "actively discouraged" several other parties from using her to do business with Fannie Mae. Such vague and unsupported

9

allegations are insufficient to demonstrate the level of intent required to bring a tortious interference claim. *Cf. Bannum, Inc.*, 383 F. Supp. 2d at 45 (dismissing claim of tortious interference with a business relationship because plaintiff's underlying allegations were vague and unsupported by the evidence, and plaintiff failed to show an "intentional interference inducing or causing a . . . termination of the expectancy.")

Moreover, even if plaintiff could establish an actual business arrangement, she must also establish a termination of a business expectancy. *See, e.g., Bennett Enters., Inc.*, 45 F.3d at 499 (interference must induce or cause a breach or termination of the relationship or expectancy). Plaintiff does not allege any such termination.

Because plaintiff fails to state a tortious interference claim independent from her contract-based allegations and because she has not alleged the basic prerequisites for such a claim, Count IV of plaintiff's complaint should be dismissed with prejudice.

## IV.  PLAINTIFF DOES NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT V).

Even after amending her complaint, plaintiff fails to allege any action that would, under any circumstances, state a claim for intentional infliction of emotional distress. Plaintiff has utterly failed to allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community" as is required for an emotional distress claim. *See Wise v. District of Columbia*, Case No. 03-cv-310, 2005 U.S. Dist. LEXIS 6361, at *16 (D.D.C. April 8, 2005). Plaintiff's claims stem only from her allegations that Fannie Mae chose not to do business with her and that collectively the defendants encouraged others to do the same. Those alleged actions, even if they occurred, certainly do not amount to something "intolerable in a civilized community." *See, e.g., Bryant v. Orkand Corp.*, No. Civ. 03-2305, 2005 WL 670295, at *18-19

(D.D.C. Mar. 21, 2005) (discrimination allegation insufficient to state a claim for intentional infliction of emotional distress); *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding alleged discrimination by employer against employee in terminating employee could not sustain claim for intentional infliction of emotional distress). Further, the amended complaint does not state any specific action by either Fannie Mae or the individual defendants which rises to the level of extremity required for a claim of emotional distress. *See Wise*, 2005 U.S. Dist. LEXIS 6361, at *16-17. Plaintiff, even when amending her complaint, failed to allege any action by any of the defendants that rose to the level of an atrocity, or something totally intolerable. Thus, plaintiff's claim for intentional infliction of emotional distress should be dismissed.

## CONCLUSION

Based on the foregoing, defendants respectfully request that this Court dismiss all of plaintiff's claims with prejudice.

November 14, 2005                                          Respectfully submitted,

/s/ Evelyn L. Becker
Evelyn L. Becker (D.C. Bar No. 451163)
Sarah A. Goldfrank (D.C. Bar No. 482382)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300 (phone)
(202) 383-5414 (fax)

*Counsel for Defendants Federal National Mortgage Association, Richard Lawch and Grace Huebscher*

11

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail this 14th day of November, 2005 upon:

| | |
|---|---|
| Michael W. Beasley, Esq.<br>411 East Broad Street<br>Falls Church, VA 22046 | Brian Lederer, Esq.<br>3003 Van Ness Street, N.W.<br>Suite #W228<br>Washington, D.C. 20008 |

                                            /s/ Kyra Grundeman
                                            Kyra Grundeman