## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARIALICE BATHRUS WILLIAMS, | : | Civil Action No. 1:05CV01483 |
|  | : |  |
| Plaintiff, | : | Judge John D. Bates |
|  | : |  |
| vs. | : |  |
|  | : |  |
| FEDERAL NATIONAL MORTGAGE | : |  |
| ASSOCIATION, *et al.* | : |  |
|  | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

### DEFENDANTS FEDERAL NATIONAL MORTGAGE ASSOCIATION, RICHARD LAWCH, AND GRACE HUEBSCHER'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT UNDER FED. R. CIV. P. 56

As set forth in Defendants'[1] motion to dismiss, plaintiff's last-minute effort to remedy the fatal flaws in her complaint fails as a matter of law. Far more troubling than her shifting legal theories, however, is plaintiff's effort to revive her clearly time-barred claims. Although plaintiff has now attempted to plead her claims in such a way as to avoid dismissal under the applicable statutes of limitation, when juxtaposed against plaintiff's sworn testimony in a previous matter, these claims cannot stand. Plaintiff's own words demonstrate the lack of any disputed issue of material fact with respect to Defendants' limitations defense. Therefore, all of her claims must be dismissed as a matter of law.

To that end, Defendants, pursuant to Fed. R. Civ. P. 56, respectfully move this Court for summary judgment on all of plaintiff's claims. In support of their motion, Defendants submit the following memorandum of law and attached statement of undisputed facts.

---

[1] Collectively, Federal National Mortgage Association ("Fannie Mae"), Richard Lawch ("Lawch"), and Grace Huebscher ("Huebscher").

**<u>INTRODUCTION</u>**

Plaintiff's original and amended complaints both make clear that plaintiff believes she was entitled to participate in "at least $1 billion of insurance-based business" in the year following her departure from Fannie Mae in 1998.  (Compl. ¶ 22 (attached hereto as Exhibit A); Am. Compl. ¶ 22 (attached hereto as Exhibit B).)  This promised billion dollar business did not come in 1999, 2000, or even 2001.  Plaintiff's decision to wait more than six years to file suit based on Fannie Mae's failure to engage in this business is, by itself, sufficient grounds for summary adjudication of her claims.  But the undisputable factual record developed by plaintiff herself proves even more clearly why her claims expired in early 2004, more than a year before she filed this action.

On August 29, 2004, plaintiff sent Fannie Mae's CEO a draft complaint alleging that the company had refused to do business with her and had "blackballed" her on account of her race.  As evidence of this purported conduct, plaintiff attached a copy of a May 2001 e-mail between defendants Lawch and Huebscher, and stated that the e-mail "made the blackball clear." (*See* Draft Compl. ¶ 19 (attached hereto as Exhibit C).)  The draft complaint also asserted (erroneously) that plaintiff did not discover this e-mail until May 2002.  (*Id.*)

Nearly a year later, on July 28, 2005, plaintiff filed suit against Fannie Mae, Lawch and Huebscher.  The new complaint reiterated that the e-mail between Lawch and Huebscher constituted "evidence of the ongoing and inexplicable blackballing of Plaintiff Williams from all Fannie Mae business."  (Compl. ¶ 45; *see also* Lawch/Huebscher e-mail (attached hereto as Exhibit D).)  The complaint, however, removed the erroneous date and instead asserted that the plaintiff did not discover this evidence "until much later."  (Compl. ¶ 46.)

As Fannie Mae pointed out in its motion to dismiss, "much later" turned out to be a matter of days.  Documents provided by plaintiff herself indicated that she received the e-mail on

June 4, 2001 – less than a week after it had originally been sent.  In response to Defendants'

motion, plaintiff did not withdraw her claims.  Instead, she amended the relevant portion of her

complaint, asserting for the first time that "the full meaning and intentions behind the conduct

reflected in this e-mail were unknown to Plaintiff" until late 2003.  (Am. Compl. ¶ 47.)

      Plaintiff's effort to plead around Defendants' statute of limitations defense, however,

ignores the undisputable record established by plaintiff herself.  In fact, plaintiff was deposed

extensively about the Lawch/Huebscher e-mail in the spring of 2003.  Her sworn testimony

leaves no doubt as to the extent of her knowledge at the time she received this document in June

of 2001.  For example:

- When asked why she forwarded the e-mail to a third party, she testified she had "spent a considerable amount of money and time trying to honestly do business with Fannie Mae and ***it was clear from this message*** that they were not doing anything but taking my time and attention and using that with other people." (Deposition of Marialice Williams, March 17, 2003 ("Williams Dep.") at 88 (attached hereto as Exhibit D).)

- Similarly, she also testified that after she received the e-mail, "it was clear that Fannie Mae was not going to do business with me and I had to find work." (*Id.* at 91.)

- When asked how she knew that Fannie Mae had rejected plaintiff's proposal, she stated that it was "[i]n the context of this e-mail."  (*Id.* at 102.)

- She acknowledge that she had discussions with others "as soon as probably I got this e-mail" and testified that "[i]t's pretty shocking when you spent almost two hundred and some thousand dollars building a business to suddenly one day walk in the door and no [sic] you don't have ding, after lies and lies and lies and confidentiality and being asked if you wanted to do it, and then being crapped on in the midst of all of it." (*Id.* at 94.)

