**EXHIBIT E**

1

1      IN THE UNITED STATES DISTRICT COURT

2         SOUTHERN DISTRICT OF MISSISSIPPI

3                 Southern Division

4   - - - - - - - - - - - - - - - - - X

5   CAM FINANCIAL SERVICES, INC.,        :

6           Plaintiff,                   :   Case No.

7       v.                               :   1:01cv314BrR

8   GENERAL STAR NATIONAL INSURANCE      :

9   COMPANY; GENERAL STAR INDEMNITY      :

10  COMPANY; GENERAL STAR MANAGEMENT     :

11  COMPANY, GENERAL RE CORPORATION;     :

12  GENERAL REINSURANCE CORPORATION;     :

13  CRUMP INSURANCE SERVICES OF MEMPHIS,:

14  INC.; CRAIG OTT, INDIVIDUALLY AND    :

15  IN HIS REPRESENTATIVE CAPACITY AS    :

16  VICE PRESIDENT OF GENERAL STAR       :

17  MANAGEMENT COMPANY; FEDERAL NATIONAL:

18  MORTGAGE ASSOCIATION (FANNIE MAE),   :

19          Defendants.                  :

20  - - - - - - - - - - - - - - - - - X

21                        Washington, D.C.

22                        Monday, March 17, 2003

23          Videotaped deposition of MARIALICE

24  WILLIAMS, a witness herein, called for examination by

25  counsel for Defendant Fannie Mae, in the above-

Marialice Williams                                           March 17, 2003
                        Washington, DC

**Page 2**

1  entitled matter, pursuant to subpoena, the witness
2  being duly sworn by SUSAN L. CIMINELLI, a Notary
3  Public in and for the District of Columbia, taken at
4  the offices of Steptoe & Johnson, 1330 Connecticut
5  Avenue, N.W., Washington, D.C., at 1:23 p.m., Monday,
6  March 17, 2003, and the proceedings being taken down
7  by Stenotype by SUSAN L. CIMINELLI, CRR, RPR, and
8  transcribed under her direction.

**Page 3**

1  APPEARANCES:
2
3  On behalf of the Plaintiff:
4     NICHOLAS VAN WISER, ESQ.
5     MATTHEW MESTAYER, ESQ.
6     Byrd & Wiser
7     145 Main Street
8     P.O. Box 1939 (39533)
9     Biloxi, MS 39530
10    (228) 432-8123
11
12    JAMES R. REEVES, JR.
13    Minor & Associates
14    P.O. Box 1388
15    160 Main Street
16    Biloxi, MS 39533
17    (228) 374-5151
18
19  On behalf of Defendant Fannie Mae:
20    GERARD E. WIMBERLY, JR.,
21    McGlinchey Stafford PLLC
22    643 Magazine Street
23    New Orleans, LA 70130
24    (504) 586-1200
25

**Page 4**

1  APPEARANCES (Continued):
2
3     WILLIAM H. LEECH, ESQ.
4     McGlinchey Stafford PLLC
5     SkyTel Centre South, Suite 100
6     300 South Lamar Street
7     Jackson, MS 39201
8     (601) 960-8400
9
10    VALAREE M. MOODEE, ESQ.
11    Associate General Counsel
12    Fannie Mae
13    3900 Wisconsin Avenue, N.W.
14    Washington, D.C. 20016-2892
15    (202) 752-3098
16
17  On behalf of the General Star Defendants:
18    ROSS F. BASS, JR., ESQ.
19    Phelps Dunbar, L.L.P.
20    SkyTel Centre, Suite 500
21    200 South Lamar Street
22    Post Office Box 23066
23    Jackson, MS 39225-3066
24    (601) 352-2300
25

**Page 5**

1  APPEARANCES (Continued):
2
3  On behalf of Crump Insurance:
4     DAVID W. CLARK, ESQ.
5     Bradley Arant Rose & White LLP
6     One Jackson Place, Suite 450
7     188 East Capitol Street
8     P.O. Box 1789
9     Jackson, MS 39215-1789
10    (601) 948-8113
11
12  On behalf of the Witness:
13    JULIA B. WILLIAMS, ESQ.
14    Julia B. Williams P.C.
15    1000 Connecticut Avenue, N.W., Suite 505
16    Washington, D.C. 20086
17    (202) 659-1616
18
19  ALSO PRESENT:
20    JONATHON PERRY, Videographer
21    BOB JONES
22    CYNTHIA BROWNE, Paralegal
23
24
25

Marialice Williams

Washington, DC

March 17, 2003

---

Page 6

CONTENTS

| WITNESS | EXAMINATION BY COUNSEL FOR |
|---|---|
| MARIALICE WILLIAMS | DEFENDANT FANNIE MAE |
| By Mr. Wimberly | 21 |

EXHIBITS

| EXHIBIT NO. | | PAGE NO. |
|---|---|---|
| 1 | Minute Entry Order, Doc. No. 187-1, Dated 11/7/02 | 15 |
| 2 | Subpoena to Witness, Dated 01/06/03 | 17 |
| 3 | Collection of Documents, Bates MW00001 - MW0094 | 38 |
| 4 | E-mail String, Bates 1625 - 1626 | 79 |
| 5 | E-mail String; E-mail form; Also as Content to Envelope, w/Envelope | 79 |
| 6 | Multiple Documents "En Globo," First Page Bates stamped FM02902 | 127 |

---

Page 7

PROCEEDINGS

THE VIDEOGRAPHER: My name is Jonathan Perry. I will be operating the video equipment for this deposition. My address is 642 A Street, Southeast, Washington, D.C. I am self-employed today representing Alderson Reporting, 1111 14th Street Northwest, Washington, D.C.

This deposition is being taken in case number 101 CV 314 BRR entitled CAM Financial Services, Incorporated vs. General Star National Insurance Company, et al. In the U.S. District Court Southern District of Mississippi, Southern Division.

The name of the witness is Marialice Williams. Today's date is March 17th, 2003. We are at the offices of Steptoe & Johnson, 1330 Connecticut Avenue, Northwest, Washington, D.C. The time on the video screen is currently 1:23:45 p.m.

The court reporter is Sue Ciminelli, also with the firm of Alderson Reporting. I now ask counsel present to please introduce themselves and state whom they represent.

MR. WIMBERLY: My name is Gerard Wimberly and I represent Fannie Mae.

MR. LEECH: Bill Leech, I also represent Fannie Mae.

---

Page 8

MS. MOODEE: Valaree Moodee, corporate representative from Fannie Mae.

MR. BASS: I'm Rick Bass. I represent the General Star Companies.

MR. JONES: Bob Jones, the corporate representative for CAM Financial.

MR. WISER: Nicholas Wiser, I represent CAM Financial.

MS. WILLIAMS: I'm Julia Williams. I'm representing Mary Alice Williams.

THE VIDEOGRAPHER: Will the reporter swear in the witness, please.

Whereupon,

MARIALICE WILLIAMS,

residing at 5722 First Street, N.W., Washington, D.C., was called as a witness by counsel for Defendant Fannie Mae, and having been duly sworn by the Notary Public, was examined and testified as follows:

MR. WIMBERLY: Good morning, Ms. Williams.

THE WITNESS: Good afternoon.

MR. WIMBERLY: Good afternoon, thank you. Before we begin --

MR. WISER: I was going to say, for the purposes of making sure the record is clear, we have

---

Page 9

two Ms. Williams.

MR. WIMBERLY: We sure do.

MR. WISER: And I'm not sure how everyone would like to have that designated so that it's clear in the process of the transcript other than on the video when Ms. Williams is talking, which Ms. Williams it is.

I'm open to suggestions. I don't have a clue.

MR. WIMBERLY: I'd rather preserve the formalities, I think, and the respect that you are referred to, Ms. Williams, and call you by your last name. But how -- I think we can keep it straight, and I'll certainly do my best if it's a remark directed at your counsel but maybe the presumption should be if I'm saying Ms. Williams, it's the witness, and then I'll indicate when it's otherwise. I think the only alternative is first names and I don't that's appropriate.

MR. WISER: I understand.

MR. WIMBERLY: But I think your comment was a good one, Mr. Wiser.

MR. WISER: Thank you, Mr. Wimberly.

