**EXHIBIT F**

Case 1:05-cv-01483-JDB   Document 11-11   Filed 11/14/2005   Page 1 of 5

LEXSEE 2000 US APP LEXIS 26681

**Valencia Campbell, et al., Appellants v. National Education Association, Appellee**

**No. 99-7122 Consolidated with 99-7123**

UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

*2000 U.S. App. LEXIS 26681*

**October 3, 2000, Filed**

**NOTICE:** [*1] RULES OF THE DISTRICT OF COLUMBIA CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2000 U.S. App. LEXIS 38605.*

**PRIOR HISTORY:** Appeals from the United States District Court for the District of Columbia. (No. 91cv03264), (No. 92cv01637).

**DISPOSITION:** Affirmed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For VALENCIA CAMPBELL, CHERYL LUCAS, TASHA MCGUTHRIE, DEAGELIA M. PENA, BARBARA VALENTINE, Plaintiffs - Appellants (99-7122): David H. Shapiro, Richard L. Swick, Swick & Shapiro, Washington, DC.

For NATIONAL EDUCATION ASSOCIATION, Defendant - Appellee (99-7122): W. Gary Kohlman, Robert Mark Weinberg, Bredhoff & Kaiser, Washington, DC.

For NATIONAL EDUCATION ASSOCIATION, Defendant - Appellee (99-7122): Maurice Joseph, National Education Association, Washington, DC.

For VALENCIA CAMPBELL, CHERYL LUCAS, TASHA MCGUTHRIE, DEAGELIA M. PENA, BARBARA VALENTINE, Plaintiffs - Appellants (99-7123): David H. Shapiro, Richard L. Swick, Swick & Shapiro, Washington, DC.

For NATIONAL EDUCATION ASSOCIATION, Defendant - Appellee (99-7123): W. Gary Kohlman, Robert Mark Weinberg, Bredhoff & Kaiser, Washington, DC. Maurice Joseph, National Education Association, Washington, DC.

**JUDGES:** Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

**OPINION:**

JUDGMENT

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The court has determined that the issues presented occasion no need for a published opinion. See D.C. Cir. Rule 36 (b). It is

**ORDERED AND ADJUDGED** that summary judgment for defendant [*2] be affirmed for the reasons stated in the accompanying memorandum.

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C. Cir. Rule 41.

MEMORANDUM

Plaintiffs-Appellants appeal the grant of summary judgment to Defendant-Appellee ("NEA") in two consolidated employment discrimination actions brought under *42 U.S.C. § 1981* and the District of Columbia Human Rights Act, D.C. Code §§ 1-2501 *et seq.* ("DCHRA"). Appellants, five minority women who were employed at NEA's Research Division, present broad claims that NEA maintained a discriminatory promotion system and engaged in discriminatory practices against minority women. Upon review of the record, we conclude that appellants have failed to demonstrate entitlement to relief for three reasons. First, appellants may not rely on the "continuing violation" theory and hence may not expand their claims beyond those that fall within the DCHRA's

one-year statute of limitations and the requirements of § 1981. Second, appellants have failed to present material facts and/or admissible evidence in compliance with [*3] Local Rule 108(h). Third, appellants' broad claims of discrimination and retaliation fail to identify actionable conduct.

### I.

**The "Continuing Violation" Theory.** In 1993, the district court dismissed the majority of appellants' claims. The court dismissed all claims under § 1981, with the exception of appellant Pena's claim that NEA discriminatorily denied her the position of Manager of Surveys, on the grounds that they were based on conduct subsequent to the formation of an employment contract and therefore were not actionable. Although the Civil Rights Act of 1991 expanded the scope of § 1981 and would encompass the additional claims that appellants assert, the 1991 amendments do not apply retroactively. *See Landgraf v. USI Film Products, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994).* Hence, appellants were obligated to present the majority of their claims under the DCHRA and to adhere to the DCHRA's one-year statute of limitations. The district court dismissed all claims based on conduct that fell outside this statutory period.

Appellants seek to overcome these DCHRA and § 1981 limitations by invoking the "continuing violation" theory. *See,* [*4] *e.g., Milton v. Weinberger, 207 U.S. App. D.C. 145, 645 F.2d 1070 (D.C. Cir. 1981); Shehadeh v. C&P Telephone Co., 193 U.S. App. D.C. 326, 595 F.2d 711 (D.C. Cir. 1978).* They contend that the continuing violation theory applies because they are attacking NEA's "ongoing program of discrimination, rather than any of its particular manifestations." *Shehadeh, 595 F.2d at 724.* Moreover, appellants contend that, because this continuing promotion system was in place before and after 1991, their claims are covered by the 1991 Civil Rights Act and do not rely on the Act's retroactive application. As a result, appellants maintain, the DCHRA statute of limitations and the restrictions of § 1981 are inapplicable, and the court should consider all of appellants' claims regardless of when the allegedly discriminatory conduct occurred.

