## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARIALICE BATHRUS WILLIAMS, | : | Civil Action No. 1:05CV01483 |
| Plaintiff, | : | Judge John D. Bates |
| vs. | : | |
| FEDERAL NATIONAL MORTGAGE | : | **DEFENDANTS FEDERAL NATIONAL** |
| ASSOCIATION, *et al.* | : | **MORTGAGE ASSOCIATION,** |
| Defendants. | : | **RICHARD LAWCH, AND GRACE** |
|  | : | **HUEBSCHER'S REPLY TO** |
|  | : | **PLAINTIFF'S OPPOSITION TO** |
|  | : | **DEFENDANTS' RENEWED** |
|  | : | **MOTION TO DISMISS** |

Plaintiff's response to the Defendants'[1] motion to dismiss does not actually rebut any of Defendants' arguments.  As plaintiff has failed to demonstrate a single reason why Defendants' motion should be denied, this Court should grant Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) and dismiss all of plaintiff's claims in their entirety.

### ARGUMENT

**I.    PLAINTIFF'S SECTION 1981 CLAIMS (COUNTS I AND II) SHOULD BE DISMISSED BECAUSE SHE FAILS TO ALLEGE THAT OTHERS RECEIVED CONTRACTS SHE SHOULD HAVE RECEIVED.**

In its motion to dismiss, Fannie Mae explained that plaintiff fails to state a claim under 42 U.S.C. § 1981 (1991) ("Section 1981") because she does not allege that there was any particular opportunity that she was entitled to receive or that somebody else received and because she does not allege specific facts sufficient to show discrimination.[2]  In response,

---

[1]    Collectively, Federal National Mortgage Association ("Fannie Mae"), Richard Lawch ("Lawch"), and Grace Huebscher ("Huebscher").

[2]    Plaintiff has made no mention in her response of two basic indisputable points raised by Defendants in their Motion to Dismiss:  (1) plaintiff cannot make sex discrimination claims under Section 1981; and (2) plaintiff cannot sustain any claims that somehow "arise through" 42 U.S.C. § 1983.

plaintiff (1) asserts that her "allegations clearly do not require the presence of a binding contract which could have been awarded to Plaintiff but were instead were [sic] awarded to some third party," (2) points to a single paragraph in her complaint indicating that Fannie Mae "directed" business and accompanying financial remuneration to Craig Ott (a white male), and (3) references two additional paragraphs, which simply assert that defendants engaged in "unlawful discrimination" and "unlawful retaliation." (Plaintiff's Response ("Resp.") at 4.)

Regardless of whether Section 1981 requires a defendant to enter into an actual contract with a member of a different race, plaintiff's failure to allege even a single purported contract she proposed and Fannie Mae rejected dooms her claims. To state a claim under Section 1981, plaintiff must allege the "deprivation of an enumerated right which, under similar circumstances, would have been accorded to a person of a different race." *Farasat v. Paulikas*, 32 F. Supp. 2d 249, 253 (D. Md. 1998) (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 458 (4th Cir. 1989)). Moreover, "a 1981 claim for interference with the right to make and enforce a contract must involve the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Wesley v. Don Stein Buick, Inc.*, 42 F. Supp. 2d 1192, 1200 (D. Kan. 1999); *see also Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989) ("Plaintiff has alleged that defendants' actions have interfered with his 'prospective business opportunities,' but . . . that vague and conclusory allegation [is] insufficient to state a deprivation of the right to make and enforce contracts that is protected by Section 1981.").

Plaintiff's complaint falls woefully short of meeting this standard. Plaintiff contends that she is an insurance broker. (Compl. ¶ 34.) In other words, her purported business was to bring insurance companies to Fannie Mae to insure risks the company decided to eliminate or mitigate by purchasing insurance policies. Yet plaintiff does not cite a single proposed insurance contract

(or even insurance company) that she presented to Fannie Mae and which Fannie Mae rejected because of her.[3]

Moreover, plaintiff does not allege that a contract she was entitled to went to someone of a different race.[4]  Indeed, the only paragraph she identifies as providing a factual basis for her claim merely states that Defendants "directed" business to Craig Ott.  (Resp. at 4.)  But her own amended complaint makes clear that Mr. Ott was merely "structuring and closing mortgage transactions **loosely based** upon the very same business concepts" plaintiff had previously developed at Fannie Mae. (Am. Compl. ¶ 16, 17, 25, and 59 (emphasis added).)  Thus, she does not allege that Mr. Ott was dealing with the same insurers as plaintiff, that his interaction with Fannie Mae was the same as her proposed role, or even that Fannie Mae ever actually entered into an agreement with Mr. Ott.  In other words, she provides no factual basis for her discrimination claims, and the mere fact that plaintiff labels the few facts in her complaint as discrimination does not change the result.  *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (the Court is not bound by "legal conclusions cast in the form of factual allegations").

