# **EXHIBIT C**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIALICE BATHRUS WILLIAMS, | Civil Action No. 1:05CV01483 |
| Plaintiff, | Judge John D. Bates |
| vs. | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.* | |
| Defendants. | |

**DEFENDANT FEDERAL NATIONAL MORTGAGE ASSOCIATION'S
RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, defendant Federal National Mortgage Association ("Fannie Mae") responds to Plaintiff Marialice Bathrus Williams's ("plaintiff") First Set Of Interrogatories ("Interrogatories") as follows:

GENERAL OBJECTIONS

1. Fannie Mae has made diligent and reasonable efforts to respond to each and every Interrogatory, to the extent it has not been objected to, as Fannie Mae understands and interprets the Interrogatory. If plaintiff subsequently asserts an interpretation of any Interrogatory that differs from that of Fannie Mae, Fannie Mae reserves the right to supplement its objection and/or responses.

2. Fannie Mae generally objects to plaintiff's Interrogatories to the extent they seek information or documents protected from discovery by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege, immunity, or exemption from disclosure.

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

3. Fannie Mae generally objects to plaintiff's Interrogatories to the extent they are overbroad, vague, ambiguous or unduly burdensome or call for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence.

4. Fannie Mae generally objects to plaintiff's Interrogatories as overbroad or calling for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence to the extent she seeks information beyond the July 1998 through December 2003 timeframe relevant to this action.

5. Fannie Mae generally objects to plaintiff's Interrogatories as unduly burdensome to the extent she seeks information that is available from public sources, is already known by plaintiff, or is equally as accessible to plaintiff as it is to Fannie Mae.

6. Fannie Mae generally objects to plaintiff's Interrogatories to the extent they may be read as requiring the use of unreasonable data recovery processes.

7. Fannie Mae generally objects to plaintiff's Interrogatories to the extent she seeks the production of documents, which might otherwise be responsive, obtained by Fannie Mae's attorneys in connection with, or in furtherance of, their representation of Defendants in this action, or any other civil action or governmental or regulatory investigation or proceeding.

8. Fannie Mae generally objects to plaintiff's Interrogatories to the extent she seeks the production of documents, which might otherwise by responsive, protected from discovery by the attorney-client privilege and/or the work product doctrine contained in counsel files in connection with, or in furtherance of, the representation of Defendants in this action, or any other civil action or governmental or regulatory investigation or proceeding.

2

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

9. To the extent that Fannie Mae provides information or documents in response to plaintiff's Interrogatories, such production shall not constitute a waiver of any objection to the relevance or admissibility of such information or documents, all such objections being expressly reserved.

10. Fannie Mae objects to the Interrogatories to the extent they contain more than one unique question and seek to impose a burden on Fannie Mae greater than that required by Fed. R. Civ. P. 33.

## RESPONSES TO SPECIFIC INTERROGATORIES

**INTERROGATORY NO. 1:** For the period July 1, 1998 to July 1, 2006, identify the names, race, qualifications, addresses, and telephone numbers of the insurance brokers that Fannie Mae has used for its multifamily programs; and any other commercial insurance brokers and agents that Fannie Mae uses to provide insurance to its directors and officers or with any other product such as securitization of mortgage loans or credit enhancement.

**RESPONSE TO INTERROGATORY NO. 1:** In addition to the General Objections identified above, Fannie Mae specifically objects to Interrogatory No. 1 to the extent it is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. In particular, the Interrogatory seeks information concerning "any" commercial insurance broker that Fannie Mae used, regardless of whether it relates to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006). In addition, the Interrogatory seeks information beyond the time period relevant to this litigation. Subject to and without waiving the foregoing objections, Fannie Mae states that the only insurance broker or agent that Fannie Mae used for the procurement of multifamily credit risk insurance ("MCRI") between July 1, 1998 and December 2003 was CAM Financial Services, Inc. ("CAM"). Upon information and belief, Fannie Mae states that CAM is a corporation whose Registered Agent is Charles Rumsey, who is located at 259 Alexander Road, Long Beach, MS, 39560. Information

3

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

concerning CAM's ownership, qualifications and other identifying information can be found in the documents produced in and other litigation materials from this litigation, including but not limited to the deposition of Robert G. Jones. Answering further, Fannie Mae states that Crump Insurance Services represented CAM as its wholesale broker in a number of these transactions.

