# **EXHIBIT L**

```
00001
 1         IN THE UNITED STATES DISTRICT COURT
 2           SOUTHERN DISTRICT OF MISSISSIPPI
 3                  Southern Division
 4  - - - - - - - - - - - - - - - - - X
 5  CAM FINANCIAL SERVICES, INC.,      :
 6       Plaintiff,          : Case No.
 7       v.                  : 1:01cv314BrR
 8  GENERAL STAR NATIONAL INSURANCE    :
 9  COMPANY; GENERAL STAR INDEMNITY    :
10  COMPANY; GENERAL STAR MANAGEMENT   :
11  COMPANY, GENERAL RE CORPORATION;   :
12  GENERAL REINSURANCE CORPORATION;   :
13  CRUMP INSURANCE SERVICES OF MEMPHIS,:
14  INC.; CRAIG OTT, INDIVIDUALLY AND  :
15  IN HIS REPRESENTATIVE CAPACITY AS  :
16  VICE PRESIDENT OF GENERAL STAR     :
17  MANAGEMENT COMPANY; FEDERAL NATIONAL:
18  MORTGAGE ASSOCIATION (FANNIE MAE), :
19       Defendants.         :
20  - - - - - - - - - - - - - - - - - X
21                Washington, D.C.
22                Monday, March 17, 2003
23         Videotaped deposition of MARIALICE
24  WILLIAMS, a witness herein, called for examination by
25  counsel for Defendant Fannie Mae, in the above-
```

March 17, 2003 FM of MAW                    Page 1

CONFIDENTIAL
FNMA.MBW.001532

00002
1  entitled matter, pursuant to subpoena, the witness
2  being duly sworn by SUSAN L. CIMINELLI, a Notary
3  Public in and for the District of Columbia, taken at
4  the offices of Steptoe & Johnson, 1330 Connecticut
5  Avenue, N.W., Washington, D.C., at 1:23 p.m., Monday,
6  March 17, 2003, and the proceedings being taken down
7  by Stenotype by SUSAN L. CIMINELLI, CRR, RPR, and
8  transcribed under her direction.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

CONFIDENTIAL
FNMA.MBW.001533

00037
1  Q.  Memorandum, memoranda, do you keep copies
2  of memoranda?
3  A.  Yes.
4  Q.  Business reports, that kind of thing? If
5  you would, just please describe for me. --
6  A.  Yes. And everything --
7  Q.  The kinds of things you keep?
8  A.  Everything that I kept in my office that
9  related to Fannie Mae was sent to you pursuant to a
10 subpoena, and unfortunately, I had a computer crash;
11 and at the time I had the computer crash, I was
12 talking to someone on the telephone who knows I had
13 that crash and much, most of the material in my
14 computer was lost and I had to get a brand-new
15 computer. I sent my hard drive out to a maintenance
16 person to attempt to recover what were thousands of
17 documents that I thought were important, and I was
18 not able to retrieve them.
19 Q.  Okay. Ms. Williams, that's a good segue
20 into my next couple of questions about the return on
21 your subpoena. Exhibit, the second exhibit, Exhibit
22 2 is the subpoena and then attached to it is an
23 Exhibit A. If you would turn to that, please.
24 A.  Exhibit A.
25 Q.  Are you there? Just for the record --

CONFIDENTIAL
FNMA.MBW.001568

00088
1  honest effort on Fannie Mae's part to do business
2  with me, since I had actually come up with the
3  concept and closed the first transactions that
4  involved credit risk insurance.
5      Every person that I know who has left
6  Fannie Mae who has done something of that nature has
7  always been rewarded with an opportunity to work with
8  Fannie Mae when they were not fired from their
9  position.
10     Therefore, my thought it was very
11 important --
12     BY MR. WIMBERLY:
13 Q.  Ms. Williams, I'm going to object to your
14 answer as nonresponsive to the question.
15 A.  You asked me why I sent it and I am
16 telling you why I sent it. Because I spent
17 considerable amount of money and time trying to
18 honestly do business with Fannie Mae and it was clear
19 from this message that they were not doing anything
20 but taking my time and attention and using that with
21 other people.
22     That's why I sent it to Bob. Because I
23 knew that Craig Ott, the person who was referred to
24 in this letter, in this e-mail, was a person that I
25 had introduced to Fannie Mae through CAM Financial

