# **EXHIBIT Q**

Case 1:05-cv-01483-JDB    Document 33-19    Filed 06/21/2007    Page 1 of 17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIALICE BATHRUS WILLIAMS, | : |
| Plaintiff, | : |
| | : Civil Action No. 1:05CV01483 |
| vs. | : |
| | : Judge John D. Bates |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, *et al.* | : |
| | : **DECLARATION OF KATHRYN** |
| Defendants. | : **WESTOVER** |

I, Kathryn "Kate" Westover, hereby declare as follows:

1. I am not a party to the above-captioned action. I am over eighteen years of age, and the statements made herein are based on my personal knowledge. I refreshed my recollection through the review of the documents attached hereto at Tab A.

2. In or about August 2001, plaintiff Marialice Williams and I had a meeting with representatives from Fannie Mae's Multifamily Division to discuss the possible use of captive insurance companies by Fannie Mae. I do not remember any additional meetings with representatives from Fannie Mae on this or any other subject, although there may have been a telephone phone conference call before or after the meeting on this subject.

I declare under penalty of perjury that the foregoing is true and correct. Executed on [DATE] at Colchester, Vermont.

3/5/07

_____
Kathryn Westover



A few questions and an update from RMS

**Subject:** A few questions and an update from RMS
**Date:** Wed, 23 May 2001 10:16:10 -0400
**From:** "Marialice Williams" <marialice@worldnet.att.net>
**To:** <rhoda_s_newman@fanniemae.com>, <grace_huebscher@fanniemae.com>
**CC:** <bhartsfield@risk-mitigation.com>

Update from RMS--

First the good news--we have the interest of three insurance companies, two of whom are domestic. All are rated A+ and above. However, we need to know a couple of things to facilitate our discussions with them:

1. Is there any interest on Fannie Mae's part in insuring her portion of the 5-20% mezzanine level of risk on the DUS portfolio? (This could lead to a lower premium for the lenders).

2. Does Fannie Mae have any objection to the DUS lenders laying off all or part of their first loss obligation on the DUS loans to a "AA" or better rated credit enhancer?

3. Is there any possibility of obtaining data from Fannie Mae regarding the underwriting and performance of the DUS portfolio? The keen interest is in what percentage of the mortgage loans originated meet the various tiers of the DUS program and has there been a distinction in the performance based upon those tiers of I loans?

Sorry that we were unable to get Kate Westover in to see you in June. We only need about and hour and a half. Is there a time in July that will work? Also if you find that there is room because of a cancellation in June we would be happy to fill in.

We don't need all of the answers to our questions at one time. As soon as you have some idea about each question, let us know. Thanks. Marialice

FNMA.MBW.008031
CONFIDENTIAL

[Fwd: Captive Insurance Company Update]

**Subject:** [Fwd: Captive Insurance Company Update]
**Date:** Wed, 06 Jun 2001 12:21:05 -0500
**From:** Bob Jones <bobjones@cam-financial.com>
**To:** dwgroves@bellsouth.net, chuckrumsey@cam-financial.com

Bob Jones wrote:

I advised Marialice to copy both Red Capital and Lend Lease on this message to Richard and Grace, just as if she never saw the Fannie Mae email regarding Craig Ott.

This reversal by IRS now offers Fannie Mae and/or each DUS Lender to form their own captive under the same "economic family" for balance sheet treatment with the captive first loss premium now tax deductible. The IRS ruling also acknowledges the shift of captive first loss from the the policy holder to the insurer for risk transfer. Our copyrighted MCRI policy is acceptable for risk transfer and could be used by AIG, Gen Star or Zurich to front the captive coverage.

---

**Subject:** Captive Insurance Company Update
**Date:** Wed, 6 Jun 2001 12:13:44 -0400
**From:** "Marialice Williams" <marialice@worldnet.att.net>
**To:** <grace_huebscher@fanniemae.com>, <richard_s_lawch@fanniemae.com>
**CC:** <mcbeisler@redcapitalgroup.com>, <jklarson@lendleaserei.com>,
       <rhoda_e_newman@fanniemae.com>, <hhartsfield@risk-mitigation.com>

On June 4, 2001, the IRS issued a ruling that has the insurance world reeling. The long standing position that premiums paid to captives are not deductible under the so-called "economic family" theory has been reversed.