- Plaintiff also stated that the e-mail was sent to her "because it's pretty clear from this e-mail that I was not going to be given the same opportunity as everyone else was being given to do this" and it was "because I was being screwed." (*Id.* at 94, 121.)

This record makes clear that there is no disputed issue of material fact as to when plaintiff had knowledge of her purported claims against Fannie Mae.

## ARGUMENT

Summary judgment is designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). It is appropriate when the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party shows that there is a lack of evidence supporting the opponent's case, the burden shifts to the non-movant to demonstrate the existence of a material issue for trial. *See Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1041 (D.C. Cir. 2003); *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). Conclusory allegations by the non-movant are insufficient to withstand summary judgment. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Banks v. Chesapeake & Potomac Tel. Co.*, 802 F.2d 1416, 1430 & n.24 (D.C. Cir. 1986).

This case is tailor-made for summary adjudication. Indeed, Fannie Mae's motion is based solely upon plaintiff's own pleadings, documents, and sworn deposition testimony. This evidence conclusively demonstrates that plaintiff was well aware of her claims against Fannie Mae more than three years before she filed suit in August of 2005. Therefore, each of these claims is barred by the applicable three year limitations period.[2]

---

[2]    Plaintiff agrees that a three limitations period applies to all of her claims. *See* Pl.'s Opp. to Mot. to Dismiss at 10; *Hobson v. Wilson*, 737 F.2d 1, 32 (D.C. Cir. 1984) (three year statute of limitations in the District of Columbia for section 1981 and 1983 claims); D.C. Code § 12-301(8) (2005) (unlawful discrimination and retaliation); *Fitzgerald v. Seamans*, 553 F.2d 220, 223 & n.3 (D.C. Cir. 1977) (conspiracy under § 1985); *Beard v. Edmondson &*

First, plaintiff's amended complaint asserts that in May 1998, Fannie Mae assured her orally and in writing that it "would do at least $1 billion of insurance-based business ***in the next year*** through her." (Am. Compl. ¶ 22 (emphasis added).)  Of course, as plaintiff now admits, Fannie Mae did not do any business with her in this timeframe.  And her decision to wait more than six years after Fannie Mae failed to fulfill this billion dollar promise provides a compelling example of why the District of Columbia and other jurisdictions impose statutes of limitations. As the D.C. Circuit has stated, statutes of limitations are "designed to prevent . . . protracted quarrels over long past events, based on stale records, allowing the parties no repose and preventing the healing of old wounds."  *Kyriakopoulos v. George Washington Univ.*, 866 F.2d 438, 442 (D.C. Cir. 1989); *see also Kavanagh v. Noble*, 332 U.S. 535, 539 (1947) ("[Statute of limitations] periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary.") (citations omitted); *Carter v. WMATA*, 764 F.2d 854, 858 (D.C. Cir. 1985) ("[C]ourts should apply the [District of Columbia] statute of limitations strictly . . . .")

Second, and even more compelling, plaintiff's own sworn testimony demonstrates that she was on notice of her alleged claims in June of 2001, more than four years before filing this action.  As plaintiff stated under oath in a previous deposition, it was "clear" to her in June 2001 that Fannie Mae was "not doing anything but taking [her] time and attention and using that with other people," and that she "was not going to be given the same opportunity as everyone else was being given."  In short, she believed she was being "screwed."  The fact that plaintiff now asserts that she continued to try to "make" contracts with Fannie Mae until October 2003 does not change this fact and cannot save her claim.  *See, e.g.*, *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C.

---

*Gallagher*, 790 A.2d 541, 546 (D.C. 2002) (tortious interference); *Bryant v. Orkand Corp.*, No. Civ. 03-2305, 2005 WL 670295, at *5 (D.D.C. Mar. 21, 2005) (intentional infliction of emotional distress).

Cir. 1997) (in order to have a "continuing violation" for purposes of tolling the statute of limitations, the violation must be "one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation *did not become clear* until it was repeated during the limitations period.") (emphasis added); *Campbell v. Nat'l Educ. Ass'n*, No. 99-7122, 2000 U.S. App. LEXIS 26681, at * 4-5 (D.C. Cir. Oct. 3, 2000) (unpublished opinion, attached hereto as Exhibit F) (even under a "continuing violation" theory, the limitations period begins to run when a reasonable person is aware that her rights were violated).

<u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that their motion for summary judgment be granted, and that plaintiff's complaint be dismissed, in its entirety, with prejudice.

November 14, 2005                                      Respectfully submitted,

                                                      /s/ Evelyn L. Becker
                                                      Evelyn L. Becker (D.C. Bar No. 451163)
                                                      Sarah A. Goldfrank (D.C. Bar No. 482382)
                                                      O'Melveny & Myers LLP
                                                      1625 Eye Street, N.W.
                                                      Washington, D.C. 20006
                                                      (202) 383-5300 (phone)
                                                      (202) 383-5414 (fax)

                                                      *Counsel for Defendants Federal National Mortgage Association, Richard Lawch and Grace Huebscher*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail this 14th day of November, 2005 upon:

Michael W. Beasley, Esq.                    Brian Lederer, Esq.
411 East Broad Street                       3003 Van Ness Street, N.W.
Falls Church, VA 22046                      Suite #W228
                                            Washington, D.C. 20008

/s/ Kyra Grundeman
Kyra Grundeman