MR. WIMBERLY: Now, Ms. Williams, for your client I understand you want to say something on the

---

Page 10

1   record.
2         MS. WILLIAMS: Sure. I certainly would.
3   I'd like to say that we are here this afternoon for
4   the deposition that's going to take place I guess
5   from approximately 1 until 4 o'clock. I understand
6   that there are a couple other dates that, you know, a
7   couple possible other dates that the other defendants
8   are not going to be able to participate in. My
9   client is a consultant. And my client is only a
10  witness in this matter.
11        She will not be compensated, and it's
12  unreasonable. She -- it's unreasonable to just have
13  a deposition to go on, and I mean they didn't do this
14  in Whitewater. I mean Clinton didn't testify in his
15  matter for this period of time, for what you are
16  anticipating. I understand, well, I guess my next
17  question is, is there -- I understand there is a
18  court order for today's hearing, is that correct?
19        MR. WIMBERLY: You are under subpoena, she
20  is under subpoena to appear. It's not a hearing, for
21  the deposition, you are talking about. I'm sorry. I
22  just want to make sure. Oh. There is a minute entry
23  that gives us permission within the structure of the
24  case management of the case, okay, gives us
25  permission to open up this -- Nick, before you --

Page 11

1         MR. WISER: You don't want her to see it.
2         MR. WIMBERLY: I want to explain. You are
3   here pursuant to Rule 45, so we have subpoenaed you,
4   and the order that deals with counsel in the case,
5   but this deposition is under the jurisdiction of the
6   D.C. District Court so -- and Ms. Williams, I would
7   ask that you not look at the court -- Ms. Williams, I
8   would ask that you not look at -- Mr. Wiser, would
9   you put that aside?
10        THE WITNESS: Is it a public document?
11        MR. WIMBERLY: It is.
12        MR. WISER: I'm going to put it -- make it
13  an exhibit here in a second, but go right ahead and
14  talk.
15        MR. WIMBERLY: For purposes of, bear with
16  me, there is a process here that if we follow it, we
17  can all get out of here efficiently. You'll know
18  everything you need to know. I'm not going to hide
19  anything from you, but just to focus on your
20  counsel's objection I need to focus on it in terms of
21  the subpoena and the jurisdiction of the court.
22  That's D.C.
23        So we issued a deposition document
24  subpoena through the D.C. court, and it was served
25  and you and I have talked about this, Ms. Williams,

Page 12

1   for your client in arrange this so what we have got
2   arranged is today for three hours, okay. We are
3   starting, we haven't even started yet. I have three
4   hours of testimony. Now, this comes under the court
5   order, the time that we can spend today. And then
6   the time we can spend from Friday forward, our judge
7   in the Mississippi court has us under a scheduling
8   plan, and that's what we are following.
9         But as to you and your client, you are
10  looking at a properly served subpoena, and there is
11  nothing improper and you haven't moved to quash, so I
12  don't take it that have you any objections but
13  notwithstanding all of that, we have talked on
14  several occasions in the last several months about
15  when because we don't want to do this unless we can
16  make it convenient, if at all possible, especially
17  convenient for the witness.
18        MS. WILLIAMS: It's not going to be
19  convenient if someone else is going to depose her at
20  a later time.
21        MR. WIMBERLY: I understand, but don't --
22  please let me finish because I'm going to try to
23  address some of those --
24        MS. WILLIAMS: Okay.
25        MR. WISER: Then I'm going to ask that you

Page 13

1   not say that you are assuming something without her
2   at least getting a chance to respond. I have no
3   problem --
4         MR. WIMBERLY: You don't represent the
5   witness or her counsel, so --
6         MR. WISER: No, but I get to say whatever
7   I want to.
8         MR. WIMBERLY: You can, Mr. Wiser, but you
9   are wasting time right now. Let me finish what I was
10  going to say and then you can respond.
11        MR. WISER: Fair enough.
12        MR. WIMBERLY: Okay. As to the timing, we
13  tried to make that convenient, so as per our
14  discussions, we have got it worked out thus far that
15  it's convenient for Ms. Williams to participate today
16  for three hours, and then on Friday, we'll start at 9
17  and we'll do seven hours and then Monday, 9, and do
18  seven hours.
19        MS. WILLIAMS: Well, as I said --
20        MR. WIMBERLY: And then you've gotten --
21  just -- I'm almost done. You have gotten a letter as
22  I understand it from one of the other lawyers
23  represents Gen Star and letting you know as I have
24  let you know on several occasions, the subpoena is
25  issued on behalf of my client, Fannie Mae. So we are

Marialice Williams
Washington, DC
March 17, 2003

14

1  looking at needing this time and we have made that,
2  this arrangement with you. The other defendants and
3  the plaintiff will need time, too.
4     MS. WILLIAMS: Sir, let me explain. I had
5  no idea I was going to get a letter from counsel in
6  New York telling me that they weren't going to be
7  able to participate. You told me that you needed
8  this time, you wanted this time with Marialice
9  because she wasn't going to come to court. She
10 wasn't going to be able to testify in court. Those
11 were the discussions that we had.
12    MR. WIMBERLY: I never put it that way.
13    MS. WILLIAMS: Yes, you did.
14    MR. WIMBERLY: But go ahead. We don't
15 need to argue about it. It's just they are here.
16 They are participating. Gen Star is participating.
17 What I did tell you was there would probably not be,
18 I knew there would not be enough time for all the
19 parties to question Ms. Williams, and that meant that
20 we need to work out, if we can, future times. You
21 and I talked about the possibility of later in April,
22 and that has fallen through so the resetting is
23 uncertain, but all of that has nothing to do with
24 today and Friday and Monday.
25    MR. WISER: My turn?

15

1     MR. WIMBERLY: Your turn.
2     MR. WISER: Thank you. I'd like to ask
3  Miss Julia Williams, Miss Williams, did you ever
4  waive, were you ever asked by Mr. Wimberly to waive
5  the seven-hour rule provided in the federal rules of
6  civil procedure?
7     MS. WILLIAMS: No, I was not.
8     MR. WISER: Representation was made to me
9  by you that she had waived that seven-hour rule. And
10 that's why I'm not talking about today's deposition
11 because today's deposition, I think, is covered by
12 the order that I would like to have made an exhibit
13 to this. Let the record reflect that that is a copy
14 of a minute entry order, Miss Williams.
15        (Exhibit No. 1 was
16        marked for identification.)
17    MS. WILLIAMS: May I just comment a little
18 bit further. It was never discussed, that was never
19 presented to me in any roundabout way. It was never
20 presented.
21    MR. WISER: Okay. The reason that
22 Marialice Williams' deposition was set for Friday and
23 Monday of this week was because it was represented to
24 me that she had waived the seven-hour rule and that
25 this was the only time that was available, and

16

1  wouldn't it be convenient to do it all at once. I
2  did not understand that you were going to, until
3  very, very recently that you were going to be taking
4  the entire time and that I was not going to get a
5  shot, nor was anyone else going to get a shot at
6  examining Miss Williams and seeing what she had to
7  say.
8     I think that it is, she is an incredibly
9  important witness in this case as I think everyone
10 will recognize, however, I think that this should
11 have been structured in such a way that if we are
12 going to bother Miss Williams, we bother her one time
13 and everybody gets to do their thing and find out
14 what the, you know, what her testimony is going to be
15 rather than breaking it up piecemeal.
16    Based upon that, I'm going to object to
17 the continuing of her deposition on Friday and Monday
18 as it violates the seven-hour rule and it's in
19 violation of what you represented to me that you had
20 secured from Miss Williams in terms of her agreement
21 to be present today to testify.
22    MR. WIMBERLY: Thank you, Mr. Wiser.
23    MR. WISER: You are welcome.
24    MR. WIMBERLY: Your concept of very
25 recently is interesting because you and I have talked

17

1  about this on several occasions. You have not, if
2  you want to say waived, you can say waived, but we
3  have agreed to today, Friday and Monday.
4     MS. WILLIAMS: I have not waived the
5  seven-hour rule.
6     MR. WIMBERLY: But did you agree?
7     MR. WISER: Let her finish her answer. I
8  want to hear it all.
9     MS. WILLIAMS: You know, we have never
10 discussed waiving the seven-hour rule.
11    MR. WIMBERLY: The seven-hour rule is
12 provided in the rules of procedure, of which you are
13 familiar.
14    MS. WILLIAMS: It's a new rule. Yes.
15    MR. WIMBERLY: But let me mark as Exhibit
16 2 for the record the subpoena that Ms. Williams
17 received which specifies the dates and times for this
18 deposition, and the place for this deposition. We'll
19 mark this as Exhibit 2.
20        (Exhibit No. 2 was
21        marked for identification.)
22    MR. BASS: You want to start new numbers
23 on this deposition?
24    MR. WIMBERLY: You know, if we know, what
25 was the --

Marialice Williams         Washington, DC         March 17, 2003

**Page 18**

1    MS. WILLIAMS: I don't know.
2    MR. WIMBERLY: All right, let's start new
3 numbers. And it is a third party deposition. So it
4 makes sense to do that so we don't get our record
5 confused.
6    We are here by virtue of this subpoena
7 that, and there is no motion to quash, no motion to
8 quash was filed as far as I know. So she is properly
9 here. I'd like to get started with the deposition.
10 It's an interesting dissertation we are engaged in,
11 but --
12    THE WITNESS: Well, no, it's most
13 interesting to me because if you will notice on here
14 there are no times stated here in terms of how long
15 the deposition will be. There is no way I could have
16 contemplated that it would have been that long.
17    MR. WISER: And I will also direct
18 counsel's attention to the clear wording of rule
19 whatever it is that talks about this.
20    THE WITNESS: It does not say seven hours,
21 seven hours, and three hours.
22    MR. WISER: And it does not -- the rule
23 does not say that you can circumvent the clear
24 wording of the rule with a subpoena. It said by
25 order of a court. It will not go longer than that,

**Page 19**

1 or by stipulation of the parties.
2    THE WITNESS: And I was never told there
3 was going to be a subpoena --
4    MR. WIMBERLY: Let me say, before, this is
5 just wasting a lot of time because we have exchanged
6 correspondence, and we have also talked on the phone.
7 And in fact, the point was of the telephone
8 conversation particularly to try to get, make sure
9 that the witness and her counsel understood that due
10 to the necessities of this case and the exigencies of
11 this case, there was no way that we were going to
12 finish even with three hours today, full days on
13 Friday and Monday and if you can sit there and say
14 you didn't understand that we were talking about full
15 days on Friday and Monday, so be it. But we can take
16 this up with the court. But I'm entitled to get
17 started with this deposition.
18    If you want to -- let me just say this
19 because it's not going to resolve this with me
20 talking to three of you. You can shut it down after
21 seven hours and we'll just be in front of the judge.
22    MS. WILLIAMS: Okay. That's fine. That's
23 what we'll do.
24    MR. WIMBERLY: Okay. Are we ready to go?
25    MS. WILLIAMS: We're ready.