A key premise of the continuing violation theory, however, is that the limitations period should not begin until a reasonable person would have been aware that her rights were violated. *See Taylor v. Federal Deposit Insurance Corp., 328 U.S. App. D.C. 52, 132 F.3d 753, 765 (D.C. Cir. 1997); Dasgupta v. Univ. of Wisconsin Bd. of Regents, 121 F.3d 1138, 1139 (7th Cir. 1997).* [*5] The record shows that, on several occasions before November 1990, appellants complained of promotions denied and sought administrative remedies against NEA. In 1975, for example, appellant Valentine filed an administrative complaint with the District of Columbia Office of Human Rights after she was denied a promotion. Appellant Pena also asserted her belief that the NEA's failure to promote her in the 1980s was rooted in discriminatory motive and filed grievances with NEA. Such conduct demonstrates that appellants interpreted NEA's actions as discriminatory when these events occurred. As a result, appellants may not assert now that NEA's actions were part of a continuing violation.

Hence, the district court correctly limited appellants' admissible claims to (1) appellant Pena's claim under § 1981 and (2) claims under the DCHRA arising from actions that occurred after November 1990.

### II.

**Local Rule 108(h).** Local Rule 108(h) "places the burden on the parties and their counsel . . . to crystallize for the district court the material facts and relevant portions of the record." *Jackson v. Finnegan, 322 U.S. App. D.C. 35, 101 F.3d 145, 151 (D.C. Cir. 1996).* Appellants' [*6] Rule 108(h) statement, however, does not identify material issues of fact or admissible evidence that would preclude the entry of summary judgment for NEA. Instead, appellants merely respond in general terms to NEA's Rule 108(h) statement.

With respect to appellant Pena's promotion claim, appellants provide nothing more than references to appellant Pena's own declaration to support her assertion that she was discriminatorily denied the position of Manager of Surveys. For example, in her declaration, appellant Pena claims that her NEA supervisors discriminatorily outlined "communication problems" in her evaluations in order to "build up a systematic record on which to base denying [her] a promotion." NEA's Rule 108(h) statement responds to this allegation by detailing a number of reasons for not selecting appellant Pena. The most prominent of these reasons was that the current manager was the unanimous, non-discriminatory choice of a selection panel, which included women and minorities, based on superior relevant skills. To rebut NEA's claim that its employment decision was non-discriminatory, appellants' Rule 108(h) statement must provide something more than appellant Pena's mere [*7] disagreement with NEA's decision. *See Brown v. Brody, 339 U.S. App. D.C. 233, 199 F.3d 446, 458-59 (D.C. Cir. 1999).*

Appellant Pena's declaration also claims that the "close similarity between the management generated job requirements and stated educational achievements" of the person who was appointed were evidence that "the position selection was certainly rigged." Appellants' Rule 108(h) statement, however, refers to no evidence that

transforms this claim into anything more than a broad accusation insufficient to rebut NEA's explanation for its decision. To support their claim that NEA changed the selection criteria to fit the qualifications of the current manager, appellants could have offered, for example, NEA documents to contrast the previous management's job description with that used for the current management position.

As indicated by past employment discrimination cases where plaintiffs survived summary judgment, appellants were obligated to proffer more concrete evidence of their employers' discriminatory conduct. In *Aka v. Washington Hospital Center, 332 U.S. App. D.C. 256, 156 F.3d 1284 (D.C. Cir. 1998)*(en banc), the required qualifications **[*8]** for the position at issue were "previous hospital experience in pharmacy services" and "knowledge of medical terminology." *156 F.3d at 1295*. The plaintiff provided detailed evidence that his nineteen years' experience as a hospital orderly involved continuous interaction with the pharmacy and allowed him to develop a familiarity with medical terminology. *Id.* at 1296. Moreover, the plaintiff presented evidence of his educational qualifications (a master's degree in business and professional administration, with a concentration in health management) and clearly demonstrated that his qualifications were far superior to those of the employer's choice for the position, who did not even have a college degree. *Id.* at 1297.

Unlike the plaintiff in Aka, appellants do not properly establish a factual dispute in their Rule 108(h) statement. As the court has warned, "failure to file a proper Rule 108(h) statement 'may be fatal to the delinquent party's position.'" *Jackson, 101 F.3d at 151 (quoting Gardels v. Central Intelligence Agency, 205 U.S. App. D.C. 224, 637 F.2d 770, 773 (D.C. Cir. 1980))*. Absent proper Rule 108(h) assertions of material issues of fact and admissible evidence **[*9]** concerning appellant Pena's promotion claim, the court is unable to analyze the substance of her promotion dispute.