---

[3]    Indeed, the closest plaintiff comes to such an allegation is her suggestion that a Fannie Mae executive promised to do a billion dollars of insurance-based business through her in 1998, immediately after she left the company.  (Compl. ¶¶ 21-23.)  But even there, plaintiff does not allege she presented Fannie Mae with any particular insurance transactions that Fannie Mae rejected (which is not surprising given the fact that she didn't have a brokers license for much of the time covered by this purported promise.)  (*See* Am. Compl. ¶ 34.)  Moreover, as explained in Fannie Mae's accompanying motion for summary judgment, any claims related to this purported business should have been filed over 4 years ago—three years after it failed to materialize.

[4]    Courts have held that the contract in issue must have gone to someone of a different race.  *See, e.g., Conners v. Ford Motor Co.*, No. 01 C 9381, 2004 U.S. Dist. LEXIS 2919, at *4 (N.D. Ill. Feb. 26, 2004) ("To establish a *prima facie* case for intentional discrimination under section 1981, plaintiff must show that (1) he is the member of a protected class; (2) he applied and was qualified to enter into an available contractual relationship; (3) he was rejected; and (4) the contract was awarded to an individual of a different race."); *Falkner Motor Sales, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, No. 93 C 1346, 1996 U.S. Dist. LEXIS 3536, at *7 (N.D. Ill. Mar. 25, 1996) (same) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  In the employment context, courts have required that plaintiff show that the position for which she applied was given to a member of non-protected class or that the position remained open.  *See, e.g., Patterson v. McLean Credit Union*, 491 U.S. 164, 186-87 (1989); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).

## II.    PLAINTIFF FAILS TO STATE A CLAIM FOR CONSPIRACY (COUNT III).

Defendants explained in their motion to dismiss that there can be no conspiracy here under 42 U.S.C. § 1985, as a corporation cannot conspire with its officers and agents unless they are operating outside the scope of their employment.  Motion to Dismiss at 5; *see also Weaver v. Gross*, 605 F. Supp. 210, 214-15 (D.D.C. 1985).  Plaintiff attempts to keep her conspiracy claim alive by stating that whether Lawch and Huebscher acted within the scope of employment is a matter to be decided after discovery.  (Resp. at 6.)  This assertion, however, does nothing to change the fact that plaintiff did not (and cannot) allege a fundamental element of her claim:  that Lawch and Huebscher were acting outside the scope of their employment.  Given the heightened pleading standards of Section 1985[5]—which plaintiff failed to meet on any elements of her claim—and the fact that Defendants identified this deficiency in plaintiff's original complaint, which plaintiff then failed to rectify, plaintiff's conspiracy claim should be dismissed.[6]

## III.   PLAINTIFF'S INTERFERENCE-BASED CLAIM (COUNT VI) SHOULD BE DISMISSED.

Defendants explained in their opening brief that plaintiff failed to plead the basic elements of a tortuous interference claim, including the existence of a "valid business relationship or expectancy" with a **third party**.  *See Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 45 (D.D.C. 2005); *Bennett Enters., Inc. v. Domino's Pizza, Inc.*,

---

[5]    As noted in Defendants' Motion to Dismiss, "Allegations of conspiracy [under § 1985] are subject to heightened pleading standards.  'Complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights will be dismissed.'" *Williams v. Washington Post Co.*, Case No. 89-3256, 1990 U.S. Dist. LEXIS 7984, at *4 (D.D.C. June 28, 1990) (quoting *Hobson v. Wilson*, 737 F.2d 1, 30 (D.C. Cir. 1984) (internal quotations omitted)).

[6]    Indeed, courts have regularly dismissed conspiracy counts where the plaintiff fails to allege facts sufficient to allege that officers of a company were acting outside of their authority. *See, e.g., Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1978); *Doherty v. Am. Motors Corp.,* 728 F.2d 334, 339-40 (6th Cir. 1984); *Langadinos v. Appalachian Sch. of Law*, Case No. 1:05cv00039, 2005 U.S. Dist. LEXIS 20958, at *36-37 (W.D. Va. Sept. 25, 2005); *Sirajullah v. Ill. State Med. Inter-Insurance Exchange*, No. 86 C 8668, 1988 U.S. Dist. LEXIS 4695, at *17-20 (N.D. Ill. May 13, 1988).