Fannie Mae further states that it entered into several additional MCRI transactions within the relevant time period, but none of these transactions involved Fannie Mae's DUS program, and thus they are not relevant to the subject matter of this action and are not reasonably calculated to lead to the discovery of admissible evidence. Fannie Mae states, in those instances, it purchased insurance directly from an insurance carrier rather than through a broker. Answering further, Fannie Mae states that it worked on those transactions with, among others, Craig Ott, whose role was to serve as an underwriter for the carrier.

**INTERROGATORY NO. 2:** Describe how consulting and insurance services are procured. What methods, practices and policy, including but not limited to written manuals, instructions, and directives, does Fannie Mae utilize and or has used since January 1998 to insure that minorities are utilized in the procurement process?

**RESPONSE TO INTERROGATORY NO. 2:** In addition to the General Objections described above, Fannie Mae specifically objects to Interrogatory No. 2 because it is overbroad, vague, ambiguous or unduly burdensome or calls for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. For example, the Instructions and Interrogatory are vague because they do not define "consulting and insurance services" or "procure[]," and the Interrogatory is overbroad and unduly burdensome to the extent that it is not limited to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006), or to the time period relevant to this litigation. Subject to and without waiving the foregoing objections,

CONFIDENTIAL/ SUBJECT TO PROTECTIVE ORDER

Fannie Mae states that between July 1, 1998 and December 2003 it did not purchase consulting or insurance services related to MCRI. Fannie Mae further states it entered into a number of multifamily insurance transactions with insurance carriers either directly or through an insurance broker. Answering further, Fannie Mae incorporates its response to Interrogatory No. 1 as if fully stated herein.

**INTERROGATORY NO. 3:** If Fannie Mae utilizes minority contractors, please describe the overall amount of business and what percentage of business procured by Fannie Mae is provided by minority contractors by dollar amount as well as percentage of business, by name, company, date, address, telephone number, and so on by year since January 1998.

**RESPONSE TO INTERROGATORY NO. 3:** In addition to the General Objections described above, Fannie Mae specifically objects to Interrogatory No. 3 because it is overbroad, vague, ambiguous or unduly burdensome or calls for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. For example, the Instructions and Interrogatory are vague because they do not define "contractors," and the Interrogatory is overbroad and unduly burdensome to the extent that it is not limited to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006), or to the time period relevant to this litigation. Subject to and without waiving the foregoing objections, Fannie Mae states that between July 1, 1998 and December 2003 it did not utilize contractors for MCRI. Answering further, Fannie Mae states that it did negotiate a Memorandum of Understanding with CAM (*see* document Bates labeled FNMA.MBW.006294-6296) while the plaintiff was working for Fannie Mae, and entered into a number of multifamily insurance transactions with insurance carriers either directly or through an insurance broker. Answering further, Fannie Mae incorporates its response to Interrogatory No. 1 as if fully stated herein.

5

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

Finally, Fannie Mae states that, in the years 1998 through 2003, Minority Women-Owned Businesses ("MWOB") made up between 18 and 21% of its discretionary spending.

**INTERROGATORY NO. 4:** Did Fannie Mae make any efforts to contract for the professional services of Marialice Williams from June 1998 to the present? If not, why not?

**RESPONSE TO INTERROGATORY NO. 4:** In addition to the General Objections described above, Fannie Mae specifically objects to Interrogatory No. 4 because it is overbroad, vague, ambiguous or unduly burdensome or calls for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. For example, the Instructions and Interrogatory are vague because they do not define "professional services," and the Interrogatory is overbroad and unduly burdensome to the extent that it is not limited to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006), or to the time period relevant to this litigation. Subject to and without waiving the foregoing objections, Fannie Mae states that at times between July 1, 1998 and August 2001 it communicated with Ms. Williams concerning preliminary concepts she proposed. Answering further, Fannie Mae states that it did not pursue the May 2001 proposal because the concept proposed was inconsistent with Fannie Mae's business model that required risk-sharing between Fannie Mae and its DUS lenders, and the Risk-Based Capital Rules issued by the Office of Federal Housing Oversight ("OFHEO") in July 2001 obviated any need to pursue the proposal.