CONFIDENTIAL
FNMA.MBW.001619

00091

1  Q.  Then why did she send it to you?

2  A.  Because she recognized that I had spent a
3  great deal of time and effort at Fannie Mae.
4  Including signing a confidentiality agreement with
5  them, and had provided them with the great deal of
6  information, had a consultant fly in from Canada to
7  meet with them, had customers of Fannie Mae, DUS
8  customers, you name them, they were my customers,
9  wanting me to do business with Fannie Mae.

10  Betty knew about the confidential
11  relationship, I mean knew about the confidentiality
12  agreements with all of the people that Bob Jones
13  brought into Fannie Mae, and I'm certain she was as
14  shocked as I was when I read it. And I, I doubt
15  seriously that there is anybody in this room who
16  wouldn't have done the same thing under the
17  circumstances.

18  Q.  Did she send you any other documents from
19  Fannie Mae after you left Fannie Mae in July 1998?

20  A.  Betty has never sent me anything related
21  to her work whatsoever. We share prayers. We share
22  jokes. We do not share information about Fannie Mae
23  because after this, it was clear that Fannie Mae was
24  not going to do business with me and I had to find
25  work. This was no reason for her to send anything

**March 17, 2003 FM of MAW**                              **Page 91**

**CONFIDENTIAL**
FNMA.MBW.001622

00094
1  one and only e-mail I ever received from her that had
2  anything to do with business and she sent me this one
3  because it's pretty clear from this e-mail that I was
4  not going to be given the same opportunity as
5  everyone else was being given to do this.
6    Q.  Did you talk to anyone about this e-mail
7  after you got it?
8    A.  Yes, I did.  I talked to Bob Jones and
9  said forget all the stuff I'm trying to do with
10  Fannie Mae because it's obvious they are not going to
11  give me any business so maybe you might want to try
12  to get some from them.
13   Q.  When did you talk to Bob Jones?
14   A.  I don't recall.  As soon as probably I got
15  this e-mail.  It's pretty shocking when you spent
16  almost two hundred and some thousand dollars building
17  a business to suddenly one day walk in the door and
18  no you don't have ding, after lies and lies and lies
19  and confidentiality and being asked if you wanted to
20  do it, and then being crapped on in the midst of all
21  of it.
22   Q.  And what did Mr. Jones say to you when you
23  told him about this?
24   A.  He said I'm not surprised.
25   Q.  Tell me everything he said to you about

March 17, 2003 FM of MAW                    Page 94

CONFIDENTIAL
FNMA.MBW.001625

00102
1     MS. WILLIAMS: Marialice, that's all
2 right. Do you have a question outstanding?
3     BY MR. WIMBERLY:
4  Q.  Let me check.
5     (Witness laughing.)
6     THE WITNESS: I can tell you you don't.
7     MR. WIMBERLY: Well, then let me -- oh,
8 no, I do. There is no -- I do have a question. No.
9 No. I do have a question pending. And that is, is
10 it not correct to say there is no, there is no
11 absolute decision here to reject your proposal?
12    MR. WISER: Object to the form of the
13 question.
14    THE WITNESS: That is incorrect. You are
15 incorrect.
16    BY MR. WIMBERLY:
17 Q.  And why am I incorrect?
18 A.  Because you cannot read.
19 Q.  Well, please help me read. Where is it
20 categorically decided that Fannie Mae is rejecting
21 your proposal?
22    MR. WISER: Object to the form of the
23 question.
24    THE WITNESS: In the context of this
25 e-mail. That is open to obviously a different

March 17, 2003 FM of MAW          Page 102

CONFIDENTIAL
FNMA.MBW.001633

00104

1 Q. Okay. Okay. And can -- did he call you? Or did you call him?

3 A. For?

4 Q. To tell him about this e-mail?

5 A. I forwarded it to Bob Jones much earlier.

6 Q. Oh. You had already given it to him? You had forwarded it to him before February 2002?

8 A. I believe so.

9 Q. When?

10 A. I don't recall. It should say here somewhere, I guess. I don't remember when I told him, frankly.

13 Q. You don't disagree there is nothing in this document that's Exhibit 5 that indicates that you forwarded it to Mr. Jones at this time, so your testimony is that you forwarded it to him at some other time?