The IRS, in 1977, took the position that "in the case of related-party risks, if such risks are insured or reinsured by a related insurance company—one in the same 'economic family', the premiums involved cannot be deducted from federal taxes because risk has not shifted from the policyholder to the insurer."

"Accordingly, the IRS will no longer invoke the economic family theory with respect to captive insurance transactions."

After this new ruling, it is clear that the captive is an ideal way to lay off the first loss obligation of assetholders entering into secondary market transactions. This ruling can enable Fannie Mae to set up its own credit enhancement facility. And in light of Fannie Mae's credit, the capitalization costs would be minimal.

The DUS lenders could set up such a fund with their DUS reserve accounts and obtain substantial economic benefit as well as reducing Fannie Mae's exposure to the risk associated with this portfolio. That's because any policy issued by a DUS lender's captive insurance company would be wrapped or fronted by a rated reinsurer.

My associate and I serve on the Captive Advisory Committee for the District of Columbia's Department of Insurance and Securities Regulation. Our new law was patterned after the Vermont statute which is considered the best domestic jurisdiction in which to form a captive. Just one captive has applied for and been approved to operated in D.C. This could have all kinds of positive ramifications for Fannie Mae.

Our associate, Kate Westover, in Vermont, is assisting us with our customers. She will be consulting with Larry Mirrel, the Commissioner for DISR on June 14 while you guys at Fannie Mae will be out of town. We had hope to bring her by.

Meanwhile, my associate, Harvey Hartsfield continues to work with Rhoda on a time for Kate to make a presentation to Fannie Mae.

FNMA.MBW.008051
CONFIDENTIAL

[Fwd: Captive Insurance Company Update]

Feel free to call if you have questions. Marialice

FNMA.MBW.008052
CONFIDENTIAL

Captive Insurance Companies

**Subject:** Captive Insurance Companies
**Date:** Mon, 18 Jun 2001 16:29:30 -0400
**From:** "Risk-Mit" <marialice@risk-mitigation.com>
**To:** <dgoodman@redcapitalgroup.com>, <mcbeisler@redcapitalgroup.com>
**CC:** <hhartsfield@risk-mitigation.com>, "Bob Jones" <bobjones@cam-financial.com>

Harvey and I saw the quotes from David in an article in the Multi-Housing News for June 2001. Glad to see that you guys are anticipating another successful year in refinancing apartment building mortgages.

We just wanted to remind you that our captive insurance company concept has just been given a boost by the new Revenue Ruling from IRS. Our associate, Kate Westover gave an excellent presentation at the Department of Insurance and Securities Regulation last week. Several of our clients were in attendance.

Kate was able to confirm for Larry Mirel, the head of DISR that the new Revenue Ruling by the IRS, 2001-31, provides for the deductibility of premiums paid to captive insurance companies by captive insurance company owners. And further bolsters the concept that captive insurance companies, owned by a related company or parent, are true insurance companies. Therefore, once a captive issues a policy to cover the risk on a portfolio of assets there is a true risk transfer from the related or parent company to the captive. Therefore, our clients who are concerned about risk-based capital issues can now form a captive insurance company, transfer the risk of loss of their loan portfolio to the captive insurance company and get the accounting and balance sheet relief that they need.

And, if used in connection with securitization, the captive insurance company policy is the credit enhancement necessary to eliminate the need to ISSUE SUBORDINATE SECURITIES.

Also, D.C. has approved the first captive insurance company under the new D.C. captive insurance law. We are on the captive advisory committee for D.C. and are more committed than ever to bringing this innovative risk transfer concept to our customers. We are happy to be able to provide this innovative tool to our customers on a local basis. The off-shore jurisdictions have dominated this business for the past 30 years.

Let us know if you would like to see the documentation on the revenue ruling or want to discuss the use of the captive insurance as a risk-transfer credit enhancement facility in your day to day operations.

Marialice Williams

1 of 1

10519    6/18/01 4:45 PM

FNMA.MBW.008054
CONFIDENTIAL

Presentation on August 21

Subject: Presentation on August 21
Date: Mon, 6 Aug 2001 12:49:18 -0400
From: "mail.risk-mitigation.com" <marialice@risk-mitigation.com>
To: "Rhoda E Newman" <rhoda_e_newman@fanniemae.com>,
    <grace_huebscher@fanniemae.com>
CC: <hhartsfield@risk-mitigation.com>

We are looking forward to meeting with you on the 21st of August. However, we want to make certain that Kate is on target with her presentation. Could you please let us know if you are looking at the captive as a potential credit enhancement tool for Fannie Mae or as a tool that the DUS lenders could use.