**Page 20**

1    MR. WISER: Before you look at the time I
2 do want to make sure of one other thing. Because I
3 want to make sure that Mrs. Julia Williams has had an
4 opportunity to read the order and she understands the
5 limited scope of the deposition today.
6    MR. WIMBERLY: Mr. Wiser, do you represent
7 Ms. Williams?
8    MR. WISER: No. But I think that it's
9 unfair, patently unfair that she has not even been
10 provided a copy of the order which says what the
11 scope of the deposition today is.
12    MS. WILLIAMS: This is the first time I
13 have seen it.
14    MR. WISER: All right. And I'd like for
15 her to have the opportunity to look at it.
16    MR. WIMBERLY: Well, you have marked it as
17 an exhibit. She can certainly have the -- she can
18 certainly look at it.
19    MS. WILLIAMS: Okay, all right.
20    MR. WISER: And once she's looked at it,
21 I'm ready to go.
22    MS. WILLIAMS: All right, okay, I have
23 looked at it and I realize what the scope of it is.
24    MR. WIMBERLY: The scope of the
25 examination, as far as they are concerned is anything

**Page 21**

1 appropriate under the Rules of Civil Procedure.
2    MS. WILLIAMS: No. It says for three
3 hours, limited to information regarding the release
4 of confidential information.
5    MR. WIMBERLY: And that's what we are
6 going to talk about.
7    MS. WILLIAMS: That's fine. I'm ready.
8    MR. WIMBERLY: Okay. Thank you.
9 Ms. Williams --
10    MR. WISER: What time is it?
11    THE VIDEOGRAPHER: It's currently 1:39:09
12 on the video camera.
13 EXAMINATION BY COUNSEL FOR DEFENDANT FANNIE MAE
14    BY MR. WIMBERLY:
15    Q. Ms. Williams, would you state your full
16 name and address for the record, please?
17    A. Marialice Bathrus Williams, the first name
18 is spelled M-a-r-i small a-l-i-c-e, the middle name
19 is spelled B as in boy a-t-h-r-u-s, last name
20 Williams. My address is 5722 First, number 1, Street
21 Northwest, Washington, D.C., 20011.
22    Q. My name is Gerard Wimberly, and I'm the
23 lawyer today representing Fannie Mae, who is going to
24 be asking you questions, and have you been introduced
25 to the other counsel around the table. We are all

Marialice Williams
Washington, DC
March 17, 2003

**Page 22**

1  representing parties in a pending matter in the
2  Southern District of Mississippi called CAM Financial
3  services vs. General Star and National Insurance
4  Company et al.
5      Ms. Williams, have you ever given a
6  deposition before?
7   A.  Yes.
8   Q.  And when?
9   A.  The last deposition that I gave was in a
10 matter regarding Pacifica Radio, which is a national
11 nonprofit radio organization. It was a matter that
12 involved the local advisory boards of Pacifica
13 network being removed from their responsibilities
14 arbitrarily by the national chairman of the board,
15 and we were successful in that matter, fortunately,
16 in getting the board restored, the boards restored.
17  Q.  And at what point in time was that
18 deposition?
19  A.  Approximately six months ago. Perhaps
20 more than that.
21  Q.  And how long did the deposition transpire?
22  A.  For one day.
23  Q.  Have you given any other depositions?
24  A.  Yes, I have.
25  Q.  And when were they and what were they?

**Page 23**

1   A.  I testified in a matter for Fannie Mae
2  with respect to a mortgage-backed security
3  transaction between Coast Federal Savings Bank and
4  Fannie Mae and the subject of that particular
5  deposition was a particular type of account which had
6  been established by Coast to, to be held in the event
7  that there were losses in that transaction, and there
8  was a question as to whether or not those funds
9  should be returned to Coast Federal Savings Bank.
10  Q.  And when did that occur, that deposition
11 occur?
12  A.  Sometime before I left Fannie Mae, which
13 was in 1998.
14  Q.  And how long was that deposition for you?
15  A.  I don't recall. I believe it was
16 approximately two to three hours. I could be wrong.
17  Q.  Okay. Have you given your deposition in
18 any other matters?
19  A.  No. Not that I recall.
20  Q.  Business or personal?
21  A.  No.
22  Q.  And you are a lawyer, are you not?
23  A.  Yes.
24  Q.  Where did you get your law degree,
25 Ms. Williams?

**Page 24**

1   A.  George Washington University.
2   Q.  And what year?
3   A.  1972.
4   Q.  I know I'm repeating what you may already
5  know, but it's important at the outset that I make
6  sure that you understand some of the ground rules and
7  you can ask me questions about them now and so that
8  as we proceed we can engage in an efficient
9  examination. You understand that you are testifying
10 under oath, just as if you were testifying at trial,
11 do you not? Rule number two is you need to give
12 verbal responses.
13     MS. WILLIAMS: I was going to say you
14 can't shake your head.
15     THE WITNESS: Correct.
16     BY MR. WIMBERLY:
17  Q.  And you do understand that we have two
18 transcriptions, one is stenographic, the other is
19 video, and although gestures might be communicable
20 among the video, they are not going to be
21 communicable to the court reporter, so if, for her
22 sake, if you would give us verbal responses. In any
23 case where you are going to be responding, we would
24 appreciate it.
25     Ask me, Ms. Williams, if you don't

**Page 25**

1  understand any of my questions, and I want to
2  emphasize that to you. I'm not trying to trip you up
3  or confuse you. Sometimes I'll say things in a way
4  that you may not understand or I may be misusing
5  terminology and if so, please let me know and I'll
6  try to rephrase the question.
7       If you don't ask me or you don't point
8  that out, I'll assume that you do understand the
9  question. Is that fair?
10  A.  Yes.
11  Q.  This is not a bladder contest. If you
12 need to take a break, we can take a break. If you
13 just want some air and you want to take a break, we
14 can take a break. You just need to let me know. I
15 just ask you that you not ask for a break before you
16 have answered a question, which, as you know, since
17 you are a lawyer, when a question is pending, please
18 provide your response fully and then we can talk
19 about taking a break.
20      And I'll try not to what we also call
21 stepping on the answers or stepping on the question.
22 I'm try not to interrupt you if you'll do your best
23 not to interrupt me. Often both of us might pause
24 and we are not yet finished, and if I do intervene
25 and you are not finished, you let me know, and I'll

Marialice Williams                                                                  March 17, 2003
                    Washington, DC

**Page 26**

1  stop because I want your -- I want your full answers.
2       You are represented today by legal
3  counsel, are you not?
4    A.  Correct.
5    Q.  And who is your lawyer? Is that Julia
6  Williams?
7    A.  Julia B. Williams is my attorney.
8    Q.  Now, are you two related in any way?
9    A.  No. We are not.
10       MS. WILLIAMS: Not that we know of.
11       BY MR. WIMBERLY:
12   Q.  And another, the last of the ground rules
13  when we are here is that Ms. Williams, your counsel,
14  may from time to time want to say something, and I'll
15  stop and listen to her, but if there is a question
16  pending, I appreciate it if you would answer the
17  question before consulting with counsel. And
18  whenever you feel like you need to consult with
19  counsel, you let me know, and I'll try to accommodate
20  you. Do you have any questions or comments before we
21  proceed?
22   A.  No. I do not.
23       MR. WISER: May I ask one question? Have
24  they been advised of the terms of the confidentiality
25  and protective order that all testimony pursuant to

**Page 27**

1  the order has been, is to be given to?
2       MR. WIMBERLY: I haven't advised them of
3  anything, Mr. Wiser, so why don't you --
4       MR. WISER: I have not either. But I mean
5  I think that since this is the first person who is
6  being deposed who is not a party, I think that under
7  those terms that they are to be provided with a copy
8  of the order and advised of the terms of it so that
9  they won't be in violation of it. I don't mind that
10  being -- I'm not trying to take up your time, I don't
11  mind that being provided later.
12       MR. WIMBERLY: I think that's a good
13  point. Why don't we just take note of that and we'll
14  deal with the confidentiality order. We do consider
15  this deposition to be subject to a confidentiality
16  order in this case, and we'll go over the terms of it
17  as it has to do with Ms. Williams.
18       BY MR. WIMBERLY:
19   Q.  Did you prepare for your deposition today,
20  Ms. Williams?
21   A.  Yes.
22   Q.  And how did you prepare for this
23  deposition?
24   A.  I prayed and discussed my situation with
25  counsel.