### III.

**Claims of Discriminatory Action and Retaliation.** Appellants also allege claims of discrimination and retaliation based on a broad range of conduct by NEA officials, including (1) negative comments in appellants' performance appraisals, (2) refusal to allow appellants to attend certain conferences, (3) elimination of professional responsibilities, (4) denial of leave, and (5) excessive supervision. In addition, appellants point to two instances that allegedly demonstrate retaliation: (1) Appellants (as well as a male colleague) received "black dot" envelopes in their NEA mailboxes, and (2) Campbell's supervisor informed a prospective employer of the pending lawsuit. To substantiate these claims, appellants rely almost exclusively on their own declarations. None of these claims, however, is actionable under the law of this circuit.

To survive summary judgment, appellants must "show[] that they have been subjected to some sort of adverse personnel or employment action," i.e., "some form of legally cognizable adverse action by the employer." *Brown, 199 F.3d at 452-53.* **[*10]** In defining such an action, the *Brown* court adhered to the Supreme Court's recent interpretation of a "tangible employment action": "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *339 U.S. App. D.C. at 243, 199 F.3d 446, 456 (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998))*. Moreover, to prove disparate treatment, appellants must demonstrate that "all of the relevant aspects" of their employment were "nearly identical" to those of the employees with whom appellants compare themselves. *Neuren v. Adduci, Mastriani, Meeks & Schill, 310 U.S. App. D.C. 82, 43 F.3d 1507, 1514 (D.C. Cir. 1995)(quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994))*.

None of appellants' claims involves a significant change in appellants' employment or benefits, as required by *Burlington* and *Brown*. Rather, the actions that appellants denounce simply reflect the at times difficult relationship between employer and employee. *See* **[*11]** *Taylor, 132 F.3d at 765*. The negative comments on appellants' otherwise positive evaluations do not amount to an adverse employment action. *See Brown, 199 F.3d at 458.* Similarly, NEA's denial of projects and/or conferences that seemed attractive to appellants is also insufficient under *Brown*, which states that "mere idiosyncracies of personal preference are not sufficient to state an injury." *Id.* at 457. NEA stated — and appellants did not refute — that appellants were permitted to attend those conferences that complied with NEA rules and that were directly relevant to their professional development. Finally, the minor changes in professional responsibilities that appellants denounce "do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes." *Mungin v. Katten Muchin & Zavis, 325 U.S. App. D.C. 373, 116 F.3d 1549, 1556-57 (D.C. Cir. 1997)*.

Similarly, appellants' allegations of disparate treatment fail due to their lack of specificity. In their declarations, appellants provide numerous general, unsubstantiated statements that whites and/or males were treated differently **[*12]** from appellants. n1 Such conclusory statements do not present genuine issues of material fact and are therefore insufficient to defeat summary judg-

ment. *See Wixson v. Dowagiac Nursing Home, 87 F.3d 164 (6th Cir. 1996)*. When appellants do provide detail concerning colleagues who were treated more favorably, they fail to establish, as required by *Neuren*, that the employees were in "nearly identical" positions. For example, in her declaration, appellant Campbell states that, contrary to her situation, Tomas Saucedo (a Hispanic male) and John Yrchick (a white male) were not obligated to adhere to formal NEA procedures to participate in a conference. Appellants provide no information, however, about these men's rank, position, or areas of specialization within the NEA Research Division. Similarly, appellant McGuthrie's declaration states that, while she was not allowed to order many books, John Yrchick and Carol Norman ordered numerous books. Appellants' declarations make clear, however, that Yrchick and Norman were of significantly higher rank than appellant McGuthrie: Yrchick was hired at Rank 12, and Carol Norman was appellant McGuthrie's supervisor.

> n1 Examples of these statements include: (1) "white and male staffers are always assigned to participate in . . . conferences"; (2) "whites and males in the Research Division have routinely had lunch and other social engagements with NEA governance; (3) whites or males have missed staff meetings and "they were not criticized for this"; (4) "white employees merely have to make a verbal request to attend a particular conference . . ."; and (5) the supervisors did not "devote this amount of time to other males or whites under their supervision."

**[*13]**

Appellants' retaliation claims — namely the "black dot" incident and the comments by appellant Campbell's supervisor — also fail for lack of specificity. To establish a prima facie case of retaliation, appellants must show that: (1) they engaged in activity protected by the statute; (2) appellee engaged in conduct having an adverse impact on appellants; and (3) the adverse employment action was causally related to appellants' exercise of their protected rights. *McKenna v. Weinberger, 234 U.S. App. D.C. 297, 729 F.2d 783, 790 (D.C. Cir. 1984)*. While appellants engaged in protected activity and claim harm from the "black dot" incident and the comments by Campbell's supervisor, appellants provide insufficient details concerning these events. Appellants do not provide evidence to link the black-dot letters to NEA, nor do they provide details to clarify the context and substance of the comments by appellant Campbell's supervisor.

Finally, appellants have not demonstrated that the challenged actions contributed to a hostile work environment. *See Brown, 199 F.3d at 454* (*citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)*). **[*14]** Instead, appellants largely attack appellee for forcing them to adhere to established workplace policies.