45 F.3d 493, 399 (D.C. Cir. 1995).  In response, plaintiff simply refers to two paragraphs of her Amended Complaint, which describe alleged promises of business opportunities **by Fannie Mae.** (Resp. at 9, citing Am. Compl. ¶¶ 20, 21 (noting "various acts of 'interference" with Plaintiff's attempt to contract **with Fannie Mae**" (emphasis added).)  But even *Ulico Casualty Co.*, the case on which plaintiff purportedly bases her claim, dealt with lost relationships with third parties. *Ulico Cas. Co. v. Prof. Indem. Agency, Inc.*, C. A. No. 98-1018 (TFH), 1999 U.S. Dist. LEXIS 8591, at *11-12 (D.D.C. May 5, 1999).  Fannie Mae simply cannot tortiously interfere with a valid business relationship or expectancy with itself—and therefore plaintiff has not sufficiently pled this element of her claim.

Additionally, plaintiff did not plead the type of egregious conduct required to prove the intent element of her interference claim.  She states that the intentional interference is contained, for example, in paragraphs 43-45 of her Amended Complaint, and then describes these paragraphs as "Defendants' various acts of 'interference' with [p]laintiff's attempts to contract with Fannie Mae."  (Resp. at 9.)  Not only does this alleged conduct have nothing to do with Fannie Mae's interference with plaintiff's relationships with third parties, it does not "involve libel, slander, physical coercion, fraud, misrepresentation, or disparagement"—the "strong showing of intent" required to plead tortious interference with business expectancies.  *See, e.g., Genetic Sys. Corp. v. Abbot Labs.*, 691 F. Supp. 407, 423 (D.D.C. 1988).

Finally, Fannie Mae explained that plaintiff must establish the termination of a business expectancy in order to sufficiently plead her claim.  Motion to Dismiss at 10; *see also Bennett Enters., Inc.*, 45 F.3d at 499 (interference must induce or cause a breach or termination of the relationship or expectancy.)  Plaintiff failed to even address this point in her response.  For all

these reasons, plaintiff's claim for tortious interference with business relationships must be dismissed.

## IV.    PLAINTIFF DOES NOT STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT V).

In their Motion to Dismiss, Defendants correctly stated that plaintiff utterly failed to allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community"—conduct required in order to state a claim for intentional infliction of emotional distress. *See Wise v. District of Columbia*, Case No. 03-cv-310, 2005 U.S. Dist. LEXIS 6361, at *16 (D.D.C. April 8, 2005); *see also Bryant v. Orkand Corp.*, No. Civ. 03-2305, 2005 WL 670295, at *18-19 (D.D.C. Mar. 21, 2005) (discrimination allegation insufficient to state a claim for intentional infliction of emotional distress); *Hoffman v. Hill & Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991) (finding alleged discrimination by employer against employee in terminating employee could not sustain claim for intentional infliction of emotional distress).

In her response, plaintiff merely asserts that her pleadings were sufficient.  (Resp. at 10.) But plaintiff does not—and cannot—point to any allegation that comes close to meeting the standard under the prevailing caselaw.  Because of her failure to state a claim for intentional infliction of emotional distress, plaintiff's claims should be dismissed.

### CONCLUSION

Based on the foregoing, defendants respectfully request that this Court dismiss all of plaintiff's claims with prejudice.

December 9, 2005                                   Respectfully submitted,


                                                  /s/ Evelyn L. Becker
                                                  Evelyn L. Becker (D.C. Bar No. 451163)
                                                  Sarah A. Goldfrank (D.C. Bar No. 482382)

O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300 (phone)
(202) 383-5414 (fax)

*Counsel for Defendants Federal National*
*Mortgage Association, Richard Lawch and*
*Grace Huebscher*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by U.S. mail this 9th day of December, 2005 upon:

Michael W. Beasley, Esq.                    Brian Lederer, Esq.
411 East Broad Street                       3003 Van Ness Street, N.W.
Falls Church, VA 22046                      Suite #W228
                                            Washington, D.C. 20008


<u>/s/ Kyra Grundeman</u>
Kyra Grundeman