**INTERROGATORY NO. 5:** Was Fannie Mae aware that Marialice Williams was not getting any insurance business from CAM Financial? If so, when did Fannie Mae discover this? Did Fannie Mae inquire of CAM Financial why Marialice Williams was not getting any business from them? Set forth the time, date, manner, substance, and identify the documentation of any discussion among defendants.

**RESPONSE TO INTERROGATORY NO. 5:** In addition to the General Objections

identified above, Fannie Mae specifically objects to Interrogatory No. 5 because it is overbroad, vague, ambiguous or unduly burdensome. For example, the Interrogatory is overbroad and unduly burdensome to the extent that it is not limited to the time period relevant to this litigation. Subject to and without waiving the foregoing objections, Fannie Mae states that between July 1, 1998 and December 2003 it was not specifically aware of the business relationship between plaintiff and CAM, nor of the extent of any business dealings between plaintiff and CAM. Fannie Mae states that, at times between 1998 and August 2001, plaintiff mentioned in discussions with Fannie Mae that she was not getting any insurance business from CAM. Fannie Mae further states that it did not "inquire of CAM Financial why Marialice Williams was not getting any business from them."

**INTERROGATORY NO. 6:** Why did Fannie Mae ask Marialice Williams to provide them [sic] with a letter indicating that she was not "doing business" with CAM Financial as a prerequisite for doing business with Fannie Mae?

**RESPONSE TO INTERROGATORY NO. 6:** In addition to the General Objections identified above, Fannie Mae specifically objects to Interrogatory No. 6 because it is vague or ambiguous. Fannie Mae also objects to the extent this Interrogatory improperly asserts or implies that Fannie Mae sought the above-referenced letter as a "prerequisite" for doing business with plaintiff. For the purpose of this response, Fannie Mae assumes that the above-referenced letter is the letter attached to plaintiff's May 3, 2001 e-mail to defendant Huebscher, Rhoda Newman and CAM (*see* FNMA.MBW.008002-8004). Subject to and without waiving the foregoing objections, Fannie Mae states that to the extent it requested that plaintiff provide such letter, it did so to understand the relationship between plaintiff's company and CAM, and to ensure that all the parties agreed that Fannie Mae's agreement with CAM did not preclude Fannie Mae from engaging in any proposed DUS transactions that plaintiff might present to Fannie Mae.

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

**INTERROGATORY NO. 7:** Why did Fannie Mae refuse to respond to two or three simple questions related to DUS business that were asked by Marialice Williams in 2001? Was Fannie Mae ever intending to answer these questions? Did Fannie Mae not answer the questions because Fannie Mae was not interested in laying off DUS risk? Was Fannie Mae not interested in providing relief to DUS lenders through laying off risk through an insurance mechanism? Does Fannie Mae have now or did it ever have an interest in laying off the primary, secondary, or tertiary risk associated with their DUS portfolio?

**RESPONSE TO INTERROGATORY NO. 7:** In addition to the General Objections identified above, Fannie Mae specifically objects to Interrogatory No. 7 because it is vague or ambiguous. For example, the Interrogatory is vague or ambiguous because it does not cite to a specific document that contains the "two or three simple questions related to DUS business that were asked by Marialice Williams in 2001." Fannie Mae also objects to the extent this Interrogatory improperly asserts or implies that Fannie Mae "refused" to answer questions posed by plaintiff. For the purpose of this response, Fannie Mae assumes that such document is the May 23, 2001 e-mail from plaintiff to defendant Huebscher and Rhoda Newman (*see* FNMA.MBW.008031). Subject to and without waiving the foregoing objections, Fannie Mae states that it did not refuse to respond to the questions posed by plaintiff in the aforementioned e-mail. Answering further, Fannie Mae states that it determined that it should not pursue the transaction at issue in this lawsuit -- the May 2001 proposal referred to or referenced in the Amended Complaint and/or this Court's Order filed on or about June 26, 2006 -- because the concept proposed was inconsistent with Fannie Mae's business model that required risk-sharing between Fannie Mae and its DUS lenders, and the Risk-Based Capital Rules issued by OFHEO in July 2001 obviated any need to pursue the proposal. In response to the last question in Interrogatory No. 7, Fannie Mae states that such question is too vague to answer in the abstract and absent a specific proposal. Answering further, Fannie Mae states that its DUS business model generally requires risk-sharing between Fannie Mae and its DUS lenders.