18     MR. WISER: Object to the form of the question.

20     THE WITNESS: I thought -- I could be incorrect. I, I don't remember.

22     BY MR. WIMBERLY:

23 Q. Do you have a general recollection?

24     MR. WISER: Object to the form of the question.

**CONFIDENTIAL**
**FNMA.MBW.001635**

00107
1  said: "Yes, we're trying to."

2  Q.  When did that occur?

3  A.  That occurred, and Fannie Mae I'm sure

4  will know in their records from when I had an

5  appointment with them, when I went in to speak with

6  Richard, about doing this business.

7  Q.  But in your own recollection, when did it

8  occur?

9        MR. WISER:  I object to the form of the

10  question.

11       THE WITNESS:  Sometime between 1998 and

12  1994.

13       MS. WILLIAMS:  1998 and -- .

14       THE WITNESS:  1998 and -- 1998 and -- when

15  did I leave there, I can't even remember now.  Was it

16  '98, and 2001.

17       BY MR. WIMBERLY:

18  Q.  Was it before June 4, 2001?

19       MR. WISER:  Object to the form of the

20  question.

21       THE WITNESS:  I believe it was.

22       BY MR. WIMBERLY:

23  Q.  Was it shortly before?

24  A.  It was before this memo was written

25  because if I had already have known this memo was

March 17, 2003 FM of MAW                           Page 107
CONFIDENTIAL
FNMA.MBW.001638

00108
1  written I certainly would not have taken more trouble
2  to do more work for free for Fannie Mae for nothing.
3      Q.   Why did you resend it then to Mr. Jones in
4  February 2002?
5      A.   I don't know, don't recall.
6           MR. WISER: Object to the form of the
7  question.
8           BY MR. WIMBERLY:
9      Q.   Did somebody ask you to do that?
10     A.   I don't recall.
11     Q.   You are familiar with Mr. Nick Wiser?
12     A.   Yes, I am.
13     Q.   Who has been relatively vocal today?
14     A.   Am I familiar with Mr. Wiser?
15     Q.   Yes, ma'am?
16     A.   Yes, I am.
17     Q.   And how are you familiar with Mr. Wiser?
18     A.   I'm familiar with Mr. Wiser because he
19  represents Bob Jones.
20     Q.   How long have you known Mr. Wiser?
21     A.   I don't recall exactly.
22     Q.   You have a general recollection?
23     A.   After 1998 and before today.
24     Q.   Ms. Williams, I appreciate that it's
25  difficult to be sitting here answering questions, but

CONFIDENTIAL
FNMA.MBW.001639

00121
1  no one more surreptitious than the people I worked
2  with at Fannie Mae, who stole my concept --
3     Q.  Ms. Williams?
4     A.  -- would never let me have an award to
5  myself because --
6     Q.  Move to strike.
7     A.  -- Richard Lawch hated me.
8     Q.  Move to strike the prior answer.
9     A.  And told me he was going to get around CAM
10 the minute I walked out the door.  And he did.
11    Q.  Ms. Williams let's get --
12    A.  Now, that's surreptitious.
13    Q.  Let's get back to the questions about this
14 e-mail.  Again, I'm trying to explain what I'm
15 reading in this e-mail.
16    A.  And I'm trying to explain to you that when
17 I got this e-mail I did not know about the lawsuit
18 and Fannie Mae was not a party.  So stop referring to
19 it as me and Fannie Mae.  Fannie Mae was not involved
20 in this lawsuit when I gave my statement.  This, this
21 was sent to me because I was being screwed.
22    Q.  Isn't it, but isn't it a fact,
23 Ms. Williams, based on your understanding of Fannie
24 Mae's policies on confidential information, that you
25 thought Betty Dance was giving you confidential

CONFIDENTIAL
FNMA.MBW.001652