I met with LendLease' Chief Credit Officer and the CFO in Dallas last week. There appears to be interest on their part in using a captive insurance company as a risk transfer and credit enhancement vehicle but they were concerned about Fannie Mae's reaction to the concept of captive insurance companies. Also, it appeared to LendLease that the captive could be very effective if they could also lay off their 5% first loss obligation under the DUS program to the captive insurance company. This question was raised in my e-mail to you back on May 30.

Finally, could we spend a little time discussing the other two questions from the insurance companies that we posed to you at the end of May?

My partner, Harvey Hartsfield will be working with Kate on her presentation so please cc him on your response.

Thanks. Marialice

FNMA.MBW.008057
CONFIDENTIAL

10528

# THE CAPTIVE SOLUTION

*Prepared by*

## RISK MITIGATION STRATEGISTS, LLC

For More Information Concerning Information in this Discussion, contact:

Kathryn.westover@arg-winterthur.com

*Confidential and Proprietary - Do Not Distribute*

Sent By: ;    202 338 3017;    Aug-28-01  2:56PM;    Page 2

FNMA.MBW.008060
CONFIDENTIAL

10529

## What is a Captive?

- A special purpose insurance company -- can be a stock company, a mutual, or a reciprocal
- The captive's primary purpose is the insurance or reinsurance of the risks of "sophisticated insureds" outside of the commercial insurance regulatory system
- The sophisticated insured is a commercial buyer of insurance which has the ability to retain significant amounts of risk and purchase insurance from a non-admitted insurer
- The sophisticated insured may own the captive, or be a part owner, or may be a "participant" or renter of captive capital, having rights and duties but no ownership.
- A sponsored captive (not owned by its insureds) may have legally segregated underwriting accounts or "protected cells".

whycap.doc

FNMA.MBW.008061
CONFIDENTIAL

## The History of Captives

- For sophisticated insureds, transfer of all of their risk to a commercial insurance company may not be cost effective, or they may have risks that no insurance company is willing to assume.
- The Alternative Risk Transfer or "ART" market is a response – offering alternative risk funding programs such as retrospectively rated policies, filed deductibles, qualified self insurance and (most recently) risk securitization.
- Captive insurance is an ART mechanism that has been used perhaps longer than other ART techniques, captives being formed in the UK in the early 1900s
- Offshore captive domiciles historically offered tax advantages, allowing the insured to defer payment of tax on underwriting income.
- In the 1960s and 70s, Bermuda became the leading offshore domicile for U.S. insureds, followed by Grand Caymans.
- Controlled foreign corporation legislation eliminated tax advantages for most captives in offshore domiciles.
- In the 1980s, Vermont became the leading onshore domicile for US insured, followed by Hawaii.
- Numerous states are trying to establish a captive industry – the NAIC now recognizes captive insurance as legitimate.
- World wide statistics are unreliable but captives in current operation are estimated at over 3,000, the majority US owned.

FNMA.MBW.008062
CONFIDENTIAL

# WHY DO INSURED'S CONTINUE TO USE CAPTIVES?

## Cost and Control

1. A mechanism for financing retained risk in a more cost effective manner than self insurance or deductible programs.
2. Use of insurance accounting to improve the ability of an insured to reduce uncertainty in financing risk.
3. Reduction in cost of transfer of risk both within and above the captive's retention layer.
4. Improved risk management focus – control over loss data, claims and coverage.