**Page 28**

1    Q.  And that counsel would be Ms. Williams
2  sitting here?
3    A.  Ms. Julia B. Williams. Yes.
4    Q.  Did you discuss your deposition with
5  anyone else?
6    A.  Yes, I did.
7    Q.  Who?
8    A.  With my husband and with my mother.
9    Q.  And your husband a lawyer?
10   A.  Yes, he is.
11   Q.  What is his name?
12   A.  His name is Conway A. Downing,
13  D-o-w-n-i-n-g, Jr.
14   Q.  Does he work at a law firm in Washington,
15  D.C.?
16   A.  No. He does not.
17   Q.  Does he practice in Washington, D.C.?
18   A.  No. He does not.
19   Q.  Does he practice at all?
20   A.  No. Oh, I'm sorry. I discussed it also
21  with my brother and with my sister-in-law.
22   Q.  And what you discuss with your brother and
23  sister-in-law?
24   A.  I wanted to inform them, given their
25  positions, that this deposition was going to be taken

**Page 29**

1  and I asked my brother and my sister-in-law who they
2  would recommend I should hire as counsel.
3    Q.  You asked each one of the them the same
4  thing?
5    A.  Um-hmm, yes.
6    Q.  And they recommended who?
7    A.  Yes, they did.
8    Q.  Whom did they recommend?
9    A.  They recommended Julia B. Williams.
10   Q.  And when did this conversation, let's say
11  with your brother, occur?
12   A.  Shortly after I spoke with you initially
13  to discuss that the lawsuit had been filed and when
14  you asked me to give a voluntary statement.
15   Q.  And when was that?
16   A.  I don't recall the date. It was recently,
17  well, I just don't recall the exact date.
18   Q.  And what about your conversation with your
19  sister-in-law. When did that occur?
20   A.  Shortly after I spoke with you.
21   Q.  And you said you talked to your mother
22  about the case?
23   A.  Yes, I did.
24   Q.  When did you talk to your mother about the
25  case?

8 (Pages 26 to 29)

Marialice Williams  
Washington, DC  
March 17, 2003

---

**Page 30**

1  A. Just about every day since I had first
2  spoke with you.
3  Q. And what have you told your mother about
4  the case?
5  A. Excuse me, please.
6  Q. Ms. Williams --
7  A. What I discussed with my mother was the
8  pain involved in having to be put through this
9  agonizing procedure when there was no gain for me of
10 any nature by people who had destroyed my life.
11 Q. Did you, did you talk to your mother about
12 the particular allegations in the case?
13 A. I certainly did.
14 Q. Okay. What did you tell her the
15 allegations to be?
16     MR. WISER: I'm going to object to the
17 question as it goes beyond the scope of the order
18 subject to release of confidential information
19 provided in Judge Roper's minute entry. I'm curious
20 just out of, since this is not one of those object to
21 the form of the question but rather goes to the
22 substance of the court order, how, what your thoughts
23 are about how such an objection should be handled.
24     MR. WIMBERLY: I don't think it should be
25 entered so it's easy to handle, it doesn't get in

---

**Page 31**

1  there. I'd appreciate that --
2      MR. WISER: I can't direct the witness not
3  to answer.
4      MR. WIMBERLY: I don't mean to be
5  sarcastic. I'm not going to stay on this line. Let
6  me move on. We will get to the substantive issues.
7  I don't want to appear to be cutting you off and
8  jumping on. I understand that is a serious matter
9  and it's serious for all of us, and believe me, I'd
10 rather be doing something else than sitting here
11 talking, asking you these questions but we do have a
12 lot -- we do have some serious allegations and your
13 concerns I think will come out and I hope will come
14 out in response to later questions. For now, I'm
15 going to move on so we can -- we can save some time
16 and Mr. Wiser is correct, I want to confine the three
17 hours to a certain topic area. Would you like a few
18 moments to --
19     THE WITNESS: No.
20     BY MR. WIMBERLY:
21 Q. Are you sure?
22 A. Yes.
23 Q. Counsel, would you like to at least get
24 her some tissue --
25 A. I'd like to go on.

---

**Page 32**

1  Q. Well, I'd rather not, I mean, if it's
2  upsetting you, I'm not here to --
3  A. Well, nothing is going to change that so
4  you may as well just go on.
5  Q. Can we at least get her some tissue,
6  please.
7      MR. LEECH: You are wired.
8      MS. WILLIAMS: Okay.
9      THE WITNESS: All right, thanks. Okay.
10     BY MR. WIMBERLY:
11 Q. Let me know when you are ready?
12 A. I'm ready.
13 Q. What are your record keeping practices?
14 A. I'm sorry, I don't understand.
15 Q. Your record keeping, how do you keep
16 files, records? Let's take it personal and business?
17     MS. WILLIAMS: Can you give her a time
18 period or what record keeping?
19     MR. WIMBERLY: Currently.
20     MS. WILLIAMS: I mean currently, what time
21 period?
22     MR. WIMBERLY: Today.
23     THE WITNESS: Record keeping?
24     BY MR. WIMBERLY:
25 Q. Record keeping.

---

**Page 33**

1  A. I have a computer.
2  Q. You have a computer. What else? Do you
3  have a home office?
4  A. Yes, I do.
5  Q. Do you have an office anywhere else?
6  A. Yes, I do.
7  Q. Where?
8  A. At 64 New York Avenue, Northeast,
9  Washington, D.C. at the D.C. Department of Mental
10 Health.
11 Q. Is that where you work?
12 A. I am working on a project for the
13 Department of Mental Health that involves developing
14 affordable housing for mentally ill adults and they
15 have provided an office for me because I am an
16 integral part of, it's a critical program under a
17 court order and it has to be done with some, has to
18 be done expeditiously.
19 Q. Do you have a computer there?
20 A. Yes, I do.
21 Q. And you keep files there?
22 A. Yes, I do.
23 Q. How long have you had that office?
24 A. Since the last week in October.
25 Q. Of 2002?

---

Marialice Williams　　　　　　Washington, DC　　　　　　March 17, 2003

### Page 34

1　A.　Of 2002.
2　Q.　Prior to that, did you have an office
3　outside of your home?
4　A.　Prior to that, I had an office at 5722
5　First Street, Northwest from May until October, when
6　I still have that office, and prior to that, my
7　office was in the Watergate office building at 2600
8　Virginia Avenue, Northwest, Suite 701.
9　Q.　And how long did you have that office?
10　A.　I had that office from July 1st of 1998
11　until my eviction in May of this year.
12　Q.　Why were you evicted?
13　A.　Because I could not keep up the business
14　that I thought I was going to be getting in order to
15　keep my doors open.
16　Q.　What kind of records, let's start from,
17　when did you leave Fannie Mae?
18　A.　I left Fannie Mae July 1st, June 30th,
19　whatever it is, 1998.
20　Q.　Okay. If you would, just start there and
21　go forward and describe your record keeping
22　practices.
23　A.　My record keeping practices consisted of
24　file folders and my computer.
25　Q.　And you talked about having a home office

### Page 35

1　and a business office. I don't know whether you told
2　me whether you had the home office from that point in
3　time forward?
4　A.　From May.
5　Q.　When did you start your home office?
6　A.　I had a home office from May 19 -- from
7　May 2002 until the present time.
8　Q.　And what kind of documents, starting in
9　June 1998 did you keep in your files?
10　A.　What kind of --
11　　MR. WISER:  I'm going to object to the
12　form of the question.
13　　MS. WILLIAMS:  Let me just say this. She
14　said, she testified that she left Fannie Mae June
15　30th, 1998. She had her office July 1st, 1998 at the
16　Watergate and she gave you the address. So I
17　think --
18　　MR. WIMBERLY:  Is there an objection?
19　　MS. WILLIAMS:  Yes. The objection is --
20　　MR. WIMBERLY:  Okay, you -- go ahead.
21　　MS. WILLIAMS:  -- you are asking her
22　about May 2002.
23　　MR. WIMBERLY:  I'm going to object to
24　speaking objections. You are restricted under the
25　rules to objections as to form. You can instruct the

### Page 36

1　witness not to answer under limited conditions. And,
2　but I would ask you, Ms. Williams, to stick with the
3　rules in terms of your objections, otherwise
4　you're -- not just that you are violating the rules;
5　you are grinding up a lot of time in the deposition.
6　We have already talked about a time element.
7　　Do you have an objection to form?
8　　MS. WILLIAMS:  You are confusing the
9　witness, but otherwise --
10　　BY MR. WIMBERLY:
11　Q.　You may answer the question?
12　A.　I don't recall the question.
13　Q.　Let me read the question back to you.
14　What kind of documents starting in June 1998, I guess
15　it would be starting in July 1998, from the time you
16　left Fannie Mae, what kind of documents have you kept
17　in your, in your records?
18　A.　Traditional business records.
19　Q.　So that would be, what kind of things,
20　correspondence?
21　A.　Yes.
22　Q.　Do you keep copies of e-mails?
23　A.　No.
24　Q.　Do you keep the e-mails on your computer?
25　A.　Yes.