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

**INTERROGATORY NO. 8:** Did Fannie Mae utilize insurance while securitizing and purchasing loans in its "Aggregation" program? What type of insurance product was used? What policy was used for this program? Did the insurance concept differ in any way from what Ms. Williams recommended to Fannie Mae for the Aggregation program prior to her departure?

**RESPONSE TO INTERROGATORY NO. 8:** In addition to the General Objections identified above, Fannie Mae specifically objects to Interrogatory No. 8 to the extent it is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, where the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006) relates to Fannie Mae's DUS program, the Interrogatory seeks information concerning Fannie Mae's Aggregation program.

**INTERROGATORY NO. 9:** Who is the "international" broker, including name, address, telephone number that Richard Lawch indicated was hired by Fannie Mae for the multifamily division's securitization and other loan programs? What qualifications does that person have? What is the racial identity of that person or persons?

**RESPONSE TO INTERROGATORY NO. 9:** In addition to the General Objections identified above, Fannie Mae specifically objects to Interrogatory No. 9 to the extent it is overbroad, vague, ambiguous or unduly burdensome or calls for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. For example, the Interrogatory is overbroad and unduly burdensome to the extent it is not limited to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006), or to the time period relevant to this litigation. Subject and without waiving the foregoing objections, Fannie Mae states that it never hired an "international broker" for the multifamily division's securitization and other loan programs. Answering further, Fannie Mae states that the only insurance broker or agent that Fannie Mae used for the procurement of MCRI between July 1, 1998 and December 2003 was

9

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

CAM.

**INTERROGATORY NO. 10:** Why didn't Fannie Mae give insurance business directly to Marialice Williams?

**RESPONSE TO INTERROGATORY NO. 10:** In addition to the General Objections described above, Fannie Mae specifically objects to Interrogatory No. 10 because it is overbroad, vague, ambiguous or unduly burdensome or calls for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. For example, the Interrogatory is overbroad and unduly burdensome to the extent that it is not limited to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006), or to the time period relevant to this litigation. Subject to and without waiving the foregoing objections, Fannie Mae states that at times between July 1, 1998 and August 2001 it communicated with Ms. Williams concerning preliminary concepts she proposed. Answering further, Fannie Mae states that it did not pursue the May 2001 proposal because the concept proposed was inconsistent with Fannie Mae's business model that required risk-sharing between Fannie Mae and its DUS lenders, and the Risk-Based Capital Rules issued by OFHEO in July 2001 obviated any need to pursue the proposal.

**INTERROGATORY NO. 11:** Why did Fannie Mae assign Rhoda Newman to work with Ms. Williams on projects involving various forms of insurance coverage for the multifamily programs? Why didn't Ms. Newman continue to work with Ms. Williams after CAM filed its lawsuit?

**RESPONSE TO INTERROGATORY NO. 11:** In addition to the General Objections described above, Fannie Mae specifically objects to Interrogatory No. 11 because it is overbroad, vague, ambiguous or unduly burdensome or calls for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. For example, the Interrogatory is

10

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

overbroad and unduly burdensome to the extent that it is not limited to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006), or to the time period relevant to this litigation. Subject to and without waiving the foregoing objections, Fannie Mae states that Ms. Newman reported to plaintiff when plaintiff worked at Fannie Mae. Fannie Mae further states that plaintiff at times communicated with Ms. Newman after plaintiff left the company, as the documents produced by defendants in this litigation show. Shortly after Fannie Mae determined that it should not pursue the transaction at issue in this lawsuit because the concept proposed was inconsistent with Fannie Mae's business model that required risk-sharing between Fannie Mae and its DUS lenders, and the Risk-Based Capital Rules issued by OFHEO in July 2001 obviated any need to pursue the proposal, plaintiff stopped communicating with Ms. Newman concerning preliminary, potential or actual business opportunities.

**INTERROGATORY NO. 12:** Did Fannie Mae ever have any intention of utilizing the services of Ms. Williams, the creator of the multifamily credit risk insurance program for programs involving the use of insurance? Did Fannie Mae hire some other more qualified persons to do this business with Fannie Mae?