FNMA.MBW.008063
CONFIDENTIAL

# IMPLEMENTING A CAPTIVE PROGRAM

| TASK | ESTIMATED TIME |
|---|---|
| 1. FEASIBILITY STUDY | 1 month or more, depending upon availability of loss data, scope of study |
| 2. PROGRAM STRUCTURING | 1 month or less, depending upon fronting and reinsurance requirements |
| 3. CORPORATE DOCUMENTATION | Concurrent with 2 above, prepare articles, bylaws or participant agreements |
| 4. BUSINESS PLAN PREPARATION | Allow 2 - 3 weeks for preparation and shareholder review |
| 5. APPROVAL OF BUSINESS PLAN | Time determined by whether board approval, SEC approval required. |
| 6. VISIT TO DOMICILE, SELECTION OF SERVICE PROVIDERS | If required, allow 1 – 2 days. |
| 7. APPLICATION PREPARATION AND FILING | 1 week (May be done by domicile attorney or management company) |
| 8. UNDERWRITING DOCUMENTATION | 2 weeks or more, depending upon coverages and type of reinsurance. |
| 9. FILE FOR INCORPORATION | 1 week. |
| 10. HOLD ORGANIZATIONAL MEETING TO ELECT OFFICERS, PASS BANKING RESOLUTIONS | |
| 11. OPEN BANK ACCOUNTS, CAPITALIZATION AND/OR COLLATERAL | 1 –2 weeks |
| 12. ISSUE SHARES OR SIGN PARTICIPANT AGREEMENTS | |

A CAPTIVE IS USUALLY LICENSED 4 TO 6 WEEKS AFTER FILING THE APPLICATION

whycap.doc

FNMA.MBW.008064
CONFIDENTIAL

# THE CAPTIVE FLOW OF FUNDS



FNMA.MBW.008065
CONFIDENTIAL

# RISK SECURITIZATION FLOW OF FUNDS



FNMA.MBW.008066
CONFIDENTIAL

10535

## ESTIMATED CAPTIVE FORMATION AND OPERATING COSTS FOR PURE OR SPONSORED CAPTIVE
(Conservative estimates, excluding cost of reinsurance, claims handling and federal tax)

| | PURE BERMUDA | PURE VERMONT | SPONSORED ON OR OFFSHORE |
|---|---|---|---|
| **A) Formation Costs** | | | |
| i. Feasibility study for application or business plan | $30,000 | $30,000 | $30,000 |
| ii. Application and registration fees | 5,000 | 3,500 | |
| iii. Legal expense | 5,000 | 2,000 | |
| iv. Travel and meetings | 5,000 | 5,000 | 5,000 |
| Total estimated formation charges | 45,000 | 40,000 | 35,000 |
| **B) Ongoing Expenses** | | | |
| v. Audit and Actuarial | 25,000 | 35,000 | 15,000 |
| vi. Annual license fee/Company Tax | 9,000 | 5,000 | 5,000 |
| vii. Management Company Fee/Capital Charge | 55,000 | 55,000 | 50,000 |
| viii. Board of Directors Meeting | 6,000 | 3,000 | |
| Total estimated ongoing charges | $95,000 | $98,000 | $70,000 |

Notes:
i. Additional costs will be determined by amount of actuarial time and professional tax, legal and accounting advice.
ii. May be based upon amount of share capital, or review fee for application.
iii. Determined by selection of law firm.
iv. Visits to domicile to meet with service providers, regulators, required for Vermont, optional in Bermuda.
v. Determined by scope of business plan and whether reserve certification required.
vi. Determined by domicile choice – note that VT premium tax is a percent of premium, minimum $5,000.
vii. Determined by scope of accounting services and whether loss analysis and program structuring required.
viii. Dependent on number of persons travelling for board meetings and location of shareholder.

whycap.doc

Sent By: ; 202 338 3017; Aug-28-01 2:57PM; Page 9/9

FNMA.MBW.008067
CONFIDENTIAL

Washington Mutual Transaction

**Subject:** Washington Mutual Transaction
**Date:** Thu, 16 Aug 2001 09:45:56 -0500
**From:** Bob Jones <bobjones@cam-financial.com>
**To:** marialice@risk-mitigation.com, dwgroves@bellsouth.net, bobjones@cam-financial.com

Bob Jones wrote:

Marialice, Karl returned my call. No insurance. Fannie Mae required a spread account that accrues ( no front end $ ) to 50 bpts plus first loss recourse of some number (confidential) south of 4%. Fannie Mae's initial recourse level was 6%. The portfolio has 12 year weighted average seasoning. Fannie Mae wouldn't disclose its CPR, but Karl used a CPR of 4%. He was very happy with this deal.

He also told me the average recourse on a Fannie Mae DUS portfolio swap ranges from 9 to 12%. Real interesting. I hope this information is helpful.

Good luck on the captive presentation with Kate and Fannie Mae next week.

10537    8/16/01 9:49 AM

FNMA.MBW.008069
CONFIDENTIAL