### Page 37

1　Q.　Memorandum, memoranda, do you keep copies
2　of memoranda?
3　A.　Yes.
4　Q.　Business reports, that kind of thing? If
5　you would, just please describe for me. --
6　A.　Yes. And everything --
7　Q.　The kinds of things you keep?
8　A.　Everything that I kept in my office that
9　related to Fannie Mae was sent to you pursuant to a
10　subpoena, and unfortunately, I had a computer crash;
11　and at the time I had the computer crash, I was
12　talking to someone on the telephone who knows I had
13　that crash and much, most of the material in my
14　computer was lost and I had to get a brand-new
15　computer. I sent my hard drive out to a maintenance
16　person to attempt to recover what were thousands of
17　documents that I thought were important, and I was
18　not able to retrieve them.
19　Q.　Okay. Ms. Williams, that's a good segue
20　into my next couple of questions about the return on
21　your subpoena. Exhibit, the second exhibit, Exhibit
22　2 is the subpoena and then attached to it is an
23　Exhibit A. If you would turn to that, please.
24　A.　Exhibit A.
25　Q.　Are you there? Just for the record --

10 (Pages 34 to 37)

Alderson Reporting Company, Inc.
1111 14th Street, N.W. Suite 400  1-800-FOR-DEPO  Washington, DC  20005

Marialice Williams  
Washington, DC  
March 17, 2003

**Page 38**

1   A.  Yes.
2   Q.  -- you are looking at the subpoena?
3   A.  Yes.
4   Q.  And I have just marked as Exhibit 3 a set
5   of materials that I received from you in response to
6   the first iteration of Exhibit A, and the same
7   subpoena was sent to you several months prior to this
8   one. And I have just, we have just brought it
9   forward in this subpoena. And you responded with
10  these documents. And I want you to take a look at
11  those documents and confirm that those are the
12  documents that you collected as responsive to this
13  subpoena.
14          (Exhibit No. 3 was marked
15           for identification.)
16          MR. WISER:  While she is looking through
17  the documents, let me say that I think that you are
18  entitled to some latitude in terms of the scope
19  that's provided in the order.
20          MR. WIMBERLY:  Mr. Wiser, I have to object
21  to your talking over her review of the documents. I
22  don't mind -- I understand, but if you would just
23  wait until she finishes.
24          MR. WISER:  I'd be happy to. I was trying
25  to conserve your time.

**Page 39**

1           MR. WIMBERLY:  I understand, but --
2   appreciate that, but it's a little distracting.
3           THE WITNESS:  This appears, this appears
4   to be all the documents that I turned in.
5           MR. WISER:  In which case, then, are you
6   through looking at them?
7           THE WITNESS:  Yes.
8           MR. WISER:  Let me say that I think you
9   are entitled to some latitude to lay your necessary
10  predicate for the scope of the examination that is
11  contained in the order, but it is not indefinite.
12          MR. WIMBERLY:  I understand that, but you
13  are not suggesting I have gone beyond the latitude?
14          MR. WISER:  It's getting very close.
15          MR. WIMBERLY:  But it isn't there yet, is
16  it?
17          MR. WISER:  No. I'll let you know,
18  though.
19          MR. WIMBERLY:  Thank you, Mr. Wiser.
20          BY MR. WIMBERLY:
21  Q.  Do you have any additional documents
22  responsive to the subpoena?
23  A.  No. I do not.
24  Q.  And have you brought any documents today
25  with you?

**Page 40**

1   A.  I have one item with me which does not
2   pertain to Fannie Mae, but simply to my relationship
3   to CAM Financial.
4   Q.  And may I see it?
5   A.  Which I just located in my -- should I
6   give it to him?
7           MR. WISER:  I'm going to object to even
8   getting into this document or looking at it since --
9           MR. WIMBERLY:  Well, she is sitting there
10  with it, Counselor. I mean, it's in plain view.
11          MR. WISER:  Well, it's outside the
12  scope -- it's, oh, I'm not saying that I don't think
13  you are entitled -- I mean, I think you are entitled
14  to get into it but it doesn't have anything to do
15  with the order today.
16          MR. WIMBERLY:  Counselor, thank you. I'm
17  just letting -- she has got a document and she is
18  going to give it to us.
19          MR. WISER:  I'm going to object -- and I'm
20  going to object for the record.
21          BY MR. WIMBERLY:
22  Q.  Ms. Williams, would you produce the
23  document, please?
24  A.  My counsel has instructed me not to give
25  you the document.

**Page 41**

1   Q.  Well, this is, let me just enter into the
2   record this is a bit absurd, because upon the one
3   minute after three hours, I'm going to ask for
4   production of that document. And unless you can
5   explain why it is irrelevant and not reasonably
6   calculated to lead to admissible evidence, you'll be
7   ordered to produce it. I mean, that's the rule. Now,
8   I'd just as soon see it now. It saves us time.
9           MR. WISER:  And I'm going to object when
10  that -- one minute after three hours if you do that,
11  because the order specifically says that your three
12  hours must be completed and before the remaining
13  30(b)(6)s are done. And therefore, I think it is
14  highly arguable you are not entitled to ask her
15  anything until we complete the Fannie Mae 30(b)(6),
16  whether that's production of documents or otherwise.
17          MR. WIMBERLY:  Well, Mr. Wiser, you are --
18          MR. WISER:  We'll go to the judge on that.
19          MR. WIMBERLY:  May I finish?
20          MR. WISER:  Certainly.
21          MR. WIMBERLY:  You are introducing yet
22  other objection to the deposition we are taking
23  today.
24          MR. WISER:  I'm objecting to anything that
25  you do that goes beyond the scope of Judge Roper's

Marialice Williams                                                                March 17, 2003
                          Washington, DC

**42**

1  forum.
2       MR. WIMBERLY: You are objecting to most
3  anything I'm doing.
4       MR. WISER: No.
5       MR. WIMBERLY: Okay. Well, let's move on.
6  I'm going to get the document anyway. I mean, it's
7  going to save us time if you'll just show me what the
8  document, if it's responsive to the subpoena, you
9  have a legal obligation to produce it. You have not
10 produced it to this point, and I'm asking you to
11 produce it.
12      MS. WILLIAMS: She will produce it after
13 we do -- have the three hours.
14      MR. WIMBERLY: Okay. We'll time that.
15      BY MR. WIMBERLY:
16  Q.  Ms. Williams, do you have any other
17 documents with you today?
18  A.  No.
19  Q.  None?
20  A.  None.
21  Q.  Have you, you mentioned earlier some
22 problem with your computer database. Would you
23 please explain that?
24  A.  I was installing McAfee on my -- Norton or
25 McAfee on my computer in my office at the Watergate

**43**

1  and my computer just started to fade. I have never
2  seen that happen before. This was some virus out and
3  that was why I had gotten the Norton or whatever it
4  was to install. Then I couldn't turn the computer
5  off. Then I couldn't turn it on and off and I had no
6  idea what the problem was because it was still under
7  warranty. I sent the computer back to Gateway and
8  they replaced it.
9   Q.  And what does that mean in terms of your
10 document retention?
11  A.  It means I have no documents.
12  Q.  You have no documents from what period of
13 time?
14  A.  From whatever date that was. And I don't
15 remember precisely what date that was.
16  Q.  No documents from then to when?
17  A.  Now.
18  Q.  To now?
19  A.  I have documents that I have accumulated
20 since my new computer, but at the time that I
21 received my new computer, I had no further contact
22 with Fannie Mae, CAM, or anyone interested in either
23 of those two issues.
24  Q.  Okay. Can you give us a description of
25 your employment history, Ms. Williams?

**44**

1       MR. WISER: I'm going to object. I don't
2  see what possible relevance that has with the release
3  of confidential information.
4       MR. WIMBERLY: You can please answer the
5  question, Ms. Williams. If you can. Mr. Wiser
6  enters his objections, but he is not your lawyer,
7  so --
8       MS. WILLIAMS: But I have a question as to
9  form, as to time.
10      MR. WIMBERLY: You don't ask questions,
11 Ms. Williams. Under the rules --
12      MS. WILLIAMS: I'm going to object.
13      MR. WIMBERLY: -- you can interpose an
14 objection as to form. Unless you instruct this
15 witness not to answer, she has got to answer. Now I
16 understand I have got two, you are lucky,
17 Ms. Williams; you have got two lawyers. One who
18 doesn't, says he doesn't represent you, I don't know,
19 but he is making objections for you.
20      MR. WISER: I'm going to object to your
21 characterizations. You know that's not true.
22      MR. WIMBERLY: Two lawyers. But you and
23 I -- we need to focus.
24      THE WITNESS: I have one counsel, my
25 counsel is Julia B. Williams. And I will ask your

**45**

1  question about employment. What is it that you want
2  to know?
3       BY MR. WIMBERLY:
4   Q.  Thank you. History, your job history?
5   A.  My job history.
6   Q.  Yes, ma'am?
7   A.  I graduated from law school in 1972 from
8  George Washington University, at which time I entered
9  the honors program at the Department of Justice in
10 the civil rights division, during which time I was
11 fortunate enough to file one of the first suits
12 against the City and Light Company of Memphis,
13 Tennessee.
14  Q.  Ms. Williams, I'm just asking your job --
15      MR. WISER: You are cutting her off.
16      THE WITNESS: When I went there -- when I
17 left there, I went to the Equal Opportunity
18 Employment Commission.
19      BY MR. WIMBERLY:
20  Q.  Ms. Williams -- Ms. Williams.
21  A.  I answered what you wanted to know.
22  Q.  I'm objecting to the extent you are going
23 into, I just asked you your job history. We have a
24 time element here in the deposition. I'm trying to
25 observe it.