**RESPONSE TO INTERROGATORY NO. 12:** In addition to the General Objections described above, Fannie Mae specifically objects to Interrogatory No. 12 because it is overbroad, vague, ambiguous or unduly burdensome or calls for the disclosure of information or documents that is not relevant to the subject matter of this action and which is not reasonably calculated to lead to the discovery of admissible evidence. For example, the Interrogatory is overbroad and unduly burdensome to the extent that it is not limited to the proposed transaction at issue in this lawsuit (the May 2001 proposal referred to or referenced in the Amended Complaint or this Court's Order filed on or about June 26, 2006), or to the time period relevant to this litigation. Subject to and without waiving the foregoing objections, Fannie Mae states that at times between

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

July 1, 1998 and August 2001 it communicated with Ms. Williams concerning preliminary concepts she proposed. Fannie Mae further states that it did not pursue the May 2001 proposal because the concept proposed was inconsistent with Fannie Mae's business model that required risk-sharing between Fannie Mae and its DUS lenders, and the Risk-Based Capital Rules issued by OFHEO in July 2001 obviated any need to pursue the proposal. Answering further, Fannie Mae incorporates its responses to Interrogatory Nos. 1-3 as if fully incorporated herein.

**INTERROGATORY NO. 13:** Please provide all documents identified in your responses or used to prepare these responses.

**RESPONSE TO INTERROGATORY NO. 13:** In addition to the General Objections described above, Fannie Mae objects to Interrogatory No. 13 because it is not an interrogatory. Subject to and without waiving its objections, Fannie Mae states that it referred to or identified documents produced in and other litigation materials from this litigation to answer plaintiff's interrogatory requests. Fannie Mae states that it referred to or identified three documents not previously produced to prepare these responses: OFHEO's Final Risk-Based Capital Regulation, which is publicly available at http://www.ofheo.gov/media/archive/docs/regs/RBCFinal.pdf, and information concerning Fannie Mae's MWOB activities, which is being produced at Bates Nos. FNMA.MBW.008613-8614.

May 10, 2007

Respectfully Submitted,

*[signature]*

Evelyn L. Becker (D.C. Bar No. 451163)
Sarah A. Goldfrank (D.C. Bar No. 482382)
Kyra A. Grundeman (D.C. Bar No. 493622)
O'Melveny & Myers LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300 (phone)

CONFIDENTIAL/ SUBJECT TO PROTECTIVE ORDER

(202) 383-5414 (fax)

*Counsel for Defendants Federal National Mortgage Association, Richard Lawch and Grace Huebscher*

Jonathan L. Griffith (D.C. Bar No. 456080)
Fannie Mae
3900 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 752-6167 (phone)
(202) 752-4948 (fax)

*Counsel for Defendant Federal National Mortgage Association*

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by Federal Express this 10th day of May 2007 upon:

Michael W. Beasley, Esq.
200 Park Avenue, Suite 106
Falls Church, VA 22046

Brian Lederer, Esq.
3003 Van Ness Street, N.W.
Suite #W228
Washington, D.C. 20008

Harley Jay Daniels
5511 Second Street, NW
Washington, D.C. 20011

Sarah A. Goldfrank

CONFIDENTIAL/
SUBJECT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIALICE BATHRUS WILLIAMS, | |
| Plaintiff, | |
| vs. | Civil Action No. 1:05CV01483 |
| | Judge John D. Bates |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.* | |
| Defendants. | **DECLARATION OF RICHARD LAWCH** |

I, Richard Lawch, hereby declare as follows:

I verified the attached responses to Plaintiff Marialice B. Williams' First Set of Interrogatories on behalf of Federal National Mortgage Association; said responses were prepared with the assistance and advice of counsel; the responses to Plaintiff's First Set of Interrogatories, subject to inadvertent or undiscovered error, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, and thus far discovered; Federal National Mortgage Association reserves the right to make any changes to the response, to designate additional or different witnesses, or to introduce additional or other evidence at trial if it appears at any time that omissions or errors have been made or that more accurate information is available; and subject to the limitations set forth above, the above responses are true to the best of my knowledge, information, and belief.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this __th of May 2007 at _____.

_____
Richard Lawch