12 (Pages 42 to 45)

Marialice Williams
Washington, DC
March 17, 2003

### 46

1    A.   I'm trying to answer your question.
2    Q.   I understand, Ms. Williams.
3    A.   Could you let me know what you want me to
4  answer, and let me answer it? Because I need to get
5  out of here.
6    Q.   I just want your jobs. I just want the
7  jobs you've had --
8         MR. WISER: Hang on a minute. I have an
9  objection.
10        MR. WIMBERLY: Mr. Wiser, if you don't
11 stop objecting --
12        MR. WISER: I will object whenever I want
13 to.
14        MR. WIMBERLY: I'll get the magistrate on
15 the phone.
16        MR. WISER: Well, then we probably need to
17 do that because we have already gotten to the point
18 where I have objected that you are exceeding the
19 scope of the order and you have told the witness to
20 go ahead and answer anyway.
21        MR. WIMBERLY: Now, the question on the
22 table --
23        MR. WISER: Let me finish, please, I have
24 allowed you to finish. The point that I made earlier
25 was we need a mechanism for dealing with how we are

### 47

1  going to handle this in terms of going outside the
2  scope. If you want when I start making those
3  objections, if you are going to tell her that I'm not
4  telling her what to answer and have her go ahead on
5  and do that, then we're going to need to get the
6  magistrate on the phone every time you ask one of
7  those. And that's okay with me. If you want to try
8  to explain to me why it's got some relevance, I'll
9  try to be reasonable.
10        MR. WIMBERLY: Let me explain it to you.
11        MR. WISER: Okay.
12        MR. WIMBERLY: It's, her job history leads
13 into her employment at Fannie Mae which leads into
14 her job responsibilities which gets us home, okay?
15 These are standard basic questions. The quicker we
16 get, we get through them, the better. But I'm
17 entitled to get this in the record.
18        MR. WISER: I understand that they are
19 typical questions that you typically ask in a typical
20 deposition and this is not one of those. This is
21 one that has been specifically limited for a specific
22 reason in accordance with a document that is on top
23 of Judge Roper's signature. Now, if you are going to
24 violate Judge Roper's order we are going to get him
25 on the phone. Now I don't see how previous history,

### 48

1  you can waste your own time on that but I'm not going
2  to sit here and accused later of having waived any of
3  this by allowing her to go into areas that are
4  outside the area.
5         MR. WIMBERLY: Mr. Wiser, you can do
6  whatever you need to do but this is not your client.
7         MR. WISER: True.
8         MR. WIMBERLY: Your clients are duly noted
9  on the record. If you would just give me your job
10 history from your --
11        MS. WILLIAMS: She was doing that.
12        BY MR. WIMBERLY:
13   Q.   Please do it briefly, we can move on.
14   A.   Trial attorney for the Department of
15 Justice.
16   Q.   And when was that?
17   A.   In 1972.
18   Q.   Until?
19   A.   Can I tell you something? My job history
20 is about 20 pages long, and I'm willing to do that
21 but I cannot give you every date because when I was
22 young, I had a number of very important political
23 positions, and I went from one to another very
24 quickly and rose in the government to assistant
25 general counsel at the Office of Management and

### 49

1  Budget, at which time I left and went to -- and I do
2  know that that was 1982.
3         When I left the Office of Management and
4  Budget I moved to New Mexico. While I was there I
5  did financial planning and I opened a legal services
6  clinic in Hobbs, New Mexico. When I returned to
7  Washington --
8    Q.   And when was that?
9    A.   -- in 1988, I began practicing law with my
10 father, Wesley S. Williams, Senior, who died shortly
11 after my return. And I took a job at Fannie Mae at
12 that time in the office of general counsel after six
13 months, I then moved as assistant director of
14 multifamily, for capital markets. I was then
15 promoted to director under Tom White of capital
16 markets.
17   Q.   The, let's, let's start with Fannie Mae,
18 Ms. Williams. You started Fannie Mae when?
19   A.   In 1989 in July.
20   Q.   And how long, and you said earlier you
21 left Fannie Mae in --
22   A.   1st of July, 1998.
23   Q.   What was your first position at Fannie
24 Mae?
25   A.   Assistant general counsel. No. Excuse

13 (Pages 46 to 49)

Alderson Reporting Company, Inc.
1111 14th Street, N.W. Suite 400  1-800-FOR-DEPO  Washington, DC  20005

Marialice Williams  Washington, DC  March 17, 2003

**Page 50**

1  me. Senior counsel. They offered me assistant
2  general counsel and changed it to senior counsel
3  before I arrived.
4  Q. So you were in the law department at
5  Fannie Mae?
6  A. Yes, I was.
7  Q. To whom did you report?
8  A. Initially Joanne Carpenter and then I
9  can't remember the name of the vice president for
10  multifamily. I believe he has since retired.
11  Q. How long were you, you were senior
12  counsel. What were your responsibilities as senior
13  counsel?
14  A. I reviewed single family Fannie Mae MBS
15  contracts for Joanne Carpenter. Unfortunately, I
16  then started working in the multifamily division.
17  Q. When was that?
18  A. In, within three months of arriving at
19  Fannie Mae, so that must have been closer to
20  September.
21  Q. You were still in the law department?
22  A. Yes.
23  MR. WISER: I'm going to --
24  THE WITNESS: John Mansfield.
25  MR. WISER: I'm going to object. We have

**Page 51**

1  been doing this for 45 minutes and you haven't asked
2  her a single question about the release of
3  confidential information. Let's get the magistrate
4  on the phone.
5  MR. WIMBERLY: By the way, you haven't
6  brought the document, the original of it. Is it
7  here?
8  MR. WISER: It is in town and it will be
9  here.
10  MR. WIMBERLY: Well, Mr. Wiser, let me
11  take you up on your offer.
12  MR. WISER: Okay.
13  MR. WIMBERLY: I have asked you for the
14  original of that document.
15  MR. WISER: Then you will have it.
16  MR. WIMBERLY: I want the original right
17  now, and I will turn to questions concerning that.
18  Right now.
19  MR. WISER: Then let's go on -- I, well
20  now --
21  MR. WIMBERLY: Sir, I hate to listen to
22  this. Mr. Wiser, I'm prepared to turn to that part
23  of the examination. I will get back, Ms. Williams,
24  we'll get around to a lot of stuff eventually. What
25  Mr. Wiser is trying to object to is within the

**Page 52**

1  framework of this and I'm prepared to turn right to
2  the heart of it and let's do it.
3  But I need that document and I asked you
4  and I asked Mr. Reeves, I sent a letter, I sent an
5  e-mail to you and I sent a letter to Mr. Reeves
6  specifically requesting the original. And let me for
7  the record, let me read the Bates numbers of the
8  document. It's CAM Bates number 9692.
9  They have not provided 9693 and/or the
10  other page of the document. Heretofore we have had
11  only a copy, and, in advance of this deposition
12  without objection from the plaintiffs I have asked
13  for the original so that I could examine this witness
14  and I have yet to see it. And Mr. Wiser told me at
15  the beginning of this deposition that he had left it
16  at his hotel room. He called his associate who is
17  bringing it over, and as an accommodation to him I
18  told him that was fine. I would wait.
19  And now we are getting objections -- and
20  pardon me, but now we are getting objections to when
21  I start questioning the witness about this document.
22  I'm prepared now. I was prepared at the beginning,
23  but I want the original. And it's on its way.
24  You have played the card, Mr. Wiser. Now,
25  let me have the document so I can examine the

**Page 53**

1  witness.
2  MR. WISER: I think you misunderstand the
3  order. The order says what you can do today. You
4  had the option to let me bring the document over here
5  and start your three hours when the document got
6  here. You said that wasn't necessary. It doesn't
7  matter when you get the original document or not.
8  What matters, what you can go into the first three
9  hours is determined by Judge Roper's order. Now if
10  you want to stop the amount of time that's running
11  until that happens, then that's fine. If you had
12  wanted to postpone this for about 30 minutes while
13  the document got over here -- now I let you talk. If
14  you wanted to postpone this --
15  MR. WIMBERLY: This doesn't count against
16  my time in this deposition.
17  MR. WISER: I don't care what you want to
18  count against your time. We'll count the time and
19  let the judge decide it. But I told you that I would
20  be happy to have them bring it over right away, or
21  they could bring it over when they came. That was
22  your option. You said that's fine as long as it's
23  here sometime within the three hours.
24  That does not expand the scope of Judge
25  Roper's order. Judge Roper's order is clear. It

14 (Pages 50 to 53)

Marialice Williams
Washington, DC
March 17, 2003

**54**

1  says what you can do and what can you ask. You can
2  ask her about anything you want to related to the
3  release of confidential information within this three
4  hours, and that's it. If that's not enough, let's
5  get him on the phone. I'm through.
6      MR. WIMBERLY: Thank you, Mr. Wiser. So
7  that we don't have to bother the magistrate about
8  this if you would please call your associate and have
9  the document brought over I will attend to some other
10 questions.
11     MR. WISER: Fair enough.
12     MR. WIMBERLY: And we'll will wait for it
13 to arrive.
14     MR. WISER: So long as those questions are
15 within the scope of the order.
16     MR. WIMBERLY: Where were we?
17     MR. WISER: If you want to ask me to call
18 my associate, let's go off the record until I do
19 that. You have asked me to do this.
20     MR. WIMBERLY: I don't have any problem
21 with that. Let's take a 10-minute, 10-minute break.
22     THE VIDEOGRAPHER: The time is 2:17:22.
23 We are going off the record.
24     (Recess.)
25     THE VIDEOGRAPHER: Time is 2:29:29. We

**55**

1  are back on the record.
2      MR. WIMBERLY: During the break, Mr. Wiser
3  handed me what purports to be the original of a
4  document. I'll let him, let me just assume unless
5  you tell me differently, this is the original of CAM
6  9692, is it not?
7      MR. WISER: Let me pull that up, I will
8  confirm that. 9692, did you say?
9      MR. WIMBERLY: It's 9692. Is that
10 correct?
11     MR. WISER: 9692. That is correct. I
12 will represent to you that this is an envelope and
13 the contents of that envelope that were received by
14 CAM. At least that is what has been, that is my
15 understanding.
16     I believe, was it -- I said CAM. That's
17 incorrect. It's addressed to Bob Jones at 3 Palmer
18 Place. It was received by Bob Jones at 3 Palmer
19 Place.
20     MR. WIMBERLY: So that's the original,
21 the envelope that's at the top of 9692, and then the
22 page of e-mails, that's the original of the e-mail
23 text that's on 9692, correct.
24     MR. WISER: That is correct. The Bates
25 stamp number that is there was not put on the

**56**

1  original. The Bates stamp numbers were done
2  electronically.
3      MR. WIMBERLY: Right. I understand that.
4  And I have asked my paralegal to make a copy of it
5  and bring it back so we can work with it. Did you
6  look for 9693? And, the document looks like it has
7  another page to it by virtue of the language at the
8  bottom.
9      MR. WISER: That is the only thing that
10 was received.
11     MR. WIMBERLY: Okay. Thank you,
12 Mr. Wiser.
13     MR. WISER: Certainly.
14     BY MR. WIMBERLY:
15  Q.  Are you familiar with CAM Financial
16 Services?
17  A.  Yes.
18  Q.  And how are you familiar with CAM -- you
19 know, I'm going to call them, by the way, just so we
20 can short form this, I will refer to them as CAM
21 rather than CAM Financial Services, Inc., unless you
22 have an objection to my shortening it. So how are
23 you familiar with CAM? You have to respond verbally'
24 you have to say something?
25  A.  You haven't asked me a question, have you?

**57**

1  I'm sorry.
2   Q.  I just want to be sure you are okay with
3  me referring to them as CAM?
4   A.  Fine.
5   Q.  Okay, thank you. And how are you familiar
6  with CAM?
7   A.  I am familiar with CAM Financial because
8  they approached me while I was working at Fannie Mae
9  about a concept for laying off risk of DUS lenders
10 utilizing a credit enhancement structure built on the
11 use of a, an insurance policy.
12  Q.  And when did you first meet, when did you
13 first become familiar with CAM?
14  A.  I don't recall the date.
15  Q.  Do you know a gentleman named Bob Jones?
16  A.  Yes, I do.
17  Q.  And how do you know Mr. Jones?
18  A.  Bob Jones is the president of CAM
19 Financial.
20  Q.  How long have you known Mr. Jones?
21  A.  He was the first person I met from CAM
22 Financial.
23  Q.  And when did you meet him?
24  A.  I don't recall the exact date.
25  Q.  Do you recall generally when?

15 (Pages 54 to 57)

Alderson Reporting Company, Inc.
1111 14th Street, N.W. Suite 400 1-800-FOR-DEPO Washington, DC 20005

## 58

1  A.  Approximately 1994 or '95. I just do not
2  recall.
3  Q.  And do you know a gentleman named, he goes
4  by the name Chuck Rumsey?
5  A.  Yes, I do.
6  Q.  And how do you know Mr. Rumsey?
7  A.  He is one of the people who works at CAM
8  Financial.
9  Q.  How long have you known Mr. Rumsey?
10  A.  Since that same length of time.
11  Q.  And do you know a gentleman named Danny
12  Groves?
13  A.  Yes, I do.
14  Q.  And how do you know Mr. Groves?
15  A.  Through the same relationship. The three
16  of them as I understand it are in business together.
17  Q.  Did you know about this lawsuit before I
18  called you last year?
19  A.  Yes.
20  Q.  How did you know about this lawsuit?
21  A.  Bob Jones informed me that he was going
22  to, in order to effectuate the terms of a contract
23  which I had had some interest in preparing, he was
24  going to sue -- are you listening to me?
25  Q.  Ms. Williams, I'm always listening to you.

## 59

1  A.  That he was going to have to sue the
2  insurance companies, because they had violated the
3  confidentiality agreements that had been signed
4  between CAM Financial and those various companies.
5  Q.  When did he tell you that?
6  A.  I don't recall the exact date.
7  Q.  Do you recall --
8  MR. WISER:  I'm going to object,
9  Mr. Wimberly, I believe you said before the break
10  that if I handed you the document you would go right
11  into it and I still have not heard any questions
12  relating to release of confidential information.
13  BY MR. WIMBERLY:
14  Q.  Ms. Williams, there is a question pending.
15  MR. WISER:  I don't believe there was. I
16  think I waited.
17  MR. WIMBERLY:  You actually, you stepped
18  on my question. Let me go back to my question. Do
19  you recall generally when he told you about this
20  lawsuit?
21  MR. WISER:  I have made my objection. If
22  you would like to explain why that is related to the
23  release of confidential information, we can avoid
24  calling the judge.
25  MR. WIMBERLY:  Mr. Wiser, you cannot

## 60

1  instruct the witness not to answer.
2  MR. WISER:  I have not. I said we are
3  going to call the judge. I don't care if --
4  MR. WIMBERLY:  Well let me try one more
5  time to avoid war in the Middle East here. I'm
6  setting a foundation. And I'm entitled to set a
7  foundation. I'm trying to do it efficiently. And I
8  would appreciate it if you would not continue to
9  object --
10  MR. WISER:  I will object when I deem --
11  MR. WIMBERLY:  -- to irrelevant, on
12  irrelevant points.
13  MR. WISER:  I think that the judge
14  understood they clearly based upon the
15  representations that you made to him at the time,
16  that there was a source of information at Fannie Mae,
17  you believed there to be a source of information at
18  Fannie Mae that was releasing information, and based
19  upon that you got the judge to allow an entry of an
20  order to take a very limited scope deposition of
21  Ms. Williams to find out information that was being
22  released from Fannie Mae.
23  You haven't gotten anywhere near that. A
24  foundation does not give you license to exceed the
25  scope of the limited order that Judge Roper gave.

## 61

1  Now, the only time that I can object to a question is
2  before it is answered so I'm sorry if I stepped on
3  her answer but that's just the way it goes. If it is
4  necessary now to get Judge Roper on the phone because
5  of the fact that we have been doing this and you
6  haven't asked anything about confidential information
7  yet, then let's get him on the phone.
8  MR. WIMBERLY:  Why don't you get him on
9  the phone, Mr. Wiser?
10  MR. WISER:  Let's go off the record while
11  we dial -- Mr. Wiser is going to dial the number.
12  THE VIDEOGRAPHER:  The time is 2:37:18.
13  We are going off the record.
14  (Recess.)
15  (Telephonically)
16  MR. WIMBERLY:  Hello, Jenny?
17  TELEPHONE VOICE:  The judge is here.
18  MR. WIMBERLY:  Oh, good. Hi, Judge Roper.
19  This is Gerard Wimberly with Fannie Mae.
20  JUDGE ROPER:  (Telephonically) How are you?
21  MR. WIMBERLY:  We're fine.
22  MR. WISER:  This is Nike Wiser. I guess
23  this is really my objection. We are in Washington,
24  D.C. on a deposition in the CAM Financial vs. Gen
25  Starr et al. case. Your Honor may remember the

Marialice Williams  
Washington, DC  
March 17, 2003

62

1  original scheduling order in this case.
2      JUDGE ROPER: I thought you're all there
3  to meet with George Bush to decide whether to go to
4  war.
5      (Laughter.)
6      MR. WISER: If they find out we are here,
7  they may bomb this building. As Your Honor may
8  remember, the original scheduling order that was
9  entered in this, you directed that the 30(b)(6)'s
10 were to be completed prior to engaging in the
11 individual depositions. Mr. Wimberly noticed a
12 deposition of Marialice Williams, who is not a party.
13 Miss Williams' attorney, Miss Julia Williams, no
14 relation, is here in the room and it is
15 Miss Marialice Williams' deposition that is at issue.
16     Your Honor ruled that based upon, as I
17 recall a representation, that there was a pressing
18 need to conduct a deposition of Miss Williams, a
19 former Fannie Mae employee, because of the indication
20 that there had been a, some confidential information
21 that was being leaked or had been leaked, Your Honor
22 entered a minute entry on November the 20th of 2002.
23     JUDGE ROPER: Uh-huh.
24     MR. WISER: Which specifically said that
25 the deposition of Marialice Williams may proceed

63

1  prior to Fannie Mae's 30(b)(6) deposition for a
2  period not to exceed three hours and limited to
3  information regarding the release of confidential
4  information.
5      JUDGE ROPER: That's correct. I recall.
6      MR. WISER: We have now been in the
7  deposition for approximately an hour. Normally of
8  course when an objection is interposed by counsel
9  opposite, the testimony is taken subject to the
10 objection. Here we have a slightly different
11 situation because of the fact that Your Honor has
12 specifically limited the scope of what areas of
13 inquiry there may be. Such as, Mr. Wimberly has
14 attempted to go into her employment background, into
15 her educational background, into her history at
16 Fannie Mae.
17     These were all questions that while
18 absolutely appropriate in terms of the general
19 deposition, are not questions that are related to the
20 limited scope of your order. I interposed an
21 objection, and -- I have interposed several
22 objections and we finally hit the point that we
23 decided that -- and I will certainly let Mr. Wimberly
24 speak for himself -- but that it was time to seek
25 guidance from the court, because in my reading of

64

1  your order, he is going outside the limited scope of
2  that order and should not be permitted to do so until
3  we complete the Fannie Mae 30(b)(6)'s, which we are
4  hopefully also going to do while we are up here.
5      JUDGE ROPER: All right.
6      MR. WIMBERLY: Judge, if I may, this is
7  Gerry Wimberly. We have had, fortunately with all
8  this technology we can tell you precisely 46 minutes
9  of transcript, and we are looking at three hours
10 today. And I fully intend to, to address only the
11 confidential issues. But thus far, I have been going
12 into foundational background and in fact, at a point
13 earlier today in deference to the interest of getting
14 to the point, I flipped over and postponed, I
15 postponed completing the witness's job history, which
16 I think I'm entitled to get to, but to avoid a
17 dispute, let's just get into the stuff and that's
18 where we are.
19     I'm a bit surprised that Mr. Wiser is
20 objecting at this point because I have, the questions
21 pending, Your Honor, pertain to her knowledge of the
22 lawsuit and the principals in it. The, the weighty
23 issue of the day will be, will concern an e-mail that
24 the plaintiff got from a, quote, "confidential
25 source," end quote, within Fannie Mae after the

65

1  lawsuit was filed. And that document went to
2  Mr. Wiser, the plaintiff's lawyer, lawyer -- layer in
3  2 -- in June -- excuse me, last year, Your Honor,
4  after the --
5      JUDGE ROPER: How close are you getting to
6  the, discussing the meat of what you are up there
7  for? How much longer have you got in the
8  preliminaries before you get to that?
9      MR. WIMBERLY: Literally maybe 10 minutes.
10     JUDGE ROPER: All right. 10 more minutes
11 and get going with it.
12     MR. WIMBERLY: Okay. Your Honor, we have
13 another issue, since we have got you on the phone, if
14 it please the court. Although this deposition is
15 technically within the jurisdiction of the D.C. court
16 we have been working it out through Your Honor's case
17 management order, in items of how we deal with --
18     JUDGE ROPER: That's always helpful if you
19 can do that.
20     MR. WIMBERLY: Yeah, and rather than waste
21 the court's time here if we can help it.
22     JUDGE ROPER: What winds up, what other
23 judge up there starts calling up down here. That's
24 the way it usually works out.
25     MR. WIMBERLY: Yes, sir. Your Honor, the

17 (Pages 62 to 65)

Marialice Williams                                              March 17, 2003
                        Washington, DC

**Page 66**

1    issue, we have got this subpoena that has not been
2    objected to for Ms. Williams to appear this afternoon
3    and then on Friday and Monday, same place. And the
4    substantive examination on other topics would
5    commence Friday and Monday. I have also had several
6    conversations with Ms. Williams' lawyer who is
7    sitting here to arrange that.
8        And in addition, Gen Starr's counsel sent
9    Ms. Williams' counsel a letter saying they would be
10   needing extra time so this would not be the
11   conclusion. In other words, given the demands of
12   this case and the issues we are looking at having to
13   come back again but we want to do it at a convenient
14   time for all the participants.
15       So we are talking about, we have been
16   talking about until today doing three hours this
17   afternoon, and then a full day on Friday and a full
18   day on Monday, which would hopefully exhaust my
19   examination and perhaps one of the other defendants.
20   But the plaintiffs and at least one of the other
21   defendants will have to come for a later time and we
22   have talked about pushing out into April and May but
23   that's subject to convenience.
24       For the first time this afternoon, I hear
25   an objection that the witness doesn't want to go more

**Page 67**

1    than seven hours total, which would include my three
2    hours today. And Mr. Wiser is concurring in that,
3    which I think, given the way we, the issues in the
4    case and the fact that our other depositions have
5    gone, 14, 21 hours and even six days at the consent
6    of the parties, I'm frankly surprised that the
7    plaintiffs are pushing to cut this off. They won't
8    even have an opportunity to examine her.
9        But in any event, as between us and -- me
10   and counsel for the witness, I think it's been quite
11   clear that we are going for the three hours today and
12   then all day Friday and Monday. And the, so that's,
13   Your Honor, I request that the court enable us to do
14   a seven-hour day on Friday and a seven-hour day on
15   Monday. There is no pending motion to quash and
16   there is no written objection to, you know, to this
17   deposition and I got a subpoena out. So I don't
18   really know and I'll turn this over to Your Honor
19   to --
20       MS. WILLIAMS: Your Honor, I'm Julia
21   Williams and I'm representing Marialice, the witness.
22   She is a consultant. It is really a hardship on her,
23   and I have explained this to Mr. Wimberly many times,
24   and he continually called me and harassed me and I
25   just received a letter from the New York counsel

**Page 68**

1    saying they are not going to be able to take her
2    deposition. Your Honor, I mean, this just goes on
3    and on and it's just a hardship.
4        MR. REEVES: Judge, may I say something?
5    This is Jim Reeves of Minor law firm. I'm up here as
6    well. The problem is, and Gerald and I talking about
7    this earlier this week. He had indicated to me this
8    witness could only be available this Friday and this
9    Monday, and Miss Williams said that's not the case.
10       The problem is, this poor lady now has got
11   to come up here today, she then comes up Friday and
12   Monday, which is noticed for her deposition by
13   Gerard, in direct contravention of your order that
14   we're reading from that says she is not to be deposed
15   until we get through the 30(b)(6), interrupting two
16   complete days of the 30(b)(6) that we had scheduled,
17   making it four straight days that we are up here not
18   getting to depose anyone and then the lady apparently
19   will have to try to have her come back at some other
20   time for another round of depos for God knows how
21   long.
22       Here's what I think would be the
23   appropriate thing, judge. Let's conform with your
24   order and that is go forward with the three-hour depo
25   today. Ms. Williams has stated that she would make

**Page 69**

1    her client available at a reasonable time when we
2    come back up here at some other time, and take the
3    entire deposition, so this lady doesn't have to come
4    back two or three times. And so it doesn't interrupt
5    the flow of our depositions and it's not in
6    contravention of your order.
7        MR. WIMBERLY: Your Honor, let me just
8    clarify Jim's point because he is a late comer in
9    this. We have been trying to schedule her since last
10   November and that's where we ended up with this
11   minute entry. And the scheduling in my subpoena is
12   based on the understanding among counsel that the
13   30(b)(6)'s would have ended Thursday and so we have
14   had Friday and Monday.
15       We have worked out an arrangement among
16   counsel for the convenience of the parties that
17   we'll, I'm going to put my people forward for
18   30(b)(6)'s into next week and that's actually an
19   accommodation to the plaintiff. Initially, they were
20   just Tuesday, Wednesday and Thursday of this week.
21   But he had scheduled their individual depositions as
22   well and I don't make it makes any sense to split
23   hairs. They are available for two weeks.
24       So Mr. Reeves is incorrect in terms of the
25   30(b)(6) limitation. That